Brett E. Lewis (*Pro Hac Vice Application Forthcoming*)
LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: Brett@iLawco.com

*Attorneys for Richard Blair*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Blair,<br><br>      Plaintiff,<br><br>vs.<br><br>Automobili Lamborghini S.p.A.,<br><br>      Defendant. | No.<br><br>**COMPLAINT** |

## NATURE OF THE ACTION

1. This action seeks declaratory relief pursuant to 15 U.S.C. § 1114(2)(D)(v) to establish that Plaintiff Richard Blair's registration and use of the domain name <Lambo.com> (hereinafter the "Disputed Domain") is not unlawful under the Anticybersquatting Consumer Protection Act ("ACPA").

## THE PARTIES

2. Plaintiff Richard Blair is a citizen of the United Kingdom with a residence at 8 West St., San Rafael, CA 94901.

1

3. Upon information and belief, Defendant Automobili Lamborghini S.p.A. ("Lamborghini") is an Italian company with an address at 12 Via Moderna I-40019, Sant'Agata Bolognese, Italy.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1114(2)(D)(v), and 28 U.S.C. § 2201 that Plaintiff's acquisition and use of the Disputed Domain is not unlawful under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).

5. This Court has personal jurisdiction over Defendant as a result of Defendant's initiation of an administrative proceeding against the Disputed Domain pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP").

6. Venue is proper in this District under 28 U.S.C. § 1391 (b)(2). A substantial part of the property that is subject of this action is situated in this District. Moreover, venue is proper in this district due to Defendant's voluntary submission to this Court's jurisdiction when Defendant filed a complaint with the World Intellectual Property Office (WIPO) arbitration and mediation center concerning Plaintiff's registration of the Disputed Domain.

7. The Disputed Domain has its situs in this District within the meaning of 15 U.S.C. § 1125(d)(2)(C). The registrar for the Disputed Domain is NameSilo, which is not only headquartered in this District, but upon information and belief also has additional business locations in this District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

8. The Plaintiff Richard Blair is a domain name investor who uses the nickname "Lambo." Plaintiff Blair is known in online communities and in a personal capacity by the name "Lambo," which corresponds directly with the Disputed Domain.

9. Plaintiff Blair acquired the <Lambo.com> domain name in February 2018 because it is a five-letter domain name that can be used for a variety of goods and services. Soon after acquiring the Disputed Domain, Blair adopted "Lambo" as a private alias for his activities and to build an online profile in various communities.

10. Plaintiff Blair initially planned on developing a website at the Disputed Domain that would showcase his various interests and exploits in a personal and professional capacity. Those plans were subsequently delayed and abandoned.

11. Plaintiff Blair owns over one hundred domain names, including inherently valuable short word domain names, as well as dictionary or common word domain names and domain names that are composed of numbers. A representative sample includes <ASZ.com>, <aess.com>, <adlux.com>, <dnas.com>, <Algar.com>, <HighIQ.com>, <sicos.com>, <wywy.com>, <CigarRoller.com>, <88287.com> and many others. None of the domain names in his portfolio are similar to known trademarks.

12. Plaintiff Blair generally purchases his domain names on the secondary market, paying market prices for domain assets that he may develop, sell or hold on to. For Blair, development potential and ideas are innate to the act of domain investing.

13. Blair has a history of developing domain names – for example, sociology.com, marketingstrategies.com & chinesecoins.com and he has projects underway on datafeed.com and ceec.com.

14. Plaintiff Blair does not purchase domain names with the primary intent to sell them. Although he lists domain names for sale, he does not expect to sell them, and most will never sell. He has never been accused of infringing the intellectual property rights of others before now.

15. When Plaintiff Blair acquired the Disputed Domain he was unaware that the Defendant Lamborghini owned a trademark registration in the Europe Union for the term LAMBO for vehicles or claimed any rights in the term.

16. Further, when Blair acquired the Disputed Domain in February 2018, Lamborghini did not own an active trademark registration in the U.S., where Blair is domiciled. Lamborghini had owned a U.S. registration for LAMBO that was based on its EU registration. As a result, Lamborghini did not have to file evidence of use in U.S. commerce prior to registration. At the time a post registration Declaration of Use was due in 2017, Lamborghini allowed its LAMBO registration to lapse. It was eventually canceled by the USPTO that same year. This all occurred *prior* to Plaintiff's acquisition of the Disputed Domain.

17. Lamborghini has never filed evidence that a LAMBO trademark was used in the U.S. with the USPTO. On information and belief, Lamborghini has never used LAMBO as a trademark in the U.S.

18. Lamborghini's EU registration for LAMBO did not require that it first prove use of the name in commerce for the claimed services. On information and belief, Lamborghini has never used LAMBO as a trademark in Europe or anywhere in the world.

19. Currently, the term "Lambo" is being used by third parties in various ways that have no connection to Lamborghini or cars – for example, it is used as a nickname, a surname (including the surname of U.S. football player Josh Lambo), the name of a film, a cartoon character, a name for wool products, the name of a music album by a Greek singer, the name for corporate entities, the brand name of an allegedly rejuvenating cream, as well as vegetarian capsules, and numerous other uses.  There is also a current USPTO trademark registration dated May 28, 2019 for use of the word LAMBO for beard trimmers, electric razors and other goods.  Thus, there is significant third-party use of "Lambo" for a variety of goods and services that do not involve Lamborghini at all.

20. By contrast, there is no evidence that consumers exclusively associate the term LAMBO with Lamborghini.

21. Plaintiff Blair's registration of the Disputed Domain because of its inherent value as a five-letter domain name that can be used for a variety of reasons is evident based on third party use of the term.  Blair has a demonstrated right to the Disputed Domain and a legitimate interest in owning it.  As such, he can set a "for sale" price at any price he wishes, even one that Lamborghini may deem excessively high.

22. Blair has not done anything that would negate his right to acquire and own the Disputed Domain.  He has not target Lamborghini or its trademarks or any third party, he has not pretended to be Lamborghini, nor has he passed himself off as such, misled any Internet users, sold counterfeit goods, engaged in typo-squatting to confuse the market, gone off on a phishing expedition, or used the Disputed Domain for pay-per-click income or in any other way improperly.

23. Blair did not purchase the Disputed Domain to sell it to Lamborghini or to a competitor.  Blair has never contacted Lamborghini or its competitors about buying the Disputed Domain.  Instead, Blair purchased the Disputed Domain, considered development plans for a website and then decided to offer it for sale to the world at large on the general market.  None of Blair's actions can be considered registration and use of the Disputed Domain in bad faith.

24. On April 29, 2022, Defendant Lamborghini submitted a complaint with WIPO, initiated an administrative proceeding against Plaintiff's registration of the Disputed Domain, and sought an order to transfer the ownership rights of the Disputed Domain to Lamborghini.

25. The UDRP proceeding, *Automobili Lamborghini S.p.A. v. Domain Administrator, See PrivacyGuardian.org / Richard Blair Case No. D2022-1570* (the "Proceeding") was decided by a three-member WIPO panel on August 2, 2022, with one panelist dissenting.  The majority of the panel issued a decision directing transfer of the Disputed Domain to Defendant Lamborghini.  Plaintiff Blair was not represented by legal counsel in the Proceeding.

26. The Respondent in the Proceeding has ten business days to commence an action in this district to stop the transfer of the Disputed Domain from taking place.

27. In filing the Proceeding, Defendant *chose* to submit to the jurisdiction of this Court, and to have the laws of the United States, as interpreted and applied by the Ninth Circuit and the courts in this District, apply to the parties' dispute.

28. Yet, Defendant completely disregarded the laws of this Circuit in filing a Proceeding.

29. Under U.S. law, a claim for cybersquatting cannot stand, unless, *first*, a complaining party has a valid trademark entitled to protection that was distinctive or famous at the

time the domain name was registered, and *second*, the defendant used, registered, or trafficked in the domain name with a bad faith intent to profit.

30. These required elements are lacking in this case.

31. Blair could not have *registered* a domain name that was confusingly similar to a U.S. trademark that was distinctive at the time of registration -- Lamborghini did not have a USPTO registration and had never used LAMBO in U.S. commerce at the time Blair acquired the Disputed Domain.

32. Upon information and belief, Defendant was aware that its UDRP Complaint needed to meet the standards not of the UDRP, but of the *Lanham Act*. It was not enough to craft a complaint that could prevail in an administrative dispute proceeding.

33. Upon information and belief, Defendant possesses no common law trade or service mark rights and no rights under the Lanham Act in connection with goods and/or services under the name, "LAMBO."

34. At no point did Plaintiff offer the Disputed Domain for sale to Lamborghini or a competitor, as falsely alleged in the UDRP Complaint.

35. Plaintiff acquired the Disputed Domain for its inherent value as a five-letter domain name.

36. Without any proprietary rights or interests in a LAMBO trademark in the U.S., Defendant had no basis to support the filing of the UDRP Proceeding.

37. Defendant's sole argument in the Proceeding was that Plaintiff's offering the Disputed Domain for sale at a high price constitutes bad faith. However, speculating on domain names that were purchased *in good faith* is not bad faith. As the dissenting panelist explained in the Proceeding, "Offering a domain name for sale, at any price, is not in bad faith when the domain name may be of interest and value to a

wide variety of potential purchasers within any of its many meanings of which evidence has been given. That is the only use in question, as the Respondent has not used the domain name for anything else. Putting the domain name up for sale is the only use to which he has put the domain name and that use is entirely lawful, no matter what the price the seller asks."

38. Plaintiff greatly values short word domain names and has offered numerous other domain names – not just the Disputed Domain – for sale at what may be considered a "high" price. See, e.g. <dnas.com>, <asz.com> and others.

39. Plaintiff Blair is not concerned with selling the domain names he owns – he values them as investment assets whether they sell at his price or not.

40. Indeed, Plaintiff has listed generic domain names that he owns for sale for seven and eight figure prices, because he values the domains at those prices. In other words, it would not be worthwhile for him to give up domain assets that he could potentially develop for less than the amounts that they are worth to him. <Lambo.com> became Plaintiff's online identity, which is why he values it so highly. For the above reasons, Plaintiff seeks a declaration that the Disputed Domain is rightfully owned by Plaintiff.

41. In accordance with the Internet Corporation for Assigned Names and Numbers (ICANN) Policy, Plaintiff provided notice to Defendant that a lawsuit would be commenced against it concerning the Disputed Domain name within a ten-day period.

**COUNT ONE**
**Declaration Under Anticybersquatting Consumer Protection Act**

42. Plaintiff realleges and incorporates paragraphs 1-41 above.

43. As stated above, Defendant lacks trademark rights in the United States and under the Lanham Act.

44. As such, Plaintiff's registration of the Disputed Domain violates no right of Defendant's under the Anticybersquatting Consumer Protection Act, 15 U.S.C. 1125(d).

45. As a result, because the Disputed Domain was registered by Plaintiff because of its inherent value as a five-letter domain name that corresponds with his nickname, it cannot have been registered with the bad faith intent to profit off of a trademark that Defendant did not own and/or was not distinctive in the U.S. at the time of registration.

46. In registering the Disputed Domain, Plaintiff did not have a bad faith intent, as provided in 15 U.S.C. § 1125(d)(1)(A)(i), to profit from any mark alleged to be owned by Defendant.

47. In registering the Disputed Domain, Plaintiff did not have the intent, as provided in 15 U.S.C. § 1125(d)(1)(B), to divert consumers from Defendant's online location to a site accessible under the Disputed Domain that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site.

48. In registering the Disputed Domain, and at no time since registration, has Plaintiff offered to transfer, sell, or otherwise assign "Lambo.com" to Defendant or a competitor, nor is there prior conduct by Plaintiff indicating a pattern of such conduct.

49. Plaintiff has not registered or acquired multiple domain names that he knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are

famous at the time of registration of such domain names, without regard to the goods or services of the parties.

50. Plaintiff has not registered, trafficked in, or used a domain name that at the time the Disputed Domain was registered in 2018, was identical or confusingly similar to any mark alleged to be owned by Defendant.

51. Plaintiff believed and had reasonable grounds to believe that his registration of the Disputed Domain was lawful.

52. As required by 15 U.S.C. § 1114(2)(D), Plaintiff has given notice to Defendant of his intent to file an action to establish that Plaintiff's acquisition and use of the Disputed Domain is not unlawful under the ACPA.

## COUNT TWO
## Declaratory Judgment

53. Plaintiff realleges and incorporates paragraphs 1-52, above.

54. A dispute exists between Plaintiff and Defendant concerning Plaintiff's right to acquire and use the Disputed Domain. As a consequence of the dispute, an actual and justiciable controversy exists between Plaintiff and Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

(a) Declaring that Plaintiff's acquisition and use of the domain name <Lambo.com> is not unlawful under the ACPA, 15 U.S.C. § 1125(d);

(b) Declaring that Plaintiff's acquisition and use of the domain name <Lambo.com> does not constitute a registration with the bad faith intent to profit from any mark alleged to be owned by Defendant under the ACPA, 15 U.S.C. § 1125(d);

(c) Declaring that Plaintiff is not required to transfer the domain name <Lambo.com> to Defendant;

(d) Declaring that the Registrar NameSilo LLC shall not transfer the registration for the domain name <Lambo.com> to Defendant;

(e) For such other and further relief as the Court shall deem appropriate.

Dated: August 24, 2022

          LEWIS & LIN, LLC

          By: /s/ Brett E. Lewis
          Brett E. Lewis (*pro hac vice forthcoming*)
          77 Sands Street, 6th Floor
          Brooklyn, NY 11201

          Tel: (718) 243-9323
          Fax: (718) 243-9326
          brett@iLawco.com
          *Attorneys for Plaintiff*