Brett E. Lewis (Pro Hac Vice)
LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: Brett@iLawco.com

*Attorneys for Plaintiff Richard Blair*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Blair,<br><br>   Plaintiff,<br><br>vs.<br><br>Automobili Lamborghini S.p.A.,<br><br>   Defendant. | Case No.: 2:22-cv-01439-ESW<br><br>**FIRST AMENDED COMPLAINT** |

### NATURE OF THE ACTION

1. This action seeks declaratory relief pursuant to 15 U.S.C. § 1114(2)(D)(v) to establish that the registration and Plaintiff Richard Blair's use of the domain name <Lambo.com> (hereinafter the "Disputed Domain") are not unlawful under the Anticybersquatting Consumer Protection Act ("ACPA").

### THE PARTIES

2. Plaintiff Richard Blair is a citizen of the United Kingdom with a residence at 8 West St., San Rafael, CA 94901.

3. Upon information and belief, Defendant Automobili Lamborghini S.p.A.("Lamborghini") is an Italian company with an address at 12 Via ModenaI-40019, Sant'Agata Bolognese, Italy.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.§ 1331, 15 U.S.C. § 1114(2)(D)(v), and 28 U.S.C. § 2201 that Plaintiff's acquisition and use of the Disputed Domain is not unlawful under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d).

5. This Court has personal jurisdiction over Defendant as a result of Defendant's initiation of an administrative proceeding against the Disputed Domain pursuant to the Uniform Domain Name Dispute Resolution Policy ("UDRP").

6. Venue is proper in this District under 28 U.S.C. § 1391 (b)(2). A substantial part of the property that is the subject of this action is situated in this District. Moreover, venue is proper in this district due to Defendant's voluntary submission to this Court's jurisdiction when Defendant filed a complaint with the World Intellectual Property Office (WIPO) arbitration and mediation center concerning Plaintiff's alleged registration and use of the Disputed Domain.

7. The Disputed Domain has its situs in this District within the meaning of 15 U.S.C. §1125(d)(2)(C). The registrar for the Disputed Domain is NameSilo LLC, which is not only headquartered in this District, but upon information and belief also has additional business locations in this District.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

8. The Plaintiff Richard Blair is a domain name investor who uses the nickname "Lambo." Plaintiff Blair is known in online communities and in a personal capacity by the name "Lambo," which corresponds directly with the Disputed Domain.

9. Plaintiff Blair acquired the <Lambo.com> domain name in February 2018 because it is a five-letter domain name that can be used for a variety of goods and services. Soon after acquiring the Disputed Domain, Blair adopted "Lambo" as a private alias for his activities and to build an online profile in various communities.

10. The WHOIS records for <Lambo.com> show that the original registration date for the Disputed Domain is March 5, 2000. At the time of its initial registration, Defendant had not registered a trademark for the term LAMBO in the U.S. or anywhere else in the world.

11. Plaintiff Blair initially planned on developing a website at the Disputed Domain that would showcase his various interests and exploits in a personal

FIRST AMENDED COMPLAINT - 3

1  and professional capacity. Those plans were subsequently delayed and
2  abandoned.

3  12. Plaintiff Blair owns over one hundred domain names, including inherently
4  valuable short word domain names, as well as dictionary or common word
5  domain names and domain names that are composed of numbers. A
6  representative sample includes <ASZ.com>, <aess.com>, <adlux.com>,
7  <dnas.com>, <Algar.com>, <HighIQ.com>, <sicos.com>, <wywy.com>,
8  <CigarRoller.com>, <88287.com> and many others. None of the domain
9  names in his portfolio are similar to known trademarks.

10 13. Plaintiff Blair generally purchases his domain names on the secondary
11  market, paying market prices for domain assets that he may develop, sell or
12  hold on to. For Blair, development potential and ideas are innate to the act of
13  domain investing.

14 14. Blair has a history of developing domain names – for example,
15  <sociology.com>, <marketingstrategies.com> & <chinesecoins.com> – and
16  he has projects underway on <datafeed.com> and <ceec.com>.

17 15. Plaintiff Blair does not purchase domain names with the primary intent to
18  sell them. Although he does list domain names for sale, he does not expect
19  to sell them, given the prices he sets, and most will never sell. He has never

20

been accused of infringing the intellectual property rights of others before now.

16. When Plaintiff Blair acquired the Disputed Domain, he was unaware that the Defendant Lamborghini owned a trademark registration in the Europe Union for the term LAMBO for vehicles or claimed any rights in the term.

17. Further, when Blair acquired the Disputed Domain in February 2018, Lamborghini did not own an active trademark registration in the U.S., where Blair is domiciled. Lamborghini had owned a U.S. registration for LAMBO that was based on its EU registration. As a result, Lamborghini did not have to file evidence of use in U.S. commerce prior to registration. At the time a post registration Declaration of Use was due in 2017, Lamborghini allowed its LAMBO registration to lapse. It was eventually canceled by the USPTO that same year. This all occurred prior to Plaintiff's acquisition of the Disputed Domain.

18. Lamborghini has never filed evidence that a LAMBO trademark was used in the U.S. with the USPTO. On information and belief, Lamborghini has never used LAMBO as a trademark in the U.S.

19. Lamborghini's EU registration for LAMBO did not require that it first prove use of the name in commerce for the claimed services. On information and

belief, Lamborghini has never used LAMBO as a trademark in Europe or anywhere in the world.

20. Currently, the term "Lambo" is being used by third parties in various ways that have no connection to Lamborghini or cars – for example, it is used as a nickname, a surname (including the surname of U.S. football player Josh Lambo), the name of a film, a cartoon character, a name for wool products, the name of a music album by a Greek singer, the name for corporate entities, the brand name of an allegedly rejuvenating cream, as well as vegetarian capsules, and numerous other uses. There is also a current USPTO trademark registration dated May 28, 2019 for use of the word LAMBO for beard trimmers, electric razors and other goods. Thus, there is significant third-party use of "Lambo" for a variety of goods and services that do not involve Lamborghini at all.

21. By contrast, there is no evidence that consumers exclusively associate the term LAMBO with Lamborghini.

22. Plaintiff Blair's acquisition of the Disputed Domain because of its inherent value as a five-letter domain name that can be used for a variety of reasons is evident based on third party use of the term. Blair has a demonstrated right to the Disputed Domain and a legitimate interest in owning it. As such, he

can set a "for sale" price at any price he wishes, even one that Lamborghini may deem excessively high.

23. Blair has not done anything that would negate his right to acquire and own the Disputed Domain. He has not targeted Lamborghini or its trademarks or any third party, he has not pretended to be Lamborghini, nor has he passed himself off as such, misled any Internet users, sold counterfeit goods, engaged in typo-squatting to confuse the market, gone off on a phishing expedition, or used the Disputed Domain for pay-per-click income or in any other way improperly.

24. Blair did not purchase the Disputed Domain to sell it to Lamborghini or to a competitor. Blair has never contacted Lamborghini or its competitors about buying the Disputed Domain. Instead, Blair purchased the Disputed Domain, considered development plans for a website and then decided to offer it for sale to the world at large on the general market. None of Blair's actions can be considered registration and use of the Disputed Domain in bad faith.

25. On April 29, 2022, Defendant Lamborghini submitted a complaint with WIPO, initiated an administrative proceeding alleging that Plaintiff registered and used the Disputed Domain in bad faith, and sought a decision to transfer the ownership rights of the Disputed Domain to Lamborghini.

26. By submitting the complaint with WIPO, Defendant Lamborghini is bound by the terms of the Uniform Domain Name Dispute Resolution Policy (the "UDRP Policy").

27. The UDRP proceeding, *Automobili Lamborghini S.p.A. v. Domain Administrator, SeePrivacyGuardian.org / Richard Blair Case No. D2022-1570* (the "Proceeding") was decided by a three-member WIPO panel on August 2, 2022, with one panelist dissenting. The majority of the panel issued a decision directing transfer of the Disputed Domain to Defendant Lamborghini. Plaintiff Blair was not represented by legal counsel in the Proceeding.

28. Section 4(k) of the UDRP Policy provides that the Respondent in the Proceeding has ten business days to commence an action in this district to stop the transfer of the Disputed Domain from taking place. Section 4(k) expressly allows for domain name decisions to be suspended, pending the outcome of a *de novo* decision by a court of competent jurisdiction.

29. In commencing the Proceeding, Defendant *chose* to submit itself to be contractually bound by the terms of the UDRP Policy, which provides for the filing of a civil action "to establish that the *registration* or *use* of the domain name by such registrant is not unlawful under this chapter." In so doing, Defendant also agreed to submit to the jurisdiction of this Court, the

place where the registrar for the Disputed Domain is located, for the adjudication of the dispute.

30. The Policy does not restrict the right of a party to a UDRP process to seek judicial relief in any way, and does not limit the ability to do so to the original registrant of the domain name.

31. Indeed, having availed itself of the Proceeding, and having sought a ruling that Plaintiff "registered" and "used" the Disputed Domain in bad faith, Defendant cannot circumvent Section 4(k) of the Policy by claiming that Plaintiff did *not* "register" the Disputed Domain. Defendant argues that the dispute over the <Lambo.com> domain name is not subject to judicial review, because Plaintiff was not the *original* registrant of the Disputed Domain, however, this would not preclude Plaintiff from seeking declaratory relief based on the original registration of the Disputed Domain and Plaintiff's use, thereof.

32. Under U.S. law, a claim for cybersquatting cannot stand, unless, *first*, a complaining party has a valid trademark entitled to protection that was distinctive or famous at the time the domain name was registered, and *second*, the defendant used, registered, or trafficked in the domain name with a bad faith intent to profit.

33. These required elements are lacking in this case.

34. Blair could not have *registered* a domain name that was confusingly similar to a U.S. trademark that was distinctive at the time of registration -- Lamborghini did not have a USPTO registration and had never used LAMBO in U.S. commerce at the time Blair acquired the Disputed Domain.

35. What's more, the Disputed Domain was registered in 2000. It could not have been registered with the intent to target Lamborghini's claimed LAMBO trademark, or any distinctive U.S. trademark – Lamborghini did not have a trademark registration for LAMBO in the U.S. or anywhere else at that time, and had never used LAMBO as a trademark in U.S. commerce at the time the Disputed Domain was originally registered.

36. Upon information and belief, Defendant possesses no common law trade or service mark rights and no rights under the Lanham Act in connection with goods and/or services under the name, "LAMBO."

37. At no point did Plaintiff offer the Disputed Domain for sale to Lamborghini or a competitor, as falsely alleged in the UDRP Complaint.

38. Plaintiff acquired the Disputed Domain for its inherent value as a five-letter domain name.

39. Defendant's sole argument in the Proceeding was that Plaintiff's offering of the Disputed Domain for sale at a high price constitutes bad faith. However, speculating on domain names that were purchased in good faith, is not

evidence of bad faith. As the dissenting panelist explained in the Proceeding, "Offering a domain name for sale, at any price, is not in bad faith when the domain name may be of interest and value to a wide variety of potential purchasers within any of its many meanings of which evidence has been given. That is the only use in question, as the Respondent has not used the domain name for anything else. Putting the domain name up for sale is the only use to which he has put the domain name and that use is entirely lawful, no matter what the price the seller asks."

40. Plaintiff greatly values short word domain names and has offered numerous other domain names – not just the Disputed Domain – for sale at what may be considered a "high" price. See, e.g. <dnas.com>, <asz.com> and others.

41. Plaintiff Blair is not concerned with selling the domain names he owns – he values them as investment assets whether they sell at his price or not.

42. Indeed, Plaintiff has listed generic domain names that he owns for sale for seven and eight figure prices, because he values the domains at those prices. In other words, it would not be worthwhile for him to give up domain assets that he could potentially develop for less than the amounts that they are worth *to him*. <Lambo.com> became Plaintiff's online identity, which is why he values it so highly. For the above reasons, Plaintiff seeks a declaration that the Disputed Domain is rightfully owned by Plaintiff.

43. In accordance with the UDRP Policy, Plaintiff provided notice to Defendant that a lawsuit would be commenced against it concerning the Disputed Domain name within a ten-day period.

## COUNT ONE
## Declaration Under Anticybersquatting Consumer Protection Act

44. Plaintiff realleges and incorporates paragraphs 1-43 above.

45. As stated above, Defendant lacks trademark rights in the United States and under the Lanham Act.

46. As such, both the original registration, and Plaintiff's acquisition and use, of the Disputed Domain violate no right of Defendant's under the Anticybersquatting Consumer Protection Act, 15 U.S.C.1125(d).

47. As a result, because the Disputed Domain was originally registered in 2000 and acquired by Plaintiff because of its inherent value as a five-letter domain name that corresponds with the nickname he wished to adopt, it cannot have been registered with the bad faith intent to profit off of a trademark that Defendant did not own and/or was not distinctive in the U.S. at the time of registration.

48. In registering the Disputed Domain, the original registrant did not have a bad faith intent, as provided in 15 U.S.C. § 1125(d)(1)(A)(i), to profit from any

1   mark alleged to be owned by Defendant. Plaintiff similarly had no such bad
2   faith intent to register or use the Disputed Domain.

3   49.  Plaintiff acquired all rights of the original registrant of the Disputed Domain,
4        relating back to its original registration date of March 5, 2000.

5   50.  Plaintiff did not have the intent, as provided in 15 U.S.C. § 1125(d)(1)(B), to
6        divert consumers from Defendant's online location to a site accessible under
7        the Disputed Domain that could harm the goodwill represented by the mark,
8        either for commercial gain or with the intent to tarnish or disparage the
9        mark, by creating a likelihood of confusion as to the source, sponsorship,
10       affiliation, or endorsement of the site.

11  51.  And at no time since he acquired the Disputed Domain, has Plaintiff offered
12       to transfer, sell, or otherwise assign "Lambo.com" to Defendant or a
13       competitor, nor is there prior conduct by Plaintiff indicating a pattern of such
14       conduct.

15  52.  Plaintiff has not registered or acquired multiple domain names that he knows
16       are identical or confusingly similar to marks of others that are distinctive at
17       the time of registration of such domain names, or dilutive of famous marks
18       of others that are famous at the time of registration of such domain names,
19       without regard to the goods or services of the parties.

20

53. Plaintiff has not registered, trafficked in, or used a domain name that was identical or confusingly similar to any mark alleged to be owned by Defendant at the time of the original registration in 2000 or acquisition by Plaintiff in 2018.

54. Plaintiff believed and had reasonable grounds to believe that the registration of the Disputed Domain was lawful, and that his acquisition and use of the Disputed Domain was lawful.

55. As required by 15 U.S.C. § 1114(2)(D), Plaintiff has given notice to Defendant of his intent to file an action to establish that the registration and Plaintiff's use of the Disputed Domain is not unlawful under the ACPA.

## COUNT TWO
### Declaratory Judgment Under 28 U.S.C. § 2201

56. Plaintiff realleges and incorporates paragraphs 1-55, above.

57. A dispute exists between Plaintiff and Defendant concerning Plaintiff's right to acquire and use the Disputed Domain. As a consequence of the dispute, an actual and justiciable controversy exists between Plaintiff and Defendant.

58. As set forth above, Plaintiff is entitled to a declaratory judgment that he is the rightful owner of the Disputed Domain.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment:

1      (a) Declaring that the registration and Plaintiff's acquisition and use of the domain name <Lambo.com> is not unlawful under the ACPA, 15 U.S.C. § 1125(d);

    (b) Declaring that the registration and Plaintiff's acquisition and use of the domain name <Lambo.com> does not constitute a registration with the bad faith intent to profit from any mark alleged to be owned by Defendant under the ACPA, 15 U.S.C. § 1125(d);

    (c) Declaring that Plaintiff is not required to transfer the domain name <Lambo.com> to Defendant;

    (d) Declaring that the Registrar NameSilo LLC shall not transfer the registration for the domain name <Lambo.com> to Defendant;

    (e) For such other and further relief as the Court shall deem appropriate.

Dated: March 9, 2023

                                **LEWIS & LIN, LLC**
                       By:  */s/ Brett E. Lewis*
                                Brett E. Lewis (pro hac vice)
                                77 Sands Street, 6th Floor
                                Brooklyn, NY 11201
                                Tel: (718) 243-9323
                                Fax: (718) 243-9326
                                brett@iLawco.com

                                *Attorneys for Plaintiff*

FIRST AMENDED COMPLAINT - 15