Brett E. Lewis (Pro Hac Vice)
LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: Brett@iLawco.com

*Attorneys for Plaintiff Richard Blair*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Blair,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Automobili Lamborghini S.p.A.,<br><br>　　　　　Defendant. | Case No.: 2:22-cv-01439-ESW<br><br><br>**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

Plaintiff Richard Blair ("Plaintiff"), by and through the undersigned counsel, submits this memorandum of law in opposition to Defendant Automobili Lamborghini S.p.A.'s ("Defendant's") motion to dismiss under Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss").

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT .................................................................1

II.     ARGUMENT ........................................................................................3

    A.      Plaintiff Can Plead and Has Sufficiently Pleaded a Claim for
        Declaratory Relief under the ACPA ......................................................3

    B.      Plaintiff May Seek, and Has Sufficiently Pleaded a Cause of Action
        for, Declaratory Relief for His Lawful "Use" of the Domain Name
        under the ACPA ..................................................................................10

    C.      Defendant Is Bound by the Terms of the UDRP Policy, Which
        Mandates Plaintiff's Right to Bring This Action to Seek Independent
        Judicial Resolution of a Domain Name Dispute ................................11

    D.      Count II Is Not Duplicative to Count I, as it Seeks an Adjudication of
        Plaintiff's Rights Under the Lanham Act, not Covered by 15 U.S.C. §
        1114(2)(D)(v) ....................................................................................13

III.    CONCLUSION ...................................................................................17

i

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM, 2011 WL 5007919 (D.
   Ariz. Oct. 20, 2011)............................................................ 9, 10, 14, 18

*AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM, 2012 WL 3638721 (D.
   Ariz. Aug. 24, 2012) .......................................................................13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................8

*Baklan v. All Answers Ltd.*, No. CV-20-00707-PHX-JZB, 2020 WL 6063254 (D.
   Ariz. Oct. 14, 2020)....................................................................9, 15

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................8

*Calista Enterprises Ltd. v. Tenza Trading Ltd.*, No. 3:13-CV-01045-SI, 2014 WL
   3695487 (D. Or. July 24, 2014) ....................................................21

*Cousins v. Lockyer*, 568 F.3d 1063 (9th Cir. 2009).................................8

*deltaventure GmbH v. Pay.io*, No. CV-20-00363-PHX-MTM, 2020 WL 5912337
   (D. Ariz. Oct. 6, 2020) ...............................................................19

*Dent v. Lotto Sport Italia S.p.A.*, No. CV-17-00651-PHX-ROS, 2018 WL
   11318189 (D. Ariz. Feb. 12, 2018) .............................................10

*Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2020 WL 1170840
   (D. Ariz. Mar. 11, 2020) ....................................... 13, 14, 15, 19

*GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011) ............................ 10, 12, 13, 15

*IFIXITUSA LLC v. iFixit Corp.*, No. CV-21-00887-PHX-DGC, 2022 WL 2117845

(D. Ariz. June 13, 2022)................................................................ 9, 10, 19, 20

*Kompella v. United States Citizenship & Immigr. Servs.*, No. CV-20-00190-PHX-

DJH, 2021 WL 3883589 (D. Ariz. Aug. 31, 2021) ..............................................11

*Loblaw Companies Ltd. v. Azimi*, No. C 00 3591 WHO, 2001 WL 36028016 (N.D.

Cal. Oct. 17, 2001) ........................................................................17

*Noveshen v. Bridgewater Assocs., LP*, 47 F. Supp. 3d 1367 (S.D. Fla. 2014)........15

*Pocketbook Int'l SA v. Domain Admin/SiteTools, Inc.*, No. CV 20-8708-DMG

(PDX), 2021 WL 1422784 (C.D. Cal. Apr. 13, 2021)................................... 17, 18

### Statutes

15 U.S.C. § 1114(2)(D)(v) ......................................................... 9, 11, 16, 17

15 U.S.C. § 1125(d)(1)(A)(ii) .........................................................16

### Other Authorities

S. REP. 106-140 (Aug. 5, 1999) ........................................................11

UDRP Policy Rule 4(k)...............................................................17

1    **I.      PRELIMINARY STATEMENT**

2         Plaintiff respectfully refers this Court to the First Amended Complaint (ECF

3    No. 21) ("FAC") for a full recital of the relevant facts. For the purposes of this

4    Opposition, Plaintiff realleges as follows.

5         Plaintiff is the registrant of the domain name <lambo.com> ("Domain

6    Name"). The Domain Name was originally registered by a non-party in 2000 –

7    Plaintiff acquired it in 2018. (FAC ¶¶ 9, 10.) Plaintiff brought this lawsuit to stop

8    the transfer of the Domain Name to Defendant's control following an

9    administrative proceeding before the World Intellectual Property Organization

10   ("WIPO"). (*See* FAC ¶¶ 27, 28.).

11        On April 29, 2022, Defendant submitted a complaint with the World

12   Intellectual Property Organization ("WIPO"), and initiated an administrative

13   proceeding, alleging that Plaintiff both *registered* and *used* the Domain Name in

14   bad faith. Defendant sought a transfer of the Domain Name. (FAC ¶ 25.) By

15   submitting the complaint for resolution by WIPO, Defendant agreed to be bound

16   by the terms of the Uniform Domain Name Dispute Resolution Policy (the "UDRP

17   Policy"). (FAC ¶ 26.). The UDRP proceeding, *Automobili Lamborghini S.p.A. v.

18   Domain Administrator, SeePrivacyGuardian.org / Richard Blair*, Case No. D2022-

19   1570 ("UDRP Proceeding"), was decided by a three-member WIPO panel on

20   August 2, 2022, with one panelist dissenting. The majority of the panel issued a

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS - 1

1   decision directing transfer of the Domain Name to Defendant ("UDRP Decision").

2   (FAC ¶ 27.)

3         On August 24, 2022, Plaintiff filed this lawsuit for a *de novo* judicial review

4   of his rights in and to the Domain Name, and to stop the transfer of the Domain

5   Name to Defendant. In response, Defendant filed the Motion to Dismiss on March

6   30, 2023, claiming that Plaintiff lacked standing to seek relief under 15 U.S.C. §

7   1114(2)(D)(v) because he is not the "original" registrant of the Domain Name.

8   Defendant similarly moves to dismiss Count II – which seeks a declaratory

9   judgment that Plaintiff is the "rightful" owner of the Domain Name – as

10  duplicative of Plaintiff's Anticybersquatting Consumer Protection Act ("ACPA")

11  Claim.

12        Defendant's "original registrant" argument has no basis in fact or law,

13  distorts the plain language of the ACPA, and violates the UDRP Policy, to which

14  Defendant agreed to be bound – it should thus be rejected. Defendant also wholly

15  disregards Plaintiff's request under Section 1114(2)(D)(v) for a declaration that his

16  *use* of the Domain Name was not unlawful. Defendant's argument concerning

17  Plaintiff's claim under 28 U.S.C. § 2201 also lacks merit. A controversy exists

18  regarding claims of trademark infringement and dilution, which Defendant alleged

19  in the context of the UDRP Proceeding. Such claims arise under the Lanham Act –

20

1  beyond the scope of the ACPA – and support Plaintiff's request for a declaration

2  that Plaintiff is the *rightful* owner of the Domain Name.

3  **II.      ARGUMENT**

4          Under Rule 12(b)(6), the factual allegations of the complaint are taken as

5  true and construed in the light most favorable to the plaintiff. *See Bell Atl. Corp. v.*

6  *Twombly*, 550 U.S. 544, 556 (2007); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th

7  Cir. 2009). A complaint that sets forth a cognizable legal theory will survive a

8  motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state

9  a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

10 (2009) (citing *Twombly*, 550 U.S. at 570).

11         Plaintiff asserts two claims in the FAC: (1) Claim I seeks a declaration under

12 the ACPA that the original registration of the Domain Name, as well as his

13 acquisition and use of the Domain Name, are not unlawful; (2) Claim II seeks a

14 declaratory judgment under 28 U.S.C. § 2201 that he is the rightful owner of the

15 Domain Name, which encompasses a number of potential challenges to his

16 ownership, including assertions of other Lanham Act violations.

17     **A. Plaintiff Can Plead and Has Sufficiently Pleaded a Claim for**
       **Declaratory Relief under the ACPA**

18         It is hornbook law that a domain name registrant may seek *de novo* review

19 by a court of competent jurisdiction of an administrative (WIPO) decision

20 transferring a domain name registration, on the grounds that the registration or use

of such domain name was not unlawful, as the right to such judicial review is provided statutorily:

> A domain name *registrant* whose domain name has been suspended, disabled, or transferred under a policy described under clause (ii)(II) may, upon notice to the mark owner, file a civil action to establish that the *registration* or *use* of the domain name by such registrant is not unlawful under this chapter. The court may grant injunctive relief to the domain name registrant, including the reactivation of the domain name or transfer of the domain name to the domain name registrant.

15 U.S.C. § 1114(2)(D)(v) (emphasis added); *see also IFIXITUSA LLC v. iFixit Corp.*, No. CV-21-00887-PHX-DGC, 2022 WL 2117845, at *2 (D. Ariz. June 13, 2022) (citing the statute); *AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM, 2011 WL 5007919, at *2 (D. Ariz. Oct. 20, 2011) (same). When a disputed domain name has not actually been transferred, if the transfer is certain to occur absent a filing of lawsuit to challenge an administrative decision under the UDRP, courts treat it as that the transferring process has begun under the ACPA. *See IFIXITUSA LLC*, 2022 WL 2117845, at *2 (citing *Baklan v. All Answers Ltd.*, No. CV-20-00707-PHX-JZB, 2020 WL 6063254, at *3 (D. Ariz. Oct. 14, 2020)). Defendant asserts that no such right to independent judicial review exists.

To show that the registration or use of a domain name is not unlawful under § 1125(d)(1), a plaintiff must "prove either (1) [it] did not *register*, *traffic*, or *use* a domain name that is identical or confusingly similar to a distinctive mark, or (2) [it] did not have a bad faith intent to profit from that mark." *IFIXITUSA LLC*, 2022

WL 2117845, at *3 (referring to *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011)) (emphasis added); *see also Dent v. Lotto Sport Italia S.p.A.*, No. CV-17-00651-PHX-ROS, 2018 WL 11318189, at *3 (D. Ariz. Feb. 12, 2018); *AIRFX.com*, 2011 WL 5007919, at *4 (denying defendant's motion to dismiss plaintiff's ACPA reverse domain name hijacking claim). Courts have acknowledged that it is difficult to plead a negative with great specificity, and the plausibility standard under Twombly and Iqbal does not require detailed factual allegations. *See, e.g., IFIXITUSA LLC*, 2022 WL 2117845, at *4.

Plaintiff has sufficiently alleged all the above elements in the FAC. First, Plaintiff acquired the Domain Name in February 2018, and has been its registrant ever since. (FAC ¶ 9.) Second, the Domain Name was ordered to be transferred to Defendant pursuant to the UDRP Proceeding. (FAC ¶¶ 25, 27.) Third, Plaintiff provided notice to Defendant of his intent to file this action. (FAC ¶ 43). Fourth, this action seeks a ruling that the registration of the domain name and Plaintiff's use, thereof, are not unlawful under 15 U.S.C. § 1125(d). (FAC ¶¶ 4, 29, 55.) Only the last element is disputed by Defendant. Under its erroneous interpretation of the *GoPets* decision, Defendant asserts that only an *original* registrant of a domain name has standing to seek declaratory relief under 15 U.S.C. § 1114(2)(D)(v) following an adverse UDRP decision, because only one party may "register" each domain name (Motion to Dismiss at 7), which is specious.

1   Defendant's reading of § 1114(2)(D)(V) runs afoul the statute, itself, and the

2   general construction of the ACPA—the ACPA generally provides that a domain

3   name *registrant* may, in certain circumstances, seek declaratory relief that the

4   registration of a domain name is not unlawful. 15 U.S.C. § 1114(2)(D)(V).  There

5   is nothing in the ACPA that limits this relief to the first party to register a domain

6   name. Indeed, the statute makes no distinction between an "initial registrant" or a

7   "subsequent registrant." Had Congress wanted to limit such right to seek relief to

8   the initial registrant of a domain name, it could have done so by simply adding a

9   qualifier before the term "registrant" in the statute. *See Kompella v. United States*

10   *Citizenship & Immigr. Servs.*, No. CV-20-00190-PHX-DJH, 2021 WL 3883589, at

11   *11 (D. Ariz. Aug. 31, 2021); *see also* S. REP. 106-140, 8–9 (Aug. 5, 1999)

12   (legislative history of the ACPA makes no distinction between an initial registrant

13   and subsequent registrants).

14   Defendant, nevertheless, claims that the *GoPets* decision compels this

15   absurd result. Defendant cites *GoPets* to argue that only the first party to register a

16   domain name actually *registers* it. Defendant contends that since Plaintiff was not

17   the original registrant of the Domain Name, he could not have "registered" it, and,

18   therefore, cannot seek relief under Section 1114(2)(D)(v). (Motion to Dismiss at

19   8.) Defendant's statutory construction is nonsensical, and adopting the rule put

20   forth by Defendant would for most domain name registrants frustrate the purpose

of Section 1114(2)(D)(v), which is to grant an aggrieved party the right to seek judicial review of the lawfulness of their registration or use of a given domain name. However, even were the Court to agree that only a single party can "register" a domain name, Plaintiff still would have the right to an adjudication of the lawfulness of the original registration of the Domain Name, under *GoPets*. *GoPets*, 657 F.3d at 1032.

*GoPets* is fundamentally at odds with Defendant's reasoning, and its holding undermines Defendant's entire position. In *GoPets*, the disputed domain name, <gopets.com>, was registered by Edward Hise in 1999, and later conveyed to his company in December 2006. *Id.* at 1028. The disputed domain name was originally registered *before* the complaining trademark holder had made the first use of its trademark in August 2004, but the subsequent transfer took place after trademark rights had accrued. *Id.* 1027–28. Faced with deciding what it meant to "register" a domain name, within the context of the 15 U.S.C. § 1125(d), the Ninth Circuit held that "registration" refers to only the initial registration of a domain name. *Id.* at 1031. However, when a subsequent registrant obtains a domain name by transfer, they receive all of the rights to the domain name that the original registrant possessed. *Id.* at 1031–32. Accordingly, the Ninth Circuit in *GoPets* found that the initial registration of <gopets.com> predated – and, thus, could not infringe – the "GOPETS" trademark, and that a subsequent transfer and re-

registration of gopets.com after the "GOPETS" mark came into use did not violate the ACPA. *Id.* at 1032.

Courts in this District follow the *GoPets* approach to resolve ACPA disputes. *AIRFX.com v. AirFX LLC* involved a similar matter where the plaintiff purchased the domain name, <airfx.com>, from a non-party initial registrant. <Airfx.com> was initially registered in 2003, and the plaintiff purchased the domain in 2007. No. CV 11-01064-PHX-FJM, 2012 WL 3638721, at *2 (D. Ariz. Aug. 24, 2012). The defendant applied for a trademark for "AirFX" in 2005. *Id.* The court applied *GoPets* as "squarely on point" and ruled that <airfx.com> was initially registered prior to the defendant's use of the "AirFX" mark, thus the plaintiff's subsequent ownership of the domain name did not violate the ACPA. *Id.* at *4. Similarly, in *Dent v. Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2020 WL 1170840 (D. Ariz. Mar. 11, 2020), the court concluded that the plaintiff received all rights to a 1998-registered domain name, <lottoworks.com>, when he acquired it in 2016, and the plaintiff's acquisition of <lottoworks.com> did not infringe Defendant's 2009-registered trademark "LOTTO WORKS." *Id.* at *8. *Dent* involved another domain name, <lottostore.com>, for which the defendant did not have a registered trademark or any common law use. Hence, the court held that Dent's 2016-acquisition of <lottostore.com> was not unlawful. *Id.*

1       Under *GoPets* and its progeny in this District, if the original registration of a

2   domain name was not unlawful under the ACPA, then the subsequent acquisition

3   of such a domain name by a third party is not unlawful. Plaintiff has sufficiently

4   pleaded this in the FAC. Here, the Domain Name was originally registered by a

5   non-party on March 5, 2000, predating Defendant's now-lapsed registration of a

6   U.S. trademark for "LAMBO" (FAC ¶¶ 10, 17.) Plaintiff pleads that the original

7   registration of the Domain Name in 2000 did not violate the ACPA (FAC ¶¶ 10,

8   35, 36, 48), and Defendant appears to not contest that Plaintiff so-pleaded. (Motion

9   to Dismiss at 7-8). Plaintiff further pleads that he acquired all rights of the original

10  registrant of the Domain Name relating back to its original registration in 2000.

11  (FAC ¶ 49.) Thus, Plaintiff's pleadings have presented sufficient facts upon which

12  the Court may evaluate whether Plaintiff's rights in the Domain Name, which

13  relate back to its original date of registration, are lawful.

14      Contrary to Defendant's reading of *GoPets*, courts in this District have

15  routinely adjudicated claims brought for declaratory relief under Section

16  1114(2)(D)(V) by parties who were not the original registrants of domain names.

17  *See, e.g., AIRFX.com*, 2011 WL 5007919, at *1 (ACPA claim based on a

18  purchased domain from a non-party to the lawsuit); *Dent*, 2020 WL 1170840, at *1

19  (same); *Baklan*, 2020 WL 6063254, at *1. Were the Court to follow Defendant's

20  nonsensical argument, even a registrant under the identical facts of the *GoPets*

1   decision would be barred from seeking declaratory relief in this Court from an

2   adverse UDRP ruling.

3         Nevertheless, Defendant invokes *GoPets* as an absolute barrier to this Court

4   even considering whether the registration of the Domain Name was lawful in this

5   case. Deciding upon the lawfulness of a domain name registration usually involves

6   questions of fact, not even proper for adjudication on summary judgment, much

7   less on a motion to dismiss. *See Noveshen v. Bridgewater Assocs., LP*, 47 F. Supp.

8   3d 1367, 1376 (S.D. Fla. 2014). Yet, whether the Court finds that the word

9   "registration" under § 1114(2)(D)(v) has the same meaning as under § 1125(d), or

10  not, there should be no doubt that after *GoPets,* the term "registration" bestows

11  upon Plaintiff the right to seek a declaration as to whether it was lawful to register

12  the Domain Name *at the time that such registration occurred*. *GoPets*, 657 F.3d at

13  1032. Therefore, Defendant's argument that Plaintiff cannot invoke the ACPA

14  because he is not the "initial registrant" of the domain name is groundless and

15  should be rejected.

16   **B. Plaintiff May Seek, and Has Sufficiently Pleaded a Cause of Action for,**
         **Declaratory Relief for His Lawful "Use" of the Domain Name under the**
17       **ACPA**

18         Even if Defendant were correct in its wholly unfounded claim that only the

19  first person to register a particular domain name may seek declaratory relief,

20  Plaintiff clearly invokes his right to seek this Court's adjudication that his *use* of

the Domain Name is lawful.  The ACPA makes it clear that cybersquatting disputes may arise from the unlawful use of a domain name. 15 U.S.C. § 1114(2)(D)(V); 15 U.S.C. § 1125(d)(1)(A)(ii). Plaintiff alleges that he made permissible uses of the Domain Name. (*See* FAC ¶¶ 8, 9, 12-16, 22-24, 39-42). Defendant, nonetheless, contends that "Blair does not allege that he actually 'used' the domain name," because he did not use it in connection with an active Website. (Motion to Dismiss at 7, fn. 2.) The term "use" is not defined in the ACPA, and Defendant cites no authority to support its narrow construction of "use," as referring to only the conduct of developing a website. Such an unjustifiably narrow construction is also contrary to the interpretation argued by Defendant in its UDRP complaint, in which Defendant argued that Plaintiff used the Domain Name in bad faith by offering it for sale at a high price to the world at large. (FAC ¶¶ 24, 39.)

Defendant cannot rely on a misconstruction of the word "use" to erase the well-pleaded allegations of the Complaint. Indeed, Plaintiff cites a number of facts, which if true, would support his claims that his use of the domain name is not unlawful. (FAC ¶¶ 11, 23, 24, 34, 35, 47, 48.). Plaintiff's plea for an adjudication of the lawfulness of both the (original) registration and his use of the Domain Name pervades the FAC.

**C. Defendant Is Bound by the Terms of the UDRP Policy, Which Mandates Plaintiff's Right to Bring This Action to Seek Independent Judicial Resolution of a Domain Name Dispute**

1        Not only is Defendant's argument frivolous, but it is blatantly hypocritical.

2  When Defendant initiated the UDRP Proceeding, it agreed to be bound by the

3  UDRP Policy and all obligations therein, including the rules and policy underlying

4  Rule 4(k). Rule 4(k) allows a complainant or respondent to submit a dispute to a

5  court of competent jurisdiction for independent resolution before such mandatory

6  administrative proceeding is commenced or after such proceeding is concluded –

7  which is exactly what Plaintiff did. *See* UDRP Policy Rule 4(k); *see also*

8  *Pocketbook Int'l SA v. Domain Admin/SiteTools, Inc.*, No. CV 20-8708-DMG

9  (PDX), 2021 WL 1422784, at *4 (C.D. Cal. Apr. 13, 2021); *Loblaw Companies*

10  *Ltd. v. Azimi*, No. C 00 3591 WHO, 2001 WL 36028016, at *4 (N.D. Cal. Oct. 17,

11  2001). The § 1114(2)(D)(v) statutory schemes comports with Rule 4(k), which

12  allow a domain name registrant to seek reactivation or re-transfer of a domain

13  name back to its control, following a decision ordering its transfer. 15 U.S.C. §

14  1114(2)(D)(V)

15        Notwithstanding these rules, Defendant, after availing itself of the UDRP

16  Policy, now seeks to bypass its legal obligations and preclude Plaintiff from

17  seeking judicial review of the dispute underlying the UDRP Decision – a review to

18  which it contractually agreed. (FAC ¶ 29.) The UDRP Policy requires Defendant to

19  explicitly consent to a jurisdiction where challenges to a UDRP decision could be

20  brought. UDRP Rule 4(k); *see also AIRFX.com*, 2011 WL 5007919, at *1;

*Pocketbook Int'l SA*, 2021 WL 1422784, at *4 ("Unlike traditional binding arbitration proceedings, UDRP proceedings are structured specifically to permit the domain-name registrant two bites at the apple."). Defendant's disingenuous argument would have this Court make a rule that a complaining party could file administrative claims and obtain non-binding administrative decisions in its favor, but a registrant could not contest adverse determinations by an administrative body on those very issues, unless it was the first registrant of a domain name – despite the fact that the filing party invoked and benefitted from the UDRP Policy's framework, and agreed to submit itself to the jurisdiction of a court of competent jurisdiction for such a review. Such a ruling would gut Rule 4(k) and the entire UDRP framework, which was never intended as a substitute for judicial adjudication. *AIRFX.com*, 2011 WL 5007919, at *4 (". . . findings of the UDRP panel [] are not binding on this court"). It is almost shocking that Defendant could think that it would be permissible to avail itself of the UDRP process, and then turn around and argue that the rules that it agreed to do not apply to Lamborghini.

Therefore, for the reasons stated above, Plaintiff is entitled to plead and has sufficiently pleaded Count I and Defendant's Motion to Dismiss should be denied.

**D. Count II Is Not Duplicative to Count I, as it Seeks an Adjudication of Plaintiff's Rights Under the Lanham Act, not Covered by 15 U.S.C. § 1114(2)(D)(v)**

Declaratory relief is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *deltaventure GmbH v. Pay.io*, No. CV-20-00363-PHX-MTM, 2020 WL 5912337, at *3 (D. Ariz. Oct. 6, 2020). A claim for declaratory relief based on the same set of facts underlying an ACPA claim can serve additional useful purpose if the claim goes beyond resolving the "unlawfulness" issue under the ACPA. *See IFIXITUSA LLC*, 2022 WL 2117845, at *5; *see also Dent*, 2020 WL 1170840, at *7 (concluding, upon a review of case law and legislative history of the ACPA, that the declaratory relief under the ACPA requires a showing of non-unlawful conduct under *only* the ACPA, not the entire Lanham Act).

Plaintiff's Count II flows from 28 U.S.C. § 2201, which permits a party to file a civil action to seek a declaration of its rights in a case of actual controversy. Here, Plaintiff seeks a declaration that he is the *rightful* owner of the Domain Name. Far from being indecipherable, a declaration of rightful ownership would cover *any* claims that Defendant may assert under the Lanham Act, including for trademark infringement or dilution – not just cyberpiracy. This case is similar on its facts to *IFIXITUSA*, where the court construed the plaintiffs' claim under 28 U.S.C. § 2201 as being separate from its claim for relief under Section

1    1114(2)(D)(v). In that case, the plaintiffs sought a declaration that they were "the

2    rightful owners of the domain names and have the right to use them," based on the

3    defendant's assertion of claims sounding in trademark infringement. *IFIXITUSA*

4    *LLC*, 2022 WL 2117845, at *5. From the face of the complaint, the *IFIXITUSA*

5    court could not conclude that the 28 U.S.C. § 2201 would serve no useful purpose

6    besides the ACPA claim, and denied the defendant's motion to dismiss.

7          Here, Defendant in its complaint submitted in the UDRP Proceeding, alleged

8    that it owns registered trademarks for "Lamborghini" in the U.S. and for "Lambo"

9    in Europe and China, and that "Lamborghini" as well as "Lambo" are well-known,

10   world-famous trademarks with strong reputations. (*See* Motion to Dismiss at 2.)

11   Defendant further claimed that "Lambo" is a significant component of

12   "Lamborghini," and is the well-known and common abbreviation of Lamborghini.

13   (*Id.*) In the complaint of the UDRP Proceeding, Defendant characterized Plaintiff's

14   offering for sale of the Domain Name, which it alleged is identical or confusingly

15   similar to its alleged trademarks, as a "commercial use," and argued that "any

16   commercial use [by Plaintiff] would necessarily infringe [Defendant's] trademarks.

17   (*See* FAC ¶ 39.) Defendant also claimed that its alleged trademarks were famous,

18   implying that any use of the Domain Name would dilute Defendant's trademarks.

19   (Motion to Dismiss at 2.) Hence, Plaintiff respectfully submits that there are

20

broader issues implicated by Defendant's UDRP filing, which arise under the Lanham Act, and which must also be resolved by the Court.

In sharp contrast to the claims made in its UDRP complaint, Defendant makes the absurd argument that there is no dispute that Plaintiff owns the Domain Name, and therefore, there is no case or controversy. (Motion to Dismiss at 8.) Defendant next claims not to know what a "rightful" owner is, but this argument too strains credulity. (*Id.*) The dictionary definition of "rightful" is "legitimate; having a just or legally established claim." It is undisputed that Plaintiff currently owns the Domain Name, but Plaintiff clearly is seeking an adjudication that he is the *rightful* owner of the Domain Name—Defendant disputed that ownership by initiating the UDRP Proceeding, and accusing Plaintiff of trademark infringement and other Lanham Act violations, thereby creating a controversy as to the rightfulness of Plaintiff's ownership and control of the Domain Name. (FAC ¶¶ 27, 28.) *See Calista Enterprises Ltd. v. Tenza Trading Ltd.*, No. 3:13-CV-01045-SI, 2014 WL 3695487, at *9 (D. Or. July 24, 2014) (finding a live controversy between the legal owner of the disputed domain names and the UDRP complainant who both claimed exclusive rights of the domain names, and denying the claimant's motion to dismiss based on lack of jurisdiction under the Declaratory Judgment Act). Defendant also disputed that Plaintiff's use of the Domain Name would infringe its world-famous trademarks. (Motion to Dismiss at 8.) Therefore,

Plaintiff is permitted to seek a declaration to relieve himself from any uncertainty, insecurity, or controversy pertaining to Defendant's asserted claims of trademark abuse, separate and apart from its ACPA claims.

## III.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

Dated: April 13, 2023

**LEWIS & LIN, LLC**

By:   */s/ Brett E. Lewis*
Brett E. Lewis (pro hac vice)
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
brett@iLawco.com

*Attorneys for Plaintiff*