Nicholas J. Nowak (*pro hac vice*)
Lauren A. Watt (*pro hac vice*)
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1100 New York Ave., NW
Washington, D.C. 20005
Telephone: (202) 371-2600
Facsimile: (202) 371-2540
nnowak@sternekessler.com
lwatt@sternekessler.com

*Attorneys for Defendant Automobili
Lamborghini S.p.A.*

## IN THE UNITED STATES

## DISTRICT COURT FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Blair, | No: CV-22-1439-PHX-ROS |
| *Plaintiff*, | |
| v. | **DEFENDANT'S REPLY BRIEF IN SUPPORT OF DEFENDANT'S** |
| Automobili Lamborghini S.p.A., | **MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(6)** |
| *Defendant*. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................... 1

II.   ARGUMENT ................................................................................. 2

    A.    Count I Must Be Dismissed Because Blair Has Not and Cannot Allege That He Is The "Domain Name Registrant" of The Disputed Domain. ............................................................... 2

    B.    Count II Should Be Dismissed Because It Is Duplicative of Count I ........................................................................................ 6

    C.    Count II Should Be Dismissed for Lack of Article III Standing .... 8

III.  CONCLUSION ........................................................................... 11

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

*AIRFX.com v. AirFX LLC*,
   No. CV 11-01064-PHX-FJM, 2011 WL 5007919 (D. Ariz. Oct. 20,

5

   2011) ............................................................................................................... 4

6

*AIRFX.com v. AirFX LLC*,
   No. CV 11-01064-PHX-FJM, 2012 WL 3638721 (D. Ariz. Aug. 24,

7

   2012) ............................................................................................................... 4

8

*Aladdin's Eatery Sys., Inc. v. PHWLV, LLC*,
   No. 18-cv-00412, 2019 WL 1317709, at *2 (D. Nev. Mar. 22, 2019).......... 9,10

9

*Baklan v. All Answers Ltd.*,
   No. CV-20-00707-PHX-JZB, 2020 WL 6063254 (D. Ariz. Oct. 14,

10

   2020) ............................................................................................................... 4

11

*Clark v. City of Seattle*,
   899 F.3d 802 (9th Cir. 2018) ...................................................................... 8

12

*Del Monte Int'l GmbH v. Del Monte Corp.*,
   995 F. Supp. 2d 1107 (C.D. Cal. 2014), *vacated and remanded sub nom
   on other grounds*, *Del Monte Int'l GMBH v. Del Monte Foods, Inc.*, 658

13

   F. Appx. 846 (9th Cir. 2016) ...................................................................... 2

14

*Dent v. Lotto Sport Italia SpA*,
   No. CV-17-00651-PHX-DMF, 2020 WL 1170840 (D. Ariz. Mar. 11,

15

   2020) ............................................................................................................... 4

16

*GoPets Ltd. v. Hise*,
   657 F.3d 1024 (9th Cir. 2011) .................................................................... 3, 4

17

*IFIXITUSA LLC v. iFixit Corp.*,
   No. CV-21-00887-PHX-DGC, 2022 WL 2117845 (D. Ariz. June 13,

18

   2022) ............................................................................................................ 7,8

19

*Lohse v. Deutsche Bank Tr. Co. Americas as Tr. for Residential Accredit
   Loans, Inc.*,

20

   No. 2:15-2623 WBS KJN, 2016 WL 1322891 (E.D. Cal. Apr. 5, 2016)........ 6,7

21

22

*San Diego Navy Broadway Complex Coal. v. U.S. Dep't of Def.*,
    No. 07cv0038 .................................................................................................... 9

*Strong Coll. Students Moving Inc. v. Coll. Hunks Hauling Junk Franchising LLC*,
    No. CV-12-01156-PHX-DJH, 2015 WL 12602438 (D. Ariz. May 15, 2015) ....................................................................................................................... 2

*TIBCO Software Inc. v. GatherSmart LLC*,
    No. 20-cv-06422-NC, 2021 WL 4477902 (N.D. Cal. Mar. 5, 2021) ............... 11

*Tradebay, LLC v. eBay, Inc.*,
    278 F.R.D. 597 (D. Nev. 2011) ....................................................................... 10

**Statutes**

15 U.S.C. § 1114(2)(D)(v) ........................................................................... *passim*

15 U.S.C. § 1125(d) ..................................................................................... 7,8

28 U.S.C. § 2201 .......................................................................................... 6,9

**Other Authorities**

Uniform Domain Name Dispute Resolution Policy, ICANN,
    https://www.icann.org/resources/pages/policy-2012-02-25-en ....................... 3,4

Uniform Domain Name Dispute Resolution Policy, ICANN,
    https://www.icann.org/resources/pages/help/dndr/udrp-en ............................. 3,4

**I.     INTRODUCTION**

Plaintiff Richard Blair's ("Blair" or "Plaintiff") defense of Count I fails to address its crucial flaw: Blair has not (and cannot) allege the first element of his 15 U.S.C. § 1114(2)(D)(v) claim—that he is the "domain name registrant" of <Lambo.com> (the "Disputed Domain"). Nowhere in the First Amended Complaint ("Amended Complaint") does Blair aver that he registered this domain name or plead any facts suggesting he has done so. That alone is fatal to his claim under 15 U.S.C. § 1114(2)(D)(v). Nor *can* Blair plausibly allege that he is the "domain name registrant" because the Ninth Circuit has held that "registering" a domain name refers only to the act of original registration, and Blair's own Amended Complaint admits that Blair is not the *original* registrant of the Disputed Domain. Blair ignores these shortcomings, advancing legally irrelevant arguments that have no bearing on the central issue. Blair attempts to divert this Court's attention away from his failure to plead his status as the "domain name registrant" by arguing that he has adequately pled that his "use" of the Disputed Domain is lawful under the ACPA—even though the statute explicitly requires the "use" be "by the domain name registrant." *See* 15 U.S.C. § 1114(2)(D)(v). He then invokes non-binding, UDRP policy statements to argue Defendant was somehow contractually obligated to *not* challenge the sufficiency of Blair's pleading. The Court should reject these arguments and dismiss Count I for failing to state a claim.

Blair's defense of Count II fares no better. Blair fails to explain how Count II seeks relief that is different from (and thus not duplicative of) the relief sought under Count I. While he claims that Count II is not duplicative of Count I, because it seeks to

1    adjudicate "any claim[] that Defendant may assert under the Lanham Act, including for

2    trademark infringement or dilution," D.I. 24 at 14, nowhere does Blair's Amended

3    Complaint seek declaratory judgment on the issues of trademark infringement, dilution,

4    or any other cause of action other than § 1114(2)(D)(v). Nor does Blair's pleading

5    allege facts that so much as intimate whether a live controversy exists between the

6    parties concerning any of these issues. Thus, to the extent Blair argues that Count II

7    seeks to adjudicate any and all hypothetical Lanham Act claims between the parties, the

8    Court should dismiss Count II for lack of Article III standing.

9    **II.    ARGUMENT**

10            **A.    Count I Must Be Dismissed Because Blair Has Not and Cannot
                     Alleged That He Is The "Domain Name Registrant" of The
11                   Disputed Domain.**

12           To adequately plead his claim under 15 U.S.C. § 1114(2)(D)(v), Blair needed to

13    allege facts from which this Court could reasonably infer that he is the "domain name

14    registrant" of the Disputed Domain. *Strong Coll. Students Moving Inc. v. Coll. Hunks*

15    *Hauling Junk Franchising LLC*, No. CV-12-01156-PHX-DJH, 2015 WL 12602438, at

16    *8 (D. Ariz. May 15, 2015) ("To prevail on a claim under [§ 1114(2)(D)(v)] 'requires a

17    plaintiff to prove four elements: (1) plaintiff is a domain name registrant . . .'").

18           Blair does not deny this, and yet nowhere does his Amended Complaint allege

19    facts suggesting he has taken any steps to formally register the Disputed Domain with a

20    third-party registrar. *See Del Monte Int'l GmbH v. Del Monte Corp.*, 995 F. Supp. 2d

21    1107, 1122 (C.D. Cal. 2014), *vacated and remanded sub nom on other grounds*, *Del*

22    *Monte Int'l GMBH v. Del Monte Foods, Inc.*, 658 F. Appx. 846 (9th Cir. 2016)

- 2 -

1    ("'[R]egistration' under the ACPA at least requires the registrant to enter into a contract

2    to have its proposed domain name entered into the appropriate registry.") (citing *GoPets*

3    *Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011)). In fact, Blair's Amended Complaint

4    does not even include *conclusory* allegations that he either "registered" the Disputed

5    Domain or is the "registrant" of the Disputed Domain. While Blair (at 5) claims that

6    Paragraph 9 of the Amended Complaint alleges facts supporting this element—that

7    paragraph does nothing more than allege that he "acquired" the Disputed Domain in

8    2018.[1]

9           In any case, Blair *cannot* plead that he is the "domain name registrant" of the

10   Disputed Domain under binding 9th Circuit precedent. In *GoPets*, the Ninth Circuit

11   held that under the ACPA "registering" a domain name refers solely to the act of

12   *original* registration—not subsequent re-registrations—of that domain name. *GoPets*,

13   657 F.3d. at 1031. It is undisputed that Blair *is not* the original registrant of the

14   Disputed Domain, as Blair's own Amended Complaint concedes. *See*, *e.g.*, Am. Compl.

15   ¶¶ 31, 48. Since Blair could not have "registered" the Disputed Domain within the

16   meaning of the ACPA, it naturally follows that he is not its "domain name registrant"

17   and cannot proceed with his claim under § 1114(2)(D)(v).

18          Blair does not dispute *GoPets*'s central holding—nor could he. Blair instead

19

20   [1] It is uncertain whether Blair himself still believes that he can allege (in good faith) that
     he is the "domain name registrant" of the Disputed Domain. When he filed the

21   original complaint, he alleged—more than 5 times—that he "registered" the Disputed
     Domain. *See* Compl. ¶¶ 45–50. He has since dropped these allegations in the

22   Amended Complaint (the operative complaint for the purposes of this motion).

1   argues that allowing his claim to proceed would be consistent with *GoPets* because he

2   "acquired" the domain name from the original registrant. D.I. 24 at 7, 9. But the Ninth

3   Circuit never held in *GoPets* that "acquiring" a domain name constituted "registering"

4   one under the ACPA. As discussed, *GoPets*'s core holding was that, under the ACPA,

5   "registering" a domain name refers only to the act of original registration. The fact

6   remains that Blair is not the one who originally "registered" the Disputed Domain under

7   *GoPets*. He is therefore not a "domain name registrant" under § 1114(2)(D)(v) and

8   cannot plead this element of his claim.[2]

9         Blair next argues in the alternative that if he is not the "domain name registrant,"

10   his claim under § 1114(2)(D)(v) still survives because he has alleged that he "uses" the

11   Disputed Domain. D.I. 24 at 10-11. That does not fix the fundamental flaw in Blair's

12   Amended Complaint. 15 U.S.C. § 1114(2)(D)(v) plainly states that a "domain name

13   registrant" may file an action to establish that the "use of the domain name *by such*

14   *registrant* is not unlawful . . ." (emphases added). Since Blair is not the "domain name

15   registrant," as previously established, he cannot bring an action under § 1114(2)(D)(v)

16   to establish either that the "registration" or "use" of the Disputed Domain is unlawful.

17   _____

18   [2] Nor do the handful of cases Blair cites support his position that he has adequately pled
     the first element of his § 1114(2)(D)(v) claim. None of the courts in those cases
19   considered whether the plaintiffs had, or could, adequately plead they were the "domain
     name registrant[s]" of the disputed domain names. *See generally Baklan v. All Answers*
20   *Ltd.*, No. CV-20-00707-PHX-JZB, 2020 WL 6063254 (D. Ariz. Oct. 14, 2020); *Dent v.
     Lotto Sport Italia SpA*, No. CV-17-00651-PHX-DMF, 2020 WL 1170840 (D. Ariz.
21   Mar. 11, 2020); *AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM, 2012 WL
     3638721 (D. Ariz. Aug. 24, 2012); *AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-
22   FJM, 2011 WL 5007919 (D. Ariz. Oct. 20, 2011).

1    Blair lastly claims Defendant is somehow contractually barred from challenging

2    the sufficiency of his Amended Complaint because "[w]hen Defendant initiated the

3    [Uniform Domain-Name Dispute-Resolution Policy] Proceeding, it agreed to be bound

4    by . . . Rule 4(k)." D.I. 24 at 12. Blair is apparently referencing ¶ 4(k) of the UDRP's

5    "Uniform Domain Name Dispute Resolution Policy" webpage, which states that "[t]he

6    mandatory administrative proceeding requirements . . . shall not prevent either you or

7    the complainant from submitting the dispute to a court of competent jurisdiction for

8    independent resolution."[3] Thus, according to Blair, by moving for dismissal of his §

9    1114(2)(D)(v) claim, Defendant "seeks to bypass its legal obligations and preclude

10   [Blair] from seeking judicial review of the dispute underlying the UDRP Decision." D.I.

11   24 at 12.

12   Blair's argument defies common sense. Paragraph 4(k) is a general policy

13   statement that the UDRP publishes on its webpage to educate the public on the UDRP

14   dispute resolution process. It is not a contractual provision to which Defendant is

15   bound. In fact, the webpage repeatedly states that the policies are meant to apply to

16   third-party domain name registrars—not trademark owners like Defendant. Uniform

17   Domain Name Dispute Resolution Policy, ICANN,

18   https://www.icann.org/resources/pages/policy-2012-02-25-en ("The policy is between

19   the registrar (or other registration authority in the case of a country-code top-level

20   domain) and its customer (the domain-name holder or registrant)."); *see also* Uniform

21   _____

[3] Uniform Domain Name Dispute Resolution Policy, ICANN,

22   https://www.icann.org/resources/pages/policy-2012-02-25-en.

1   Domain Name Dispute Resolution Policy, ICANN,

2   https://www.icann.org/resources/pages/help/dndr/udrp-en ("This policy is followed by

3   all registrars.").

4         Blair's argument would also lead to absurd results. Blair would have this Court

5   fashion a rule that if a successful complainant in a UDRP Proceeding is later sued under

6   § 1114(2)(D)(v) in district court by the losing party, the UDRP complainant is

7   contractually obligated *not* to move for dismissal of that lawsuit—no matter how legally

8   deficient the underlying complaint may be. This cannot be correct, and Blair does not

9   cite a single case in which a court has ever denied a defendant's motion to dismiss a

10  claim under § 1114(2)(D)(v) on this basis.

11        **B.      Count II Should Be Dismissed Because It Is Duplicative of Count
                    I**

12        Because Count II fails to state a claim for relief that is separate and apart from

13  Count I, it is duplicative, unnecessary, and should be dismissed. *Lohse v. Deutsche*

14  *Bank Tr. Co. Americas as Tr. for Residential Accredit Loans, Inc.*, No. 2:15-2623 WBS

15  KJN, 2016 WL 1322891, at *4 (E.D. Cal. Apr. 5, 2016) ("[W]here a plaintiff has

16  alleged a substantive cause of action, a declaratory relief claim should not be used as a

17  superfluous second cause of action for the determination of identical issues subsumed.")

18  (citations omitted). Count II spans just three paragraphs and seeks declaratory judgment

19  under 28 U.S.C. § 2201 that Blair is the "rightful" owner of the Disputed Domain.

20  Other than incorporating by reference all preceding allegations (including the

21  allegations from Count I), it alleges no new facts of its own, identifies no new

22

- 6 -

1    substantive legal issues that are distinct from those identified in Count I, and cites no

2    specific statutory or legal basis upon which it seeks relief. It is substantively

3    indistinguishable from Count I and should be dismissed.

4         Count II is also duplicative of Count I because Blair's Amended Complaint

5    "does not suggest that [his] declaratory judgment claim [in Count II] would entitle

6    [Blair] to any relief beyond what [he requests] pursuant to [his] substantive [] claim"

7    under Count I. *Lohse*, 2016 WL 1322891 at *4 ("Plaintiffs' Complaint does not suggest

8    that their declaratory judgment claim would entitle them to any relief beyond what they

9    request pursuant to their substantive TILA rescission claim.")

10        The Prayer for Relief section of Blair's Amended Complaint confirms this.

11   There, Blair seeks this Court's declaration that (1) the registration of the Disputed

12   Domain and Blair's acquisition and use of the Disputed Domain "[are] not unlawful"

13   and were not performed "with the bad faith intent to profit" from any of Defendants'

14   trademarks under 15 U.S.C. § 1125(d); (2) that Blair "is not required to transfer the

15   [Disputed Domain] to Defendant"; and (3) that the registrar "shall not transfer the

16   registration for . . . [the Disputed Domain] to Defendant." Am. Compl. at 14–15. These

17   forms of declaratory relief are all already contemplated by § 1114(2)(D)(v), which

18   allows a domain name registrant to "establish" that its registration and use of a domain

19   name is "not unlawful" under § 1125(d) and empowers the court to "grant injunctive

20   relief" to this effect. 15 U.S.C. § 1114(2)(D)(v). Because it is apparent from the face of

21   Blair's Amended Complaint that he is not specifically requesting any form of relief that

22   would not already be covered by his § 1114(2)(D)(v) claim in Count I, Count II is

1   duplicative and should be dismissed.[4]

2   Blair cites *IFIXITUSA LLC v. iFixit Corp.*, No. CV-21-00887-PHX-DGC, 2022

3   WL 2117845 (D. Ariz. June 13, 2022) as an example where a court purportedly allowed

4   a similarly worded claim to proceed, but that case reveals just how inadequate Blair's

5   claim is by comparison. Unlike Blair, the plaintiffs in *IFIXITUSA* sought forms of

6   declaratory relief that were cognizably distinct from their claims under § 1114(2)(D)(v).

7   Their complaint requested, for example, declaratory judgment that the statute of

8   limitations barred the defendant from enforcing its trademark against the plaintiffs. *See*

9   *id.* at *6. Because the plaintiffs were asking the Court to resolve *more than just* whether

10  plaintiffs' registration and use of the domain names were unlawful under § 1125(d),

11  their standalone claim for declaratory relief under § 2202 was not duplicative. *Id.* Blair

12  cannot say the same for Count II for reasons discussed above.

13          **C.      Count II Should Be Dismissed for Lack of Article III Standing**

14  Blair argues that Count II is not duplicative of Count I because, by seeking this

15  Court's declaration that Blair is the "rightful" owner of the Disputed Domain, Count II

16  "cover[s] *any* claims that Defendant may assert under the Lanham Act, including for

17  trademark infringement or dilution – not just cyberpiracy." D.I. 24 at 14. If that is the

18  case, then Count II is little more than an open-ended vehicle through which Blair seeks

19  to litigate every conceivable non-ACPA-related Lanham Act claim—no matter how

20  _____

21  [4] If not dismissed solely on the basis of being duplicative to Count I, Count II should be
    dismissed on the same grounds articulated in Section II.A—i.e., that Blair has not and
    cannot allege facts demonstrating that he is the "domain name registrant" of the

22  Disputed Domain pursuant to § 1114(2)(D)(v).

1  speculative or unripe. The Court should therefore dismiss Count II for lack of Article III

2  standing because Blair's Amended Complaint fails to identify with any particularity

3  what those disputes are or allege facts demonstrating that they are "actual or imminent"

4  rather than purely "conjectural." *Clark v. City of Seattle*, 899 F.3d 802, 809 (9th Cir.

5  2018).

6        Blair seeks to amend these fatal deficiencies through his brief by asserting new

7  facts never alleged in his Amended Complaint. Assuming these unpleaded facts could

8  properly be considered for the purposes of evaluating standing, they still do not come

9  remotely close to establishing the live case or controversy required to state a claim for

10 declaratory relief under § 2201. *See*, *e.g.*, *San Diego Navy Broadway Complex Coal. v.*

11 *U.S. Dep't of Def.*, No. 07cv0038 JM(WMc), 2007 WL 2429813, at *3 (S.D. Cal. Aug.

12 23, 2007) (citing *Calderon v. Ashmus*, 523 U.S. 740, 745–47 (1998)).

13       For example, Blair claims, for the first time, that there is an imminent dispute

14 between the parties regarding whether Blair's commercial use of the Disputed Domain

15 dilutes or infringes Defendant's trademarks. D.I. 24 at 15. But Blair fails to point to any

16 statements or conduct by Defendant that can plausibly give Blair a "real and reasonable

17 apprehension" that Defendant will imminently sue Blair for trademark dilution or

18 infringement. *Aladdin's Eatery Sys., Inc. v. PHWLV, LLC*, No. 18-cv-00412, 2019 WL

19 1317709, at *2 (D. Nev. Mar. 22, 2019) (citing *Rhoades v. Avon Products, Inc.*, 504

20 F.3d 1151, 1157 (9th Cir. 2007)).

21       Blair claims, for instance, that in Defendant's brief it characterized its

22 trademarks as "famous." *Id.* at 11. Blair then asserts, without elaborating, that this

- 9 -

1    "impl[ied] that any use of [the Disputed Domain] would dilute Defendant's

2    trademarks." *Id.* at 15. Blair does not even attempt to explain how Defendant's

3    characterization of its trademarks as "famous" gives Blair "a real and reasonable

4    apprehension" that Defendant will sue Blair for trademark dilution. *See Aladdin's*

5    *Eatery*, 2019 WL 1317709, at *2.

6        Blair next asserts that Defendant, in the complaint it filed for the UDRP

7    proceeding, "characterized [Blair's] offering for sale of the [Disputed Domain]" as a

8    "commercial use"—which Blair apparently believes amounted to an implicit accusation

9    of trademark infringement. D.I. 24 at 15. Blair does not cite any portion of Defendant's

10   UDRP complaint where Defendant purportedly described Blair's offer for sale of the

11   domain name as a "commercial use"—because Defendant never, in fact, described it

12   that way. That Blair lacks any "real and reasonable apprehension" of Defendant

13   pursuing legal recourse for trademark dilution or infringement means that Blair does not

14   have standing to seek declaratory judgment on these issues. *See Aladdin's Eatery*, 2019

15   WL 1317709, at *2.

16       Blair lacks standing for a second reason: Blair fails to allege facts that show he

17   has put the Disputed Domain towards any commercial use. *Tradebay, LLC v. eBay,*

18   *Inc.*, 278 F.R.D. 597, 607 (D. Nev. 2011) (dismissing declaratory judgment claim where

19   plaintiff had not alleged facts showing it had used the mark in commerce or had

20   otherwise "invested substantial resources to use or market the mark."). In fact Blair

21   stressed in his Amended Complaint that after acquiring the Disputed Domain, he

22   "initially planned" on developing it to "showcase his various interests and exploits," but

1  later "delayed and abandoned" those plans. Am. Compl. at ¶ 11. He further alleged that

2  he has never "offer[ed] the Disputed Domain for sale to Lamborghini or a competitor,"

3  *id.* at ¶37,  and that, as a general matter, he does not acquire domain names "with the

4  primary intent to sell them," *id.* at ¶ 15. Even when he does "list domain names for sale,

5  he does not expect [them] to sell . . . and most will never sell." *Id.* Blair cannot seriously

6  maintain that a justiciable controversy exists over whether his commercial use of the

7  Disputed Domain has diluted or infringed Defendant's trademarks, when, by Blair's

8  own admission, he has not and does not "use" the Disputed Domain at all. *TIBCO*

9  *Software Inc. v. GatherSmart LLC*, No. 20-cv-06422-NC, 2021 WL 4477902, at *3

10 (N.D. Cal. Mar. 5, 2021) ("GatherSmart's website standing alone, without advertising,

11 marketing, or selling trademarked goods or services in connection with its website does

12 not constitute use of the mark in commerce.").

13 **III.    CONCLUSION**

14        For the foregoing reasons, Defendant respectfully requests this Court grant its

15 motion to dismiss.

16

17

18

19

20

21

22

1    Dated: April 20, 2023       Respectfully submitted,

2                        By: /s/ *Nicholas J. Nowak*

Nicholas J. Nowak (*pro hac vice*)

3                        Lauren A. Watt (*pro hac vice*)

STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.

4                        1100 New York Ave., NW

Washington, D.C. 20005

5                        Telephone: (202) 371-2600

Facsimile: (202) 371-2540

6                        nnowak@sternekessler.com

lwatt@sternekessler.com

7

8                        *Attorneys for Defendant Automobili Lamborghini S.p.A.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

- 12 -

1

## CERTIFICATE OF SERVICE

2          This is to certify that on April 20, 2023, a correct copy of the foregoing was filed

3    electronically using the Clerk of Court's CM/ECF system, which will provide notice to

4    all counsel of record. Served by electronic mail on the following counsel of record:

5    Brett E. Lewis
     Lewis & Lin LLC
6    77 Sands Street, 6th Floor
     Brooklyn, NY 11201
7    Telephone: (718) 243-9323
     Facsimile: (718) 243-9326
8    brett@iLawco.com

9    *Attorney for Plaintiff Richard Blair*

10
                                        By: /s/ *Nicholas Nowak*
11                                      Nicholas J. Nowak (*pro hac vice*)
                                        Lauren A. Watt (*pro hac vice*)
12                                      Sterne, Kessler, Goldstein & Fox P.L.L.C.
                                        1100 New York Ave., NW
13                                      Washington, D.C. 20005
                                        Telephone: (202) 371-2600
14                                      Facsimile: (202) 371-2540
                                        nnowak@sternekessler.com
15                                      lwatt@sternekessler.com

16                                      *Attorneys for Defendant Automobili*
                                        *Lamborghini S.p.A.*

17

18

19

20

21

22