Brett E. Lewis (Pro Hac Vice)
LEWIS & LIN, LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
Email: Brett@iLawco.com

*Attorneys for Plaintiff Richard Blair*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Blair,<br><br>            Plaintiff,<br><br>vs.<br><br>Automobili Lamborghini S.p.A.,<br><br>            Defendant. | Case No.: 2:22-cv-01439-ESW<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 11** |

Plaintiff Richard Blair ("Plaintiff"), by and through the undersigned counsel, moves this Court for sanctions against Defendant, Automobili Lamborghini S.p.A. ("Defendant"), and its counsel, pursuant to Federal Rule of Civil Procedure 11 for filing a completely meritless and frivolous motion, unwarranted under the existing law in this Circuit, and for the improper purpose of needlessly increasing Plaintiff's costs of litigation.

1

# **<u>TABLE OF CONTENTS</u>**

2

I.        BACKGROUND..................................................................................................1

3

II.       LEGAL STANDARD .........................................................................................4

4

III.      ARGUMENT .....................................................................................................6

5

6        A.  Defendant's Legal Argument is So Frivolous and So Legally

Unreasonable that it Could Only Have Been Brought for an Improper Purpose, Such

7        that Sanctions Should be Granted ...................................................................6

8

9        B.  Because Plaintiff also Sought a Declaration that His Use of the

Domain Name was not Unlawful, the Motion to Dismiss is Clearly Baseless, Legally

10       Unreasonable, and Filed for an Improper Purpose, Warranting Rule 11 Sanctions.......10

11

12       C.  Sanctions are also Warranted because Defendant's Self-Serving and

Completely Frivolous Argument Would Upend the Very UDRP Policy, to Which

13       Defendant Availed Itself in Obtaining the Administrative Transfer Order Underlying

14       this Dispute, but Now Hypocritically Contends Cannot be Challenged. .......................11

15       IV.     CONCLUSION ................................................................................................16

16

17

18

19

20

# TABLE OF AUTHORITIES

**Cases**

*AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM, 2011 WL 5007919 (D. Ariz.
Oct. 20, 2011) ...................................................................................................8

*Byzantine Cath. Eparchy of Phoenix v. Burri L. PA*, No. CV-20-00779-PHX-ROS, 2021
WL 913733 (D. Ariz. Mar. 10, 2021).................................................................6, 8

*Christian v. Mattel, Inc.*, 286 F.3d 1118 (9th Cir. 2002) ........................................5

*DaimlerChrysler v. The Net Inc.*, 388 F.3d 201 (6th Cir. 2004).......................................11

*DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213 (9th Cir. 2010) ...................................11

*Est. of Blue v. Cnty. of Los Angeles*, 120 F.3d 982 (9th Cir. 1997) .....................................5

*Excel Fortress Ltd. v. Wilhelm*, No. CV-17-04297-PHX-DWL, 2020 WL 1330664 (D.
Ariz. Mar. 23, 2020) ...........................................................................................6

*G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096 (9th Cir. 2003)...........................6

*Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th Cir. 1986)............10

*Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001)...............................................16

*GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011) .........................................7, 9

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) .............................................6

*IFIXITUSA LLC v. iFixit Corp.*, No. CV-21-00887-PHX-DGC, 2022 WL 2117845 (D.
Ariz. June 13, 2022).............................................................................................8

*Loblaw Companies Limited, et al. v. Azimi*, No. C 00 3591 WHO, 2001 WL 36028016
(N.D. Cal. Oct. 17, 2001).....................................................................................13

*Pocketbook Int'l SA v. Domain Admin/SiteTools, Inc.*, No. CV 20-8708-DMG (PDX),

2021 WL 1422784 (C.D. Cal. Apr. 13, 2021) .................................................12

*Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370 (2003) .................................................12

*Townsend v. Holman Consulting Corp.*, 929 F.2d 1358 (9th Cir. 1990)..............................5

**Statutes**

15 U.S.C. § 1114(2)(D)(v).................................................16

Fed. R. Civ. P. 11(b)(1)-(2) .................................................8

**Other Authorities**

UDRP Policy Paragraph 3(b)(xii)-(xiii) .................................................17

UDRP Policy Paragraph 4(k).................................................15

## I.      BACKGROUND

On August 24, 2022, Plaintiff filed the Complaint with this Court to stop the transfer of the <lambo.com> domain name (the "Domain Name"), pursuant to an administrative decision in a Uniform Domain Name Dispute Resolution proceeding initiated by Defendant (the "UDRP Proceeding"). The Complaint seeks declaratory relief under 15 U.S.C. § 1114(2)(D)(v), *inter alia*, to establish that *the registration* and *Plaintiff's use* of the Domain Name is not unlawful under the Anticybersquatting Consumer Protection Act (the "ACPA"). (ECF No. 1.) The relief sought by Plaintiff is no different than that sought by (at least) hundreds of domain name registrants since both the UDRP and ACPA were enacted in 1999. Defendant's motion is the only one ever filed to argue that a domain name registrant is statutorily barred from seeking such declaratory relief, unless they are the *original* registrant of a domain name – an argument that is utterly devoid of support under the law.

On February 23, 2023, Defendant notified Plaintiff, via counsel, that Defendant planned to file a Fed. R. Civ. P. 12(b)(6) motion to dismiss. (Exh. A to Declaration of Brett E. Lewis, Esq. ("Lewis Decl.").) Defendant's counsel invited Plaintiff's counsel to meet and confer, and cited *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011) as the sole basis for its argument. Defendant's counsel repeated the same argument during the meet and confer call.

1    Following that call, Plaintiff's counsel emailed Defendant's counsel a

2    detailed account of the significant flaws in Defendant's argument. (*See* Exh. A to

3    Lewis Decl.)  Chiefly, *GoPets* held that the purchaser of a domain name receives

4    all property rights held by the initial registrant at the time that such domain name

5    was transferred to him or her – which, by nature, includes the right to file a lawsuit

6    to stop the transfer of a domain name under the ACPA. Additionally, Plaintiff's

7    counsel demonstrated how Defendant's position would completely upset the

8    framework of the UDRP Policy, which allows a respondent to submit a domain

9    name dispute to a court to whose jurisdiction the UDRP complainant contractually

10   agrees to submit – for a *de novo* judicial review. (Exh. A to Lewis Decl.)

11       On March 9, 2023, Plaintiff amended the Complaint, to make it more clear

12   that Plaintiff sought a declaration both as to the lawfulness of the registration of the

13   Domain Name, per *GoPets*, and Plaintiff's *use* of the same. (ECF No. 21.)

14   Although Plaintiff did not believe that the Complaint required amendment, he did

15   so in the interests of avoiding unnecessary motion practice.  Nevertheless, on

16   March 24, 2023, Defendant, through its counsel, again notified Plaintiff that it

17   intended to proceed with filing the motion to dismiss for the same reasons

18   previously stated. (*See* Exh. B to Lewis Decl.)

19       On March 30, 2023, Defendant filed a motion to dismiss under Fed. R. Civ.

20   P. 12(b)(6) (ECF No. 23) (the "Motion to Dismiss"). The present motion relies

1    entirely on the same deliberate misreading of the *GoPets* decision first proffered by

2    Defendant's counsel. In response, on April 5, 2023, Plaintiff's counsel served

3    Defendant's counsel with a Notice of Motion and letter pursuant to Rule 11. (*See*

4    Exh. C to Lewis Decl. (the "Rule 11 Letter").)  On April 13, 2023, Plaintiff filed an

5    opposition to the Motion to Dismiss (ECF No. 24) (the "Opposition"). On April 20,

6    2023, Defendant filed a Reply in support of its Motion to Dismiss (ECF No. 25)

7    ("Reply"). The Reply completely disregarded the legal authority cited by Plaintiff,

8    and ignored both the plain language of the ACPA and governing law in this Circuit.

9    The Reply also intentionally misstated Plaintiff's argument, as detailed *infra*.

10         On April 26, 2023, Defendant's counsel responded to the Rule 11 Letter,

11   tripling down on their legally unreasonable reading of *GoPets*, while ignoring or

12   misstating the other bases supporting Plaintiff's invocation of declaratory relief

13   under 15 U.S.C. 1114(2)(d)(v). (*See* Exh. D to Lewis Decl. (the "April 26

14   Letter").) Defendant's counsel also threatened to file its own Rule 11 motion if

15   Plaintiff moved for Rule 11 sanctions. (*Id.*)

16         Plaintiff hereby respectfully submits this Rule 11 Motion to deter the multi-

17   billion-dollar corporate Defendant and its large law firm counsel from filing a

18   baseless motion for an improper purpose. Plaintiff respectfully submits that the

19   motion to dismiss violates this Court's February 17 Order (ECF No. 17)— which

20   discourages Rule 12(b)(6) and Rule 12(c) motions—by filing a nonsensical and

baseless motion for the sole and improper purpose of forcing an individual Plaintiff to incur increased costs of litigation. It is inconceivable that Defendant's counsel actually believes its arguments. This is not the typical case where the parties may disagree on the relative merits of a motion, or even a garden variety frivolous motion – Defendant argues that the very statutory framework allowing the losing respondent in a UDRP proceeding to seek declaratory relief in court – which was codified by Congress into law almost 25 years ago – is inoperable in this Circuit, on the basis of a profoundly flawed misreading of *Go Pets,* a case that recognized, not limited, the rights of a domain name registrant.

Yet, Defendants do not stop there – the Amended Complaint seeks a declaration that Plaintiff's *use* of the Domain Name was not unlawful, as Plaintiff is empowered to do by statute.  Defendants advance a wholly disingenuous claim that "use" only means use in connection with a website, and otherwise completely ignores detailed pleadings concerning Plaintiff's lawful use of the Domain Name. Because Defendants' motion is so fundamentally lacking in basis that it could only have been filed to harass Plaintiff and increase his legal fees, and only after several attempts to convince Defendants to withdraw their motion failed, Plaintiff seeks sanctions pursuant to Rule 11.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 11 requires an attorney, by presenting to the

court a pleading, written motion, or other paper, to certify that:

> … to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law[.]

Fed. R. Civ. P. 11(b)(1)-(2); *see also Est. of Blue v. Cnty. of Los Angeles*, 120 F.3d 982, 985 (9th Cir. 1997) ("Rule 11 warrants sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose."). One of the fundamental purposes of Rule 11 is to "reduce frivolous claims, defenses or motions and to deter costly meritless maneuvers, ... [thereby] avoid[ing] delay and unnecessary expense in litigation." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002). A frivolous filing is one that is both baseless and made without a reasonable and competent inquiry. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990). The "improper purpose" inquiry often overlaps with the question of "frivolousness," and the standard governing both inquiries is objective. *Townsend.*, 929 F.2d at 1362. Under this objective standard, the "reasonable man" against which conduct is tested under Rule 11 is a competent attorney admitted to practice before the district court. *Id.*;

*G.C. & K.B. Invs., Inc. v. Wilson*, 326 F.3d 1096, 1109 (9th Cir. 2003).

## III.   ARGUMENT

A. <u>Defendant's Legal Argument is So Frivolous and So Legally Unreasonable that it Could Only Have Been Brought for an Improper Purpose, Such that Sanctions Should be Granted</u>

As set forth above, a claim or filing is frivolous if it is legally or factually baseless from an objective perspective, and the filing attorney failed to conduct a reasonable and competent inquiry before pursuing it. *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). "A legal argument violates Rule 11(b)(2) if it has 'no chance' of success under existing precedent." *Excel Fortress Ltd. v. Wilhelm*, No. CV-17-04297-PHX-DWL, 2020 WL 1330664, at *10 (D. Ariz. Mar. 23, 2020) (citing S. Gensler, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 11, at 237 (2018)). Failure to identify any legal support to advance a novel argument further indicates its frivolousness. *See Holgate*, 425 F.3d at 676 (rejecting plaintiffs' arbitrary creation of "protected class of consumers," citing no legal support); *Byzantine Cath. Eparchy of Phoenix v. Burri L. PA*, No. CV-20-00779-PHX-ROS, 2021 WL 913733, at *8 (D. Ariz. Mar. 10, 2021) (rejecting plaintiff's frivolous contention that "service" was an interchangeable term with "service of process" for purpose of triggering removal clock).

Here, Defendant's counsel seeks dismissal based on the meritless argument that Plaintiff cannot seek relief under 15 U.S.C. § 1114(2)(D)(v) because he was

not the "initial registrant" of the Domain Name. The only legal authority that Defendant cites for its unprecedented contention is *GoPets Ltd. v. Hise*, 657 F.3d 1024 (9th Cir. 2011). *GoPets* held that there can only be one "registration" of a domain name, within the meaning of 15 U.S.C. § 1125(d). *Id.* at 1031. When a subsequent registrant obtains a domain name by transfer, however, they receive all rights to the domain name that the original registrant possessed, relating back to the domain name's registration date. *Id.* at 1031–32. *GoPets* focused on what it means to "register," a domain name. Nothing in *GoPets* suggests that "registration" is interchangeable with "registrant," or that only the first party to register a domain name can be a "registrant," within the meaning of the ACPA.

Indeed, the "primary question before [the Ninth Circuit] [wa]s whether the term "registration" applies only to the initial registration of the domain name, or whether it also applies to a re-registration of a currently registered domain name by a new registrant." *Id.* at 1026 (emphasis added). The Ninth Circuit held: "[w]e see no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is transferred to another owner." *Id.* at 1031. If there could be only a single registrant of a domain name, the Ninth Circuit would not have distinguished between an initial registrant and a new registrant. Defendant's counsel inexplicably disregards the clear holding of *GoPets*.

1    Nor did *GoPets*'s progeny rule the other way. In the 24 years since the

2    ACPA was enacted, and the 12 years since the *GoPets* decision, there has been no

3    case in this Circuit holding that only the initial registrant of a domain name can

4    seek declaratory relief under the Act. Instead, courts in this District, following

5    *GoPets*, have repeatedly entertained the filings of domain name registrants, who

6    acquired domains from previous owners, to proceed in federal court under the

7    ACPA to stop UDRP decisions from being implemented and seek declarations of

8    their rights. *See, e.g., AIRFX.com v. AirFX LLC*, No. CV 11-01064-PHX-FJM,

9    2011 WL 5007919, at *2 (D. Ariz. Oct. 20, 2011); *IFIXITUSA LLC v. iFixit Corp.*,

10   No. CV-21-00887-PHX-DGC, 2022 WL 2117845, at *2 (D. Ariz. June 13, 2022).

11   Defendant's counsel seeks to trivialize these cases, arguing that they did not

12   "[consider] whether the plaintiffs had, or could, adequately plead they were the

13   'domain name registrant[s]' of the disputed domain names." *See* Reply at 4, fn. 2.

14   Yet, there is a reason why no Court in this or any other District has ever

15   entertained Defendant's argument – because it is so frivolous that no other attorney

16   has made it. *See Byzantine Cath. Eparchy of Phoenix*, 2021 WL 913733, at *7 ("A

17   question may be so utterly baseless or so obviously foreclosed by existing

18   authority that no reasonable attorney would argue the issue.").

19   Ironically, *GoPets*, itself, provides the strongest counterargument to

20   Defendant's distorted, self-serving argument. As detailed in Plaintiff's Opposition,

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO
FED. R. CIV. P. 11 - 8

*GoPets* makes it clear that the rights of an initial registrant transfer along with the domain name. *GoPets*, 657 F. 3d at 1031 ("We see no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is transferred to another owner."). If, accepting Defendant's argument, Section 1114(2)(D)(v) grants the right to invoke the ACPA to the "initial registrant," then under *GoPets*, it should also follow that a subsequent registrant who obtains that right from the initial registrant of a domain name should be able to seek a declaration of the lawfulness of the "initial" registration of a domain name. In other words, *GoPets*, in all cases, allows a subsequent domain name registrant to step into the shoes of the initial registrant when the lawfulness of the registration or use of a domain name is challenged under the ACPA.

Yet, Defendant concludes the opposite –that *GoPets prohibits* Plaintiff from asserting the very rights that *GoPets* recognized in an acquiror of a domain name. Given counsel's impressive background as a partner at a large law firm with over 20 years of experience litigating IP disputes, this can only be explained by the fact that Defendant was intent upon filing a motion to dismiss, regardless of its merit. Plaintiff's counsel tried several times to explain what should have been an obvious defect in Defendant's argument, and even amended a Complaint that did not require amending – all to avoid unnecessary motion practice. Defendant

1  disregarded every entreaty not to file a legally unreasonable and completely

2  frivolous motion – this warrants sanctions. *See Golden Eagle Distrib. Corp. v.*

3  *Burroughs Corp.*, 801 F.2d 1531, 1542 (9th Cir. 1986) (A lawyer should not be

4  able to proceed with impunity in real or feigned ignorance of authorities which

5  render his argument meritless); *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 923 F.2d

6  736, 740 (9th Cir. 1991)(purpose of Rule 11 is to deter baseless filings and

7  streamline administrative process and procedure of federal courts).

8      B.  <u>Because Plaintiff also Sought a Declaration that His Use of the Domain
        Name was not Unlawful, the Motion to Dismiss is Clearly Baseless, Legally
9       Unreasonable, and Filed for an Improper Purpose, Warranting Rule 11
        Sanctions</u>

10          As stated above, notwithstanding the fact that Defendant's argument was

11  completely frivolous, Plaintiff amended the Complaint to make crystal clear that he

12  sought a declaration both as to the lawfulness of the original registration and *his*

13  *use* of the Domain Name. *See* First Amended Complaint (ECF No. 21) (the

14  "FAC"). Putting aside how legally unreasonable Defendant's argument on

15  "registration" is, there was absolutely no legitimate basis to argue that Plaintiff is

16  not entitled to a declaration that his "use" of the Domain Name is not unlawful –

17  yet that is exactly the position Defendant took.

18          Defendant argues, without authority, that the only relevant use of a domain

19  name is use in connection with a website, but nowhere in the ACPA or any of the

20  hundreds  or  thousands  of  decisions  interpreting  the  ACPA  has  a  Court  ever

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO
FED. R. CIV. P. 11 - 10

construed the word "use" in that way. *See, e.g.*, *DSPT Int'l, Inc. v. Nahum*, 624 F.3d 1213, 1219 (9th Cir. 2010) (finding defendant used domain name to obtain leverage in claim for commissions, even though content of website had been deleted); *DaimlerChrysler v. The Net Inc.*, 388 F.3d 201, 203 (6th Cir. 2004) (implying that defendant used domain name by including a link on website without developing full website as he had planned). Moreover, the First Amended Complaint explicitly alleges facts concerning multiple types of uses to which the Domain Name was put or could have been put. (*See* FAC ¶¶ 11, 23, 24, 34, 35, 47, 48.) Defendant and its counsel essentially disregard Plaintiff's request for a "use" declaration, and, in so doing, egregiously misrepresent Plaintiff's arguments to the Court – this further establishes that Defendant's entire motion was conceived with an improper purpose.

C. Sanctions are also Warranted because Defendant's Self-Serving and Completely Frivolous Argument Would Upend the Very UDRP Policy, to Which Defendant Availed Itself in Obtaining the Administrative Transfer Order Underlying this Dispute, but Now Hypocritically Contends Cannot be Challenged.

In its Reply, Defendant states: "[Plaintiff] lastly claims Defendant is somehow contractually barred from challenging the sufficiency of his Amended Complaint" under UDRP Rule 4(k), and that Plaintiff's argument is that a UDRP complainant is contractually obligated not to move for dismissal of a lawsuit filed under Section 1114(2)(D)(v). (*See* Reply at 4-6.) This is simply not Plaintiff's position. (*See infra*.)

In truth, *Plaintiff* argues that UDRP Rule 4(k), with mirroring language in Section 1114(2)(D)(v), allows a domain name registrant, whose domain name is subject to transfer under a UDRP decision, to stop that transfer by filing a lawsuit in court. (*See* Opposition at 12.) Never has Plaintiff argued that the UDRP rules and policy prohibit Defendant from filing a motion to dismiss, but rather that there is no blanket prohibition against domain name owners who are not the original registrants of a domain name from seeking declaratory relief under 15 U.S.C. § 1114 (2)(d)(v) under the law. Plaintiff has never argued that a defendant may not move to dismiss pleadings that are otherwise deficient.

Defendant initiated the UDRP Proceeding. Paragraph 4(k) of the UDRP Policy explicitly provides that "[t]he mandatory administrative proceeding requirements set forth in Paragraph 4 *shall not prevent* either [the domain name registrant] or the complainant from submitting the dispute to a court of competent jurisdiction for independent resolution before such mandatory administrative proceeding is commenced or after such proceeding is concluded." UDRP Policy Paragraph 4(k) (emphasis added); *see also Pocketbook Int'l SA v. Domain Admin/SiteTools, Inc.*, No. CV 20-8708-DMG (PDX), 2021 WL 1422784, at *4 (C.D. Cal. Apr. 13, 2021) ("UDRP proceedings are structured specifically to permit the domain-name registrant two bites at the apple"); *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 382–83 (2003) (holding a UDRP decision triggers

1  a domain name registrant's right to sue under § 1114(2)(D)(v)); *Loblaw*

2  *Companies Limited, et al. v. Azimi*, No. C 00 3591 WHO, 2001 WL 36028016, at

3  *4 (N.D. Cal. Oct. 17, 2001) (UDRP expressly permits court to independently

4  resolve dispute between parties to a UDRP proceeding). Correspondingly, the

5  ACPA captures the essence of Paragraph 4(k), allowing a domain name

6  registrant—whose domain name is subject to suspension, disablement, or transfer

7  pursuant to a UDRP proceeding—to file a civil action to establish lawfulness of the

8  registration or use of the domain name. *See* 15 U.S.C. § 1114(2)(D)(v).

9        It follows that Plaintiff, as the registrant of the Domain Name identified in

10  the UDRP Proceeding, is entitled to submit this dispute to a federal court for

11  independent resolution – that is the very bargain that Defendant struck when it

12  filed a Complaint against Plaintiff with WIPO. It defies all credulity that

13  Defendant's counsel actually believes that Plaintiff, the exact same domain name

14  registrant who Defendant accused of *registering* and *using* the Domain Name in

15  bad faith, has no right to challenge in Court an adverse UDRP decision finding that

16  he registered and used the Domain Name in bad faith, even though both the UDRP

17  Policy – to which Defendant agreed to be bound – and the ACPA explicitly allow

18  him to do so. (*See* Opposition at 11-12.)

19        Under Paragraph 4(k), a party to a UDRP proceeding may submit a dispute

20  to a "court of competent jurisdiction"—generally the location of the registrar of the

domain name, or the registrant's address in the WHOIS records—as further explained in Paragraph 3(b)(xiii) of the UDRP Policy. *See* UDRP Policy Paragraph 4(k). The Policy further provides that a complainant, such as Lamborghini, by signing and submitting a UDRP complaint, submits itself to "any challenges to a decision in the administrative proceeding canceling or transferring the domain name" in a court of competent jurisdiction. *See* UDRP Policy Paragraph 3(b)(xii)-(xiii) (referred to by Paragraph 4(k)). In other words, the registrant (here, Richard Blair) may file a lawsuit in the jurisdiction where the registrar of the Domain Name is located (in this case, the District of Arizona), setting aside the decision in the administrative proceeding transferring the Domain Name. The law and the UDRP rules to which Defendant agreed could not be clearer – in no way does the UDRP Policy limit the right to seek judicial relief to the original registrant of a domain name – there is no legal support for any contrary interpretation.

In its UDRP Complaint, Lamborghini chose to submit to the jurisdiction of the Courts in this District for the adjudication of disputes over the Domain Name. Thus, applying the Policy to the facts of this case, this District is the only "court of competent jurisdiction" – the District where the registrar of the Domain Name, NameSilo, LLC, is located. Defendant signed and filed a UDRP complaint, hence submitting itself to any challenges to a decision canceling or transferring the Domain Name in this District. Plaintiff, whose domain name is subject to transfer

under the UDRP Proceeding, filed a lawsuit in this District to stop the transfer of his Domain Name and for a declaration that the registration and his use of the Domain Name are not unlawful.

There is no straight-faced argument that can be made that Plaintiff lacks this right, or is somehow barred from exercising his rights under both the UDRP and ACPA, and no legal support for it, whatsoever – Defendant cited none. In the absence of any legal support, Defendant twisted the law and misrepresented Plaintiff's contentions, all for the purpose of filing a legally unreasonable and wholly improper motion, for the sole purpose of increasing Defendant's legal costs. Not only is Defendant's argument plainly wrong and completely without basis, but were the Court to adopt Defendant's position, it would wreak utter havoc on the entire UDRP process, casting into doubt the right of most domain name registrants to have that second bite at the apple in a court of law.

Plaintiff raised these points to Defendant's counsel time and again, and time and again, counsel blew through stop signs, intent on filing a baseless and improper motion. No reasonable attorney would take the positions taken by Lamborghini's counsel, much less when repeatedly warned of their utter lack of merit. Litigation is not a game, as much as some lawyers and their clients see forcing the opposing party – especially individuals who lack endless resources to fight for their rights in court – to spend money defending frivolous motions as part

of a legal strategy. It is clear by the absurdity of its arguments, deliberate disregard for the pleadings, disregard of this Court's Order, and distortion or outright misrepresentation of clear legal authority, that Defendants' conduct, and that of its attorneys, goes far beyond reasonable advocacy. When several letters and meet and confer calls failed to dissuade Defendants from filing a frivolous motion, Plaintiff made one final attempt to serve Defendant with a Rule 11 letter.  Defendant responded by threatening to seek Rule 11 sanctions against Plaintiff and his counsel if Plaintiff filed a Rule 11 motion. (*See* Exh. D to Lewis Decl.)  Plaintiff respectfully submits that sanctions should be imposed to deter Lamborghini from filing legally unreasonable and frivolous papers. *Gomez v. Vernon*, 255 F.3d 1118, 1133–34 (9th Cir. 2001) (imposing inherent power sanctions for counsel's abusive tactics that resulted in unnecessary litigation).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court impose appropriate sanctions on Defendant and its counsel under Fed. R. Civ. P. 11, including the Plaintiff's costs and fees incurred in connection with the motion to dismiss and this motion.

Dated: May 31, 2023

**LEWIS & LIN, LLC**

By:      */s/ Brett E. Lewis*
Brett E. Lewis (pro hac vice)
77 Sands Street, 6th Floor

Brooklyn, NY 11201
Tel: (718) 243-9323
Fax: (718) 243-9326
brett@iLawco.com

*Attorneys for Plaintiff*