**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Blair, | No. CV-22-01439-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Automobili Lamborghini SpA, | |
| Defendant. | |

Defendant Automobili Lamborghini makes cars sometimes referred to as "Lambos." Plaintiff Richard Blair is the current owner of the domain name lambo.com. Lamborghini believes it is entitled to own that domain name and an international arbitration panel agreed. Blair filed this suit hoping for a judgment that he is allowed to retain ownership of lambo.com.

Lamborghini seeks dismissal of the complaint, arguing only the individual or entity that first registered lambo.com can assert a claim under the statute Blair invokes. Blair opposes dismissal and argues Lamborghini's argument is so baseless as to qualify for an award of sanctions. Lamborghini's argument is not convincing, but it is not so baseless as to be sanctionable. Therefore, the motion to dismiss will be denied as will Blair's motion for sanctions.

## BACKGROUND

If an individual wishes to own a particular Internet domain name (*e.g.*, lambo.com), he must register the chosen domain name with a private company known as a registry. To

do so, he pays the registry a fee and provides his "name, along with contact, billing, and technical information." *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011). Once registered, the individual owns the domain name and is free to transfer the domain name as he wishes. *Id.* at 1031-32. Because domain names may be transferred multiple times, the current owner of a domain name may have no connection to the individual or entity that submitted the first registration, *i.e.*, the "initial registrant."

An unidentified third party first registered lambo.com in March 2000. Blair does not allege the domain name's history after that until February 2018. That month Blair purchased lambo.com either from the initial registrant or a subsequent owner. Blair bought lambo.com because he "planned on developing a website" but he subsequently abandoned those plans. (Doc. 21 at 3-4). Blair denies he purchased the domain name because of its connection to Lamborghini's cars. In fact, Blair alleges the term "lambo" is used to refer to many other things, including a film, a cartoon character, and a "rejuvenating cream." Blair alleges these non-Lamborghini usages of the term "lambo" establish lambo.com has value beyond any connection with Lamborghini's cars.

The World Intellectual Property Organization ("WIPO") administers a system of "non-binding arbitration for adjudicating disputes over domain names." *GoPets*, 657 F.3d at 1027. In April 2022, Lamborghini initiated arbitration with WIPO claiming it is entitled to own lambo.com. (Doc. 21 at 7). Under the governing procedures, the dispute between Blair and Lamborghini was heard by a panel of three individuals. That panel issued a split decision with two panelists concluding lambo.com should be transferred to Lamborghini and the other panelist concluding Blair was entitled to retain ownership. Blair filed this suit before the panel decision could take effect. As a result of this suit, the transfer has not yet occurred.

Blair's Amended Complaint contains two claims. First, he asserts a claim under one provision of the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1114. That claim is premised primarily on the allegation that when lambo.com was first registered in 2000, there was no bad faith intent to profit off the use of a trademark.

Therefore, Blair alleges the lack of bad faith at the time of the initial registration means he is entitled to retain ownership of the domain name. Second, Blair asserts a claim for declaratory judgment that he "is the rightful owner of" lambo.com and his use of the domain name is lawful. Lamborghini seeks dismissal of both claims, arguing Blair has no valid claim under ACPA and the request for declaratory relief is duplicative of the ACPA claim. Blair opposes dismissal, arguing Lamborghini's motion lacks a good faith basis. Thus, Blair seeks sanctions pursuant to Federal Rule of Civil Procedure 11. In opposing the request for sanctions, Lamborghini also requests sanctions because Blair's Rule 11 motion itself allegedly was sanctionable.

## ANALYSIS

A provision of ACPA codified at 15 U.S.C. § 1114 allows "a domain name registrant who is aggrieved by an overreaching trademark owner [to] commence an action to declare that the domain name registration or use by the registrant is not unlawful." *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 625 (4th Cir. 2003) (citing 15 U.S.C. § 1114(2)(D)(v)). The relevant statutory language identifies the proper party to file such a suit as the "domain name registrant." 15 U.S.C.A. § 1114(2)(D)(v). According to Lamborghini, "domain name registrant" in this statute is a term of art that refers exclusively to the *initial* registrant of a domain name. In other words, if the initial registrant sells a domain name, the buyer cannot file suit under this portion of ACPA. Because it is undisputed Blair is not the initial registrant of lambo.com, Lamborghini argues Blair has failed to state a claim for relief under § 1114. Lamborghini's argument relies almost exclusively on a Ninth Circuit opinion involving a different provision of ACPA.

A central aspect of ACPA is its attempt to provide a remedy for "cybersquatting." That term refers to "when a person other than the trademark holder registers" a domain name the same as, or confusingly similar to, "a well known trademark." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 680 (9th Cir. 2005). The person who registers the domain name "then attempts to profit from" owning the domain name "by either ransoming the

domain name back to the trademark holder or by using the domain name to divert business from the trademark holder." *Id.* ACPA contains a provision that allows for civil liability when a person engages in such behavior. 15 U.S.C. § 1125. Such liability is possible, however, only when a person other than the trademark owner registers a domain name that is "confusingly similar" to a trademark that "is distinctive at the time" of the domain name's "registration." 15 U.S.C. § 1125(d)(1)(A)(ii)(I). If a trademark is not distinctive at the time of the domain name's "registration," there can be no liability under § 1125. In 2011, the Ninth Circuit addressed "what counts as 'registration'" for purposes of § 1125. *GoPets Ltd. v. Hise*, 657 F.3d 1024, 1030 (9th Cir. 2011).

In *GoPets*, an individual initially registered the domain name gopets.com in 1999. In 2004, an unrelated company named GoPets Ltd. was founded and obtained a service mark for GoPets.[1] The founder of GoPets Ltd. and the owner of the gopets.com exchanged correspondence where GoPets Ltd. indicated it wished to buy gopets.com but the domain name owner demanded far more than GoPets Ltd. was willing to pay. In 2006, the domain name owner transferred ownership of gopets.com to a corporation and the corporation "reregistered" the domain name.[2] These facts meant the initial registration of gopets.com in 1999 occurred long before there was any possibility the service mark belonging to GoPets Ltd. was distinctive. However, the "reregistration" of gopets.com in 2006 occurred after GoPets Ltd.'s service mark might have qualified as distinctive. Thus, if the 2006 "reregistration" qualified as a "registration" under § 1125, the corporation that owned gopets.com might be liable for cybersquatting.

The Ninth Circuit concluded "Congress meant 'registration' [in § 1125] to refer only to the initial registration." *GoPets*, 657 F.3d at 1031. Under this interpretation, if a mark

---

[1] "[T]he only difference between a trademark and a service mark is that a trademark identifies goods while a service mark identifies services." *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1156 (9th Cir. 2001).

[2] The Ninth Circuit did not explain what occurred in 2006 that it was describing as a "reregistration." As noted by another district court, transfers of domain names are not the same as the "initial registration of a previously unclaimed domain name." *Mehdiyev v. Qatar Nat'l Tourism Council*, 532 F. Supp. 3d 1065, 1072 (D. Colo. 2021). Presumably the Ninth Circuit was referencing something other than a mere change in ownership. However, without knowing what occurred in 2006 in connection with gopets.com, it is not possible to determine what the Ninth Circuit was describing as a "reregistration."

is not distinctive at the time of a domain name's "initial registration," liability under § 1125 is not possible. Because it was undisputed the initial registration of gopets.com occurred long before the service mark belonging to Gopets Ltd. could have been distinctive, the Ninth Circuit reasoned no claim under § 1125 could succeed. Part of the Ninth Circuit's rationale for adopting this interpretation of "registration" is crucial to the present case.

According to the Ninth Circuit, when an individual or entity first registers a domain name, that individual or entity gains valuable property rights. To protect those rights, the Ninth Circuit believed ACPA should be interpreted to ensure all the property rights were freely alienable. That is, the Ninth Circuit believed there was "no basis in ACPA to conclude that a right that belongs to an initial registrant of a currently registered domain name is lost when that name is transferred to another owner. The general rule is that a property owner may sell all of the rights he holds in property." *Id.* at 1031. Defining "registration" as including acts of "reregistration" would, in the Ninth Circuit's view, make many domain names "effectively inalienable, whether the alienation is by gift, inheritance, sale, or other form of transfer."[3] *Id.* at 1032.

Lamborghini cites *GoPets* and argues the definition of "registration" established in that case should be applied when determining the meaning of the ACPA provision allowing a "domain name registrant" to file "a civil action to establish that the registration or use of the domain name by such registrant is not unlawful." 15 U.S.C § 1114(2)(D)(v). Under this reasoning, the "domain name registrant" entitled to file suit under § 1114 would refer only to the "*initial* domain name registrant." Blair admits he is not the initial registrant of lambo.com. Thus, Lamborghini argues Blair cannot state a claim under § 1114. Lamborghini does not cite a case supporting this argument nor does Lamborghini cite a case where this argument was even made. While the novelty of the argument does not

---

[3] The Eleventh Circuit has rejected this interpretation of "registration" by reasoning "re-registration is, by definition, a registration." *Jysk Bed'N Linen v. Dutta-Roy*, 810 F.3d 767, 777 (11th Cir. 2015). And the Fourth Circuit recently concluded the *GoPets* reasoning is based on "a public policy concern" that is "best addressed through the bad faith intent to profit inquiry" also found in § 1125. *Prudential Ins. Co. of Am. v. Shenzhen Stone Network Info. Ltd.*, 58 F.4th 785, 797 (4th Cir. 2023). Whatever the merits of the Ninth Circuit's interpretation, this Court must follow it. However, it appears Lamborghini's argument for dismissal would be foreclosed in at least the Fourth and Eleventh circuits.

- 5 -

mean it fails, general principles of statutory construction as well as the underlying rationale in *GoPets* prevent adoption of Lamborghini's proposed interpretation.

A central point of Lamborghini's argument is the definition of "registration" in § 1125 should dictate the meaning of "domain name registrant" in § 1114. This argument runs into an immediate problem. There is a "normal rule of statutory construction that *identical* words used in different parts of the same act are intended to have the same meaning." *Sullivan v. Stroop*, 496 U.S. 478, 484 (1990) (emphasis added). But the relevant words here are not identical. As used in ACPA, "registration" is referring to an event, *i.e.* the initial registration of a domain name. "Domain name registrant," however, is referring to an individual or entity. While the two terms share the root word "register," they cannot have precisely the same meaning because they are referring to two distinct concepts. Thus, it is simply not possible for the two terms to "have the same meaning."[4] *Sullivan*, 496 U.S. at 484. More importantly, however, the "normal rule" requiring similar words in a statute be interpreted to have similar meanings does not support ignoring all other potential clues to the proper interpretation of the relevant term.

When construing a statute a court must "interpret the relevant words not in a vacuum, but with reference to the statutory context, structure, history, and purpose." *Abramski v. United States*, 573 U.S. 169, 179 (2014). When faced with two proposed meanings of a particular statutory term, both of which have some basis, a court should adopt "the interpretation that is more consistent with the broader context and primary purpose of the statute." *Connell v. Lima Corp.*, 988 F.3d 1089, 1097 (9th Cir. 2021). In other words, when choosing between competing meanings, a court should adopt the meaning that "makes more sense than the other as a means of attributing a rational purpose to Congress." *United States v. Rundo*, 990 F.3d 709, 718 (9th Cir. 2021).

The purposes of the relevant ACPA provisions are well-known. First, the anticybersquatting portion of ACPA found at § 1125 was meant "to protect consumers . . .

---

[4] Even identical words in a statute might be interpreted to have different meanings. For example, the Ninth Circuit has recognized "the verb 'claims' in [28 U.S.C.] § 2409a(a) does not have a meaning identical to that of the noun 'claim' in § 2409a(g)." *Leisnoi, Inc. v. United States*, 267 F.3d 1019, 1025 (9th Cir. 2001).

and to provide clarity in the law for trademark owners by prohibiting the bad-faith and abusive registration of distinctive marks [as Internet domain names]." *Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 553 (9th Cir. 2013) (quotation marks omitted). Second, the portion of ACPA found at § 1114 was meant to "provide[] some protection to domain name registrants against overreaching trademark owners." *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 625 (4th Cir. 2003). Interpreting § 1114 in the manner suggested by Lamborghini would frustrate this secondary purpose of ACPA.

Under Lamborghini's interpretation of § 1114, the initial registrant of any domain name may seek a court ruling whether the ownership or use of a domain name is lawful. All owners of domain names that have been transferred or reregistered, however, would be ineligible to invoke § 1114 and seek relief from a court. If there is some reason to believe Congress meant to grant special protection from trademark owners only to "initial domain name registrants," Lamborghini has not identified it. Moreover, Lamborghini's interpretation would have the perverse effect of preventing many legitimate domain name owners from filing suit should a domain name be transferred inappropriately by WIPO. For example, if Lamborghini obtains ownership of lambo.com, Lamborghini would not be able to invoke § 1114 in the future. In that situation, Lamborghini would not be the "initial domain name registrant" for lambo.com and Lamborghini would have no recourse under federal law should WIPO order transfer of lambo.com to a different entity. Depriving domain name holders of access to court, merely because the domain name holder was not the initial registrant, would make little sense.

Lamborghini's proposed interpretation would also undercut a central rationale for the result in *GoPets*. As mentioned, *GoPets* held it was important to interpret the term "registration" in § 1125 to ensure domain names remained freely alienable. Thus, the company that "reregistered" gopets.com was entitled to rely on the fact the GoPets mark was not distinctive at the time of the initial registration. Holding otherwise would have meant the initial registrant's "rights in their domain name . . . would evaporate, at least

practically if not legally" because "no one would buy rights to a domain name that would be rendered subject to a cybersquatting lawsuit upon the transfer." *Mehdiyev v. Qatar Nat'l Tourism Council*, 532 F. Supp. 3d 1065, 1071 (D. Colo. 2021) (interpreting *GoPets*).

Here, everyone agrees § 1114 grants a cause of action to the *initial* registrant of a domain name. Viewing that cause of action as something akin to a property right as *GoPets* instructs, the initial registrant must be free to sell or otherwise transfer that right. A subsequent owner of a domain name should take all the property interests in the domain name, including the right to sue under § 1114 when "an overreaching trademark owner" prevails in front of an administrative panel and obtains ownership of a domain name. *Barcelona.com, Inc. v. Excelentisimo Ayuntamiento De Barcelona*, 330 F.3d 617, 625 (4th Cir. 2003). Accepting Lamborghini's argument would mean an initial domain name registrant has special legal rights that, if the domain name were transferred, would be lost forever. In other words, domain names would no longer be freely alienable.

Based on ACPA's purpose to protect against overreaching trademark holders, as well as the rationale in *GoPets* of ensuring the alienability of domain names, the better interpretation of "domain name registrant" as used in § 1114 is that it refers to the current registrant of the domain name, even if the current registrant was not the initial domain name registrant. This construction "makes more sense" than concluding Congress meant to grant special privileges to a select group of registrants. *United States v. Rundo*, 990 F.3d 709, 718 (9th Cir. 2021). Accordingly, Blair is the "domain name registrant" as that phrase is used in § 1114 and he is entitled to file suit under § 1114.

In addition to claiming Blair may not proceed under § 1114, Lamborghini seeks dismissal of Blair's claim for declaratory relief. In that claim Blair seeks a judgment that his ownership and use of lambo.com are lawful. According to Lamborghini, the request for declaratory relief is duplicative of Blair's claim under § 1114. Blair disagrees, arguing his request for declaratory relief reaches other issues beyond "cyberpiracy." In particular, Blair explains he is seeking declaratory relief that his ownership and use of lambo.com do not constitute "trademark infringement or dilution." (Doc. 24 at 18). As best as the Court

can determine, the disagreement between the parties depends in large part on a small change in statutory language that occurred when ACPA was codified.

As codified, § 1114(2)(D)(v) allows a "domain name registrant" to file suit seeking to establish "the registration or use of the domain name . . . is not unlawful under this *chapter*." (Emphasis added). Section 1114 is found in Chapter 22, covering practically all issues regarding trademarks. However, the relevant portion of ACPA set forth in the Statutes at Large reads, in relevant part, a domain name registrant may file suit to establish the registration or use of a domain name "is not unlawful under this *Act*." PL 106–113, November 29, 1999, 113 Stat 1501. (Emphasis added). "[T]he text of the United States Code cannot prevail over the Statutes at Large when the two are inconsistent." *Galvez v. Jaddou*, 52 F.4th 821, 830 (9th Cir. 2022). Therefore, the governing language is "unlawful under this Act" not "unlawful under this chapter."

Having determined "Act" is the correct term, the question becomes whether "Act" refers to ACPA or the entire Trademark Act of 1946, commonly known as the Lanham Act, 15 U.S.C. § 1051 *et seq.* If "Act" refers only to ACPA, a cause of action under § 1114(2)(D)(v) will resolve only ACPA-specific issues. But if "Act" refers to the entire Lanham Act, a cause of action under § 1114(2)(D)(v) presumably would resolve all possible trademark issues. Courts have disagreed on this point. *See Ricks v. BMEzine.com, LLC*, 727 F. Supp. 2d 936, 959 (D. Nev. 2010) (citing opinions from First, Second, and Fourth Circuits). However, the better reading of the language "unlawful under this Act" is that "Act" refers only ACPA. As explained by one court, throughout its text "the ACPA uses the term 'Act' to refer to the ACPA, not the Lanham Act in its entirety." *Id.* at 960.

This analysis leads to the conclusion that Blair's cause of action under § 1114(2)(D)(v) will resolve whether the registration and use of lambo.com is lawful under the various provisions of ACPA and will not resolve all possible issues under the Lanham Act. In fact, Blair's request for declaratory relief regarding the lawfulness of the registration and use of lambo.com under the entire Lanham Act appears to be a broader

inquiry.⁵   Blair's ACPA claim and claim for declaratory relief are not necessarily duplicative and the declaratory relief claim will be allowed to proceed.

In response to Lamborghini's motion to dismiss, Blair filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11. Blair argues Lamborghini's interpretation of "domain name registrant" is sanctionable as evidenced by the fact that no other litigant has ever argued a claim under § 1114 may only be brought by the *initial* domain name registrant. Blair may be correct that Lamborghini's argument has not been litigated before but, in this case, that novelty does not merit sanctions.

The Ninth Circuit's *GoPets* decision provided a sufficient basis for Lamborghini to argue its proposed definition of "domain name registrant."  However, the reasoning in *GoPets* regarding the need to interpret ACPA in line with traditional principles of property rights significantly undercut Lamborghini's position. In these circumstances, neither Blair nor Lamborghini is entitled to sanctions.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (Doc. 23) is **DENIED**.

**IT IS FURTHER ORDERED** the Motion for Sanctions (Doc. 26) is **DENIED**.

Dated this 14th day of July, 2023.

Honorable Roslyn O. Silver
Senior United States District Judge

---

⁵ The parties have not explained what practices may be lawful under ACPA but unlawful under the Lanham Act. For purposes of the motion to dismiss, the Court will assume it is possible such differences exist.