Nicholas J. Nowak (*pro hac vice*)
Lauren A. Watt (*pro hac vice*)
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1101 K St. NW, 10th Floor
Washington, D.C. 20005
Telephone: (202) 371-2600
Facsimile: (202) 371-2540
nnowak@sternekessler.com
lwatt@sternekessler.com

*Attorneys for Defendant Automobili Lamborghini S.p.A.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Richard Blair, | No: CV-22-1439-PHX-ROS |
| *Plaintiff*, | |
| v. | |
| Automobili Lamborghini S.p.A., | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| *Defendant*. | Oral Argument Requested |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... 1

II.   PROCEDURAL BACKGROUND ................................................................. 1

III.   LEGAL STANDARD ..................................................................................... 2

    A.   Summary judgment is proper where there is no genuine issue of fact ................................................................................................... 2

    B.   Standard for Cybersquatting ................................................................ 3

IV.   ARGUMENT .................................................................................................. 4

    A.   Blair registered the domain <lambo.com>. ......................................... 4

    B.   The LAMBORGHINI mark is well known and has been registered since 1990. ............................................................................ 4

    C.   The domain <lambo.com> is confusingly similar to the LAMBORGHINI mark because it merely deletes letters from the mark. .................................................................................................... 5

    D.   Blair has acted with bad faith intent to profit from the LAMBORGHINI mark. ........................................................................ 7

        1.   It is undisputed that Mr. Blair has no trademark or other intellectual property rights in the disputed domain (Factor I). .......... 7

        2.   It is undisputed that "Lambo" is not Blair's name (Factor II). .......... 7

        3.   It is undisputed that Mr. Blair has not used the disputed domain (Factors III and IV) ............................................................... 9

        4.   It is undisputed that Mr. Blair redirected visitors to the disputed domain to a third-party website with intent to tarnish or disparage Lamborghini (Factor V). ............................................... 10

        5.   It is undisputed that Mr. Blair has and continues to offer to sell the disputed domain to third parties for financial gain (Factor VI). ........................................................................................ 11

        6.   It is undisputed that the LAMBORGHINI mark is distinctive and famous within the meaning (Factor IX) ................................... 13

V.   CONCLUSION .................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alkam Home Fashion, Inc. v. Dahdoul Textiles, Inc.*,
  2022 WL 1841612 (C.D. Cal. Jan. 3, 2022) ................................................................. 4

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..................................................................................................... 2

*Audi AG v. Posh Clothing, LLC*,
  No. CV 18-14254, 2019 WL 1951166 (D.N.J. May 2, 2019) ............................ 5, 6, 14

*Automobili Lamborghini SpA v. Garcia*,
  2020 WL 2048165 (E.D. Va. Apr. 20, 2020) ........................................................*passim*

*Automobili Lamborghini SpA v. Lamboshop, Inc.*,
  2008 WL 2743647 (M.D. Fla. June 5, 2008) ............................................................... 6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..................................................................................................... 2

*DSPT Intern., Inc. v. Nahum*,
  624 F.3d 1213 (9th Cir. 2010) ..................................................................................... 3

*Erickson v. Nebraska Mach. Co.*,
  No. 15-cv-01147-JD, 2015 WL 4089849 (N.D. Cal. July 6, 2015) ........................... 11

*Far Out Prods., Inc. v. Oskar*,
  247 F.3d 986 (9th Cir. 2001) ....................................................................................... 2

*Foreword Magazine, Inc. v. OverDrive, Inc.*,
  No. 1:10-cv-1144, 2011 WL 5169384 (W.D. Mich. Oct. 31, 2011) .......................... 11

*Lahoti v. VeriCheck, Inc.*,
  586 F.3d 1190 (9th Cir. 2009) ............................................................................. 3, 4, 5

*Martins v. 3PD, Inc.*,
  No. 11-cv-11313, 2013 WL 1320454 (D. Mass. Mar. 28, 2013) ............................... 11

*Pond Guy, Inc. v. Aquascape Designs, Inc.*,
  No. 13-13229, 2014 WL 2863871 (E.D. Mich. June 24, 2014) ................................ 11

*Super-Krete Inten., Inc. v. Sadleir*,
    712 F. Supp. 2d 1023 (C.D. Cal. 2010) ................................................................... 5, 6

*UL LLC v. Space Chariot Inc.*,
    250 F. Supp. 3d 596 (C.D. Cal. 2017) ....................................................................... 11

*Villiarimo v. Aloha Island Air, Inc.*,
    281 F.3d 1054 (9th Cir. 2002) ..................................................................................... 2

*Volkswagen Grp. of Am., Inc. v. Unincorporated Associations Identified in Schedule A*,
    No. 1:20-CV-01437-LO-MSN, 2021 WL 8444641 (E.D. Va. July 21, 2021) ................................................................................................................ 6, 14

*Yelp Inc. v. Catron*,
    70 F. Supp. 3d 1082 (N.D. Cal. 2014) ..................................................................... 5, 6

*Zipee Corp. v. U.S. Postal Service*,
    140 F. Supp. 2d 1084 (D. Or. 2000) ............................................................................ 4

**Statutes**

15 U.S.C. § 1125 ............................................................................................................ *passim*

ACPA ............................................................................................................................. *passim*

**Other Authorities**

Fed R. Civ. P. 56(c) ............................................................................................................... 2

Fed. R. Evid. 201(b)(1) ........................................................................................................ 11

## I. INTRODUCTION

This is a standard case of cybersquatting. Lamborghini is a world-famous company known for its high-quality cars and other related products. As a renowned name in the automobile industry, numerous individuals and entities attempt to capitalize off of Lamborghini's goodwill and notoriety by using Lamborghini's signature trademarks and other confusingly similar marks, including its registered LAMBORGHINI mark. The Plaintiff, Richard Blair ("Blair"), is no different. Despite a World Intellectual Property Organization ("WIPO") Panel determining that Blair's use and ownership of the domain <lambo.com> was improper under the Uniform Domain Name Dispute Resolution Policy (UDRP), Blair doubled down and filed a declaratory judgment action against Defendant Automobili Lamborghini S.p.A. ("Lamborghini") alleging that he properly owns the <lambo.com> domain. But the facts are indisputably clear: the domain <lambo.com> is confusingly similar to Lamborghini's world-famous and registered LAMBORGHINI mark, and Blair acted with bad faith intent to profit from the that mark. Allegedly abandoning plans to develop a website at the disputed domain, Mr. Blair has instead either listed it for sale or employed it to disparage Lamborghini, essentially holding the domain ransom while attempting to justify his ownership of it.

For the reasons set forth more fully below, Lamborghini respectfully requests that the Court grant summary judgment on Lamborghini's claims of cybersquatting under 15 U.S.C. § 1125(d).

## II. PROCEDURAL BACKGROUND

On April 29, 2022, Lamborghini filed a Complaint with the WIPO Arbitration and Mediation Center (the "Center") seeking transfer of the domain name <lambo.com> under the Uniform Domain Name Dispute Resolution Policy. *See* Statement of Material Facts ("SMF") ¶ 12.  After a formalized briefing process during which both Lamborghini and Blair were allowed to present their cases and positions, the Center convened a panel on July 2, 2022 to review. *Id.* ¶¶ 12-13, Ex. F. On August 3, 2022, the panel concluded

1  that the domain <lambo.com> was confusingly similar to Lamborghini's
2  LAMBORGHINI mark and that Blair was using the mark in bad faith. *Id.* ¶ 13. The panel
3  ordered that the domain name <lambo.com> be transferred to Lamborghini. *Id.* ¶ 13.
4     In order to halt the transfer of the domain pursuant to the WIPO panel's final
5  conclusion, Blair filed a declaratory judgment action against Lamborghini seeking
6  declaratory relief that <lambo.com> is not unlawful under the Anticybersquatting
7  Consumer Protection Act ("ACPA") on August 24, 2022. ECF No. 1. Lamborghini
8  counterclaimed that Blair's ownership and use of the domain <lambo.com> violated the
9  Anticybersquatting Protection Act, 15 U.S.C. § 1125(d). ECF No. 30 at 12-13.

10 **III.   LEGAL STANDARD**
11     **A.   Summary judgment is proper where there is no genuine issue of fact**
12     Summary judgment is appropriate where "there is no genuine issue as to any
13 material fact" and "the movant is entitled to judgment as a matter of law." Fed R. Civ. P.
14 56(a), (c). To enter summary judgment, the Court must examine all evidence and find no
15 dispute concerning genuine issues of material fact. *See Anderson v. Liberty Lobby, Inc.*,
16 477 U.S. 242, 255–256 (1986). The evidence of the non-moving party is to be believed,
17 and all reasonable inferences drawn in its favor. *See id*. "[A] party seeking summary
18 judgment always bears the initial responsibility of informing the district court of the basis
19 for its motion, and identifying those portions of the pleadings, depositions, answers to
20 interrogatories, and admissions on file, together with the affidavits, if any, which it
21 believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.
22 Catrett*, 477 U.S. 317, 323 (1986) (internal citations omitted). An issue is "genuine" only
23 if there is sufficient evidence for a reasonable fact finder to find for the non-moving
24 party. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*,
25 477 U.S. at 248–49). Accordingly, a "court need not draw all possible inferences in [the
26 non-movant's] favor, but only all *reasonable* ones." *Villiarimo v. Aloha Island Air, Inc.*,
27 281 F.3d 1054, 1065 n. 10 (9th Cir. 2002).
28

### B. Standard for Cybersquatting

"The Anti–Cybersquatting Consumer Protection Act establishes civil liability for 'cyberpiracy' where a plaintiff proves that (1) the defendant registered, trafficked in, or used a domain name; (2) the domain name is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010). "A finding of bad faith is an essential prerequisite to finding an ACPA violation." *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 (9th Cir. 2009). The ACPA lists several non-determinative factors that a court may consider when determining bad faith. Those factors are as follows:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
> (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
> (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
> (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without

   regard to the goods or services of the parties; and
    (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c).

*Id.* at 1220 n. 15; *see also* 15 U.S.C. § 1125(d)(1)(B).

  Courts routinely grant motions for summary judgment for ACPA claims when the facts clearly demonstrate that the domain owner acted in bad faith. *See Lahoti*, 586 F.3d at 1203 (affirming the grant of summary judgment in favor of the trademark owner and finding the domain owner's "willingness to sell the Domain Name only for an exorbitant profit" as a "quintessential cybersquatting practice[]."); *Alkam Home Fashion, Inc. v. Dahdoul Textiles, Inc.*, 2022 WL 1841612, at *5 (C.D. Cal. Jan. 3, 2022) (granting a motion for summary judgment of an ACPA claim when "the majority of factors indicate bad faith"); *Zipee Corp. v. U.S. Postal Service*, 140 F. Supp. 2d 1084, 1087 (D. Or. 2000) (granting motion for summary judgment under the federal cybersquatting statute when "plaintiff [] engaged in a bad faith intent to profit from the use of a trademark confusingly similar to the defendant's trademarks").

  Here, the facts support a finding of bad faith by Mr. Blair based on a majority of the factors.

## IV. ARGUMENT

### A. Blair registered the domain &lt;lambo.com&gt;.

  On February 16, 2018, Blair purchased the disputed domain name for $10,000. SMF ¶ 4. This Court has concluded that Blair is the "domain name registrant." *See* ECF 29 at 8.

### B. The LAMBORGHINI mark is well known and has been registered since 1990.

  The LAMBORGHINI mark was distinctive at the time the &lt;lambo.com&gt; domain was registered and at the time the domain was purchased by Mr. Blair in 2018. The LAMBORGHINI mark has been used for nearly fifty years. *Automobili Lamborghini, S.p.A. v. Garcia*, 2020 WL 2048165, at *5 (E.D. Va. Apr. 20, 2020) ("Lamborghini has

- 4 -

1  used the Marks exclusively and continuously for over fifty years, has never abandoned
2  them, and has spent millions of dollars in advertising and promoting the Marks
3  throughout the United States and the world. As a result, the Marks are world famous and
4  the consuming public exclusively associates the Marks with Lamborghini."); *Audi AG v.*
5  *Posh Clothing, LLC*, No. 18-14254, 2019 WL 1951166, at *4 (D.N.J. May 2, 2019)
6  (noting that the LAMBORGHINI mark dates back at least to 1975 and concluding the
7  mark is famous). Lamborghini filed for registration of the LAMBORGHINI mark on
8  January 16, 1990. SMF ¶ 1. The USPTO granted the application on November 13, 1990,
9  and registered the LAMBORGHINI mark as U.S. Registration No. 1622382. *Id.* ¶ 2. The
10 USPTO's grant of registration of the LAMBORGHINI mark is prima facie evidence that
11 the LAMBORGHINI mark is distinctive. *See Lahoti*, 586 F.3d at 1199 ("There can be no
12 serious dispute with the principle that a federal trademark registration of a particular
13 mark supports the distinctiveness of that mark, because the PTO should not otherwise
14 give it protection.").
15     The domain <lambo.com> was not registered until March 5, 2000, nearly ten years
16 after the LAMBORGHINI mark was registered. *Id.* ¶ 3. Blair did not obtain possession of
17 <lambo.com> until 2018, almost *thirty years* after the LAMBORGHINI mark was
18 registered. *Id.* ¶ 4. Therefore, the LAMBORGHINI mark was distinctive prior to both the
19 registration of <lambo.com> and on the date that Blair purchased the <lambo.com>
20 domain.

21     **C.    The domain <lambo.com> is confusingly similar to the**
22           **LAMBORGHINI mark because it merely deletes letters from the**
23           **mark.**

24     "Domain names may be confusingly similar to a protected mark if they
25 incorporate the mark or if they add, ***delete***, or rearrange letters in the mark." *Yelp Inc. v.*
26 *Catron*, 70 F. Supp. 3d 1082, 1097 (N.D. Cal. 2014) (emphasis added). To determine
27 whether a domain name is confusingly similar, "[a] court should not look beyond the
28

domain name to consider the content of the website." *See Super-Krete Inten., Inc. v. Sadleir*, 712 F. Supp. 2d 1023, 1031 (C.D. Cal. 2010). "The inquiry under the ACPA is thus narrower than the traditional multifactor likelihood of confusion test for trademark infringement." *Id.* Here, there is little doubt that the domain <lambo.com> is confusingly similar to the LAMBORGHINI mark.

LAMBORGHINI is a well-known, world-famous mark that has been used for over fifty years. *See Garcia*, 2020 WL 2048165 at *5; *Audi AG*, 2019 WL 1951166 at *4; *Volkswagen Grp. of Am., Inc. v. Unincorporated Associations Identified in Schedule A*, No. 1:20-cv-01437-LO-MSN, 2021 WL 8444641, at *2 (E.D. Va. July 21, 2021), report and recommendation adopted, No. 1:20-cv-1437, 2021 WL 8445261 (E.D. Va. Aug. 23, 2021). "Lambo" is nothing more than a shortened version of LAMBORGINI that merely "delete[s] . . . letters in the mark." *See Yelp*, 70 F. Supp. 3d at 1097.

"Lambo" is also a well-known shorthand for Lamborghini. *See Automobili Lamborghini SpA v. Lamboshop, Inc.*, 2008 WL 2743647, at *4 (M.D. Fla. June 5, 2008) (finding "Lambo" was a "well-known shorthand for Lamborghini"); SMF ¶¶ 12-13, Ex. F. Indeed, the WIPO Panel noted:

> Therefore, and notwithstanding that one member of the majority does not consider it necessary to undertake further searches to determine how the term "Lambo" is commonly understood, the Panel has conducted a Google search against the term "Lambo". This establishes that "Lambo" is widely used by enthusiasts and fans of the Complainant's products, as well as by car dealerships, as an abbreviation for the Complainant's vehicles. Additionally, the search results include questions generated by Internet users which are clearly referable to the Complainant, including "How much is the cheapest Lambo?" and "Is a Lambo cheaper than a Ferrari?" which reaffirms the extensive use of "Lambo" to denote the Complainant's vehicles. The search results also suggest that the Complainant, as well as third parties, are using "lambo" within their website content in such a way as to ensure that an Internet search for this term will produce results which are associated with the Complainant's vehicles.".

SMF ¶¶ 12-13, Ex. F at 6.

The question of whether "Lambo" is confusingly similar to the LAMBORGHINI mark for purposes of a claim under the ACPA is not a particularly close call. During the

Court's April 9, 2024 Status Conference, Mr. Blair's counsel admitted as much, noting that "from the context of an ACPA claim, I tend to agree with [counsel for Lamborghini] that it is likely that the confusing similarity threshold would be met," and that "I'm not going to argue that's not the case." SMF ¶ 28; *id.* Ex. T, 18:11-13.

### D. Blair has acted with bad faith intent to profit from the LAMBORGHINI mark.

#### 1. It is undisputed that Mr. Blair has no trademark or other intellectual property rights in the disputed domain (Factor I).

Factor I looks at what trademark or other intellectual property rights Mr. Blair has in <lambo.com>. 15 U.S.C. § 1125(d)(1)(B)(i)(I). Mr. Blair admits that he has no trademark rights in the word LAMBO. SMF ¶ 7.

#### 2. It is undisputed that "Lambo" is not Blair's name (Factor II).

Factor II looks at "the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person." 15 U.S.C. § 1125(d)(1)(B)(i)(II). It is undisputed that Lambo is not Richard Blair's legal name. *See* SMF ¶ 8.

It is also undisputed that "Lambo" is not a name "commonly used to identify [Mr. Blair]." *See* SMF ¶¶ 8-9. Indeed, Mr. Blair and others commonly refer to him as "Richard" or "Richard Blair." *See id*. For example, in email correspondence dated as recently as April 17, 2023, Mr. Blair responds to an inquiry regarding an offer to buy the disputed domain. In that correspondence, not only is Mr. Blair identified in the "From" line as "Richard Blair" but he refers to himself as "Richard" in the signature line. An annotated excerpt of the email is shown below:

> From: Richard Blair
> Subject: Lambo.com
> To: rudy@rudybekker.com
> Sent: April 17, 2023 5:05 AM (UTC-04:00)
> Attached: publickey - EmailAddress(s=rb@ceec.com) - 0xACE46E04.asc
>
> Hello,
> I am responding to your inquiry. Price as shown, if you are interested you can use the buy now button and checkout via escrow.com. If you have any questions let me know.
>
> Regards,
> Richard
>
> Sent from Proton Mail mobile

See SMF ¶ 9, Ex. D.

Other email correspondence regarding offers to buy the disputed domain similarly identify Mr. Blair as "Richard." The following annotated excerpt is from an email dated September 30, 2021:

> From: r.blair@gax.com
> Subject: Re: lambo.com
> To: sidzgandhi@gmail.com
> Sent: September 30, 2021 12:04 PM (UTC-04:00)
> Attached: publickey - EmailAddress(s=r.blair@gax.com) - 0x86811FBC.asc
>
> Hello, asking price for Lambo.com is USD $12m.
>
> Richard
>
> Sent from ProtonMail mobile
>
> -------- Original Message --------
> On Sep 30, 2021, 3:09 AM, Siddharth Gandhi < sidzgandhi@gmail.com> wrote:
>
>> Hi,
>>
>> Would you be interested in selling lambo.com domain, if so what would be the price?
>>
>> Regards,
>> Siddharth

See SMF ¶ 9, Ex. E. And yet another example from January 5, 2021:

> From: r.blair@gax.com
> Sent: Wednesday, January 6, 2021 8:06 PM
> To: rob@epik.com
> Subject: Re: Interested in the domain: lambo.com
> Attachments: publickey - EmailAddress(s=r.blair@gax.com) - 0x86811FBC.asc
>
> $888,888
>
> Sent from ProtonMail mobile
>
> -------- Original Message --------
> On Jan 5, 2021, 3:37 PM, Rob Monster < rob@epik.com> wrote:
>
>> Hi Richard,
>>
>> Happy New Year!
>>
>> Nice opening offer here. What is the reserve?
>>
>> Regards,
>> Rob

SMF ¶ 24, Ex. S.

### 3. It is undisputed that Mr. Blair has not used the disputed domain (Factors III and IV)

Factor III considers the domain name owner's "prior use, if any, of the domain name in connection with the bona fide offering of any goods or services" while Factor IV considers "the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name." 15 U.S.C. § 1125(d)(1)(B)(i)(III and IV). It is undisputed that Mr. Blair has made no use, whatsoever, of the domain name, whether that be a bona fide commercial, noncommercial, or fair use. Indeed, Mr. Blair has admitted that he "initially planned on developing a website at [<lambo.com>]" but "[t]hose plans were subsequently delayed and abandoned." SMF ¶¶ 10-11.

**4.      It is undisputed that Mr. Blair redirected visitors to the disputed domain to a third-party website with intent to tarnish or disparage Lamborghini (Factor V).**

Factor V looks to whether "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark." 15 U.S.C. § 1125(d)(1)(B)(i)(V). To the extent Mr. Blair ever put the domain to any use, whatsoever, he used it to do just that—tarnish Lamborghini's goodwill and reputation.

It is undisputed that after Lamborghini filed its UDRP Complaint, Mr. Blair redirected visitors to the <lambo.com> domain to a third-party website where Mr. Blair disparaged Lamborghini's action against him. SMF ¶ 14, Exs. G-H. On the third-party website, Mr. Blair stated, among other things, that he would "defend, defeat and *humiliate*" Lamborghini, accused Lamborgini of "THEFT," and provided a link to the UDRP proceedings. *Id.* Ex. H (emphasis added). For reference, an annotated excerpt of that third-party website to which visitors of the <lambo.com> domain were directed is referenced below:



SMF ¶ 14, Exs. G-H.[1]

**5. It is undisputed that Mr. Blair has and continues to offer to sell the disputed domain to third parties for financial gain (Factor VI).**

Factor VI looks at "the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used,

---

[1] Lamborghini notes that the Court may take judicial notice of the Wayback machine pages because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1); *see UL LLC v. Space Chariot Inc.*, 250 F. Supp. 3d 596, 604 n. 2 (C.D. Cal. 2017); *Erickson v. Nebraska Mach. Co.*, No. 15-cv-01147-JD, 2015 WL 4089849, at *1 (N.D. Cal. July 6, 2015); *see also Pond Guy, Inc. v. Aquascape Designs, Inc.*, No. 13-13229, 2014 WL 2863871, at *4 (E.D. Mich. June 24, 2014) ("As a resource the accuracy of which cannot reasonably be questioned, the Internet Archive has been found to be an acceptable source for the taking of judicial notice."); *Martins v. 3PD, Inc.*, No. 11-11313-DPW, 2013 WL 1320454, at *16 n.8 (D. Mass. Mar. 28, 2013) (taking judicial notice of "the various historical versions of [a] website available on the Internet Archive at[ ]Archive.org as facts readily determinable by resort to a source whose accuracy cannot reasonably be questioned"); *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) ("[T]he federal courts have recognized that Internet archive services, although representing a relatively new source of information, have sufficient indicia of reliability to support introduction of their contents into evidence, subject to challenge at trial for authenticity.").

or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct." 15 U.S.C. § 1125(d)(1)(B)(i)(VI).

It is undisputed that Mr. Blair bought the disputed domain on February 16, 2018 for $10,000.  *See* SMF ¶ 4, Ex. B. It is further undisputed that at least as early as August 6, 2020, Mr. Blair began listing the disputed domain for sale for a price of $1,129,298.00. SMF ¶ 16, Ex. J.  It is also undisputed that Mr. Blair has subsequently increased the sale price of the disputed domain, listing it for sale for $1.5 million on December 23, 2020, $3.3 million on January 27, 2021, $12 million on September 23, 2021, $50 million on August 11, 2022 and $75 million on September 7, 2023. *Id.* ¶¶ 17-21.  To this day, Mr. Blair continues to list the disputed domain for $75 million as shown below in a current screenshot of the <lambo.com> domain:



SMF ¶ 22, Ex. P.

Not only has Mr. Blair listed the disputed domain for sale, he has entertained numerous offers from others seeking to buy it. *See* SMF ¶¶ 24-26. For example, in an email dated January 6, 2021 in response to an opening offer of $100,000, Mr. Blair notes that the "reserve" price is $888,888. *Id.* ¶ 24. In email correspondence from September 20, 2021, Mr. Blair tells a prospective buyer that the "asking price for Lambo.com is USD $12m." *Id.* ¶ 25. And on April 17, 2023, in responding to an offer to buy the domain for $50,000,000, Mr. Blair tells the prospective buyer that he "would be agreeable to a

near all cash offer if ready to close." *Id.* ¶ 26.. For reference, an annoted excerpt of Mr. Blair's April 17, 2023 email is shown below:

> From: Richard Blair
> Subject: Re: Lambo.com
> To: rudy@rudybekker.com
> Sent: April 17, 2023 8:00 AM (UTC-04:00)
> Attached: publickey - EmailAddress(s=rb@ceec.com) - 0xACE46E04.asc
>
> I understand. Thanks anyway for your interest and best wishes.
>
> Sent from Proton Mail mobile
>
> -------- Original Message --------
> On Apr 17, 2023, 12:57 PM, Rudy Bekker < rudy@rudybekker.com> wrote:
>
>> Sure thing!
>>
>> This is a personal acquisition for my portfolio
>>
>> https://www.linkedin.com/in/rudybekker
>>
>> I am a software entrepreneur and investor
>>
>> What sort of price are you looking for?
>>
>> I am liquid but 50m is super crazy haha
>>
>> Rudy
>>
>> On Mon 17. Apr 2023 at 13:33, Richard Blair <rb@ceec.com> wrote:
>>> Tell me about the nature of your inquiry, is this a domain name you seek for personal acquisition or do you represent a third party?
>>>
>>> ==Regarding price, I would be agreeable to a near all cash offer if ready to close.==
>>>
>>> Sent from Proton Mail mobile

SMF ¶ 26, Ex. I.

### 6. It is undisputed that the LAMBORGHINI mark is distinctive and famous within the meaning (Factor IX)

One of the most important factors is Factor IX which looks at the extent to which the mark incorporated in the domain name registration is or is not distinctive and famous. Courts have repeatedly held that the LAMBORGHINI mark is famous and distinctive. *See Garcia*, 2020 WL 2048165 at *5 ("Lamborghini has used the Marks exclusively and

- 13 -

continuously for over fifty years, has never abandoned them, and has spent millions of dollars in advertising and promoting the Marks throughout the United States and the world. As a result, the Marks are world famous and the consuming public exclusively associates the Marks with Lamborghini."); *Audi AG*, 2019 WL 1951166 at *4; *Volkswagen*, 2021 WL 8444641 at *2, report and recommendation adopted, 2021 WL 8445261.

## V.     CONCLUSION

Defendant Lamborghini respectfully requests this Court grant its motion for summary judgment. It is undisputed that Blair owns the domain <lambo.com>. It is further undisputed that "lambo" is a well-known and shortened version of the LAMBORGHINI mark, making it confusingly similar to the LAMBORGHINI mark. In addition, it is undisputed that the LAMBORGHINI mark is both distinctive and famous. Finally, it is undisputed that Blair has acted in bad faith, offering and continuing to offer the domain <lambo.com> for sale at prices significantly more than he paid to purchase it. For the foregoing reasons, Lamborghini respectfully requests that the Court grant its motion for summary judgment.

Dated: May 2, 2024

Respectfully submitted,

By: /s/ *Nicholas J. Nowak*
Nicholas J. Nowak (*pro hac vice*)
Lauren A. Watt (*pro hac vice*)
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1101 K St. NW, 10th Floor
Washington, D.C. 20005
Telephone: (202) 371-2600
Facsimile: (202) 371-2540
nnowak@sternekessler.com
lwatt@sternekessler.com

*Attorneys for Defendant Automobili Lamborghini S.p.A.*

# CERTIFICATE OF SERVICE

This is to certify that on May 2, 2024, a true and correct copy of the foregoing was filed electronically using the Clerk of Court's CM/ECF system, which will provide notice to all counsel of record. It was also served by electronic mail on the following counsel of record:

Brett E. Lewis
LEWIS & LIN LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Telephone: (718) 243-9323
Facsimile: (718) 243-9326
brett@iLawco.com

*Attorney for Plaintiff Richard Blair*

Dated: May 2, 2024                By: /s/ *Nicholas J. Nowak*
                                  Nicholas J. Nowak (*pro hac vice*)
                                  STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
                                  1101 K St. NW, 10th Floor
                                  Washington, DC 20005
                                  Telephone: (202) 371-2600
                                  Facsimile: (202) 371-2540
                                  nnowak@sternekessler.com

                                  *Attorney for Defendant Automobili Lamborghini S.p.A.*