# Exhibit F



ARBITRATION
AND
MEDIATION CENTER

**ADMINISTRATIVE PANEL DECISION**
Automobili Lamborghini S.p.A. v. Domain Administrator, See PrivacyGuardian.org / Richard Blair
Case No. D2022-1570

### 1. The Parties

The Complainant is Automobili Lamborghini S.p.A., Italy, represented by HK2 Rechtsanwälte, Germany.

The Respondent is Domain Administrator, See PrivacyGuardian.org, United States of America ("United States") / Richard Blair, United States, self-represented.

### 2. The Domain Name and Registrar

The disputed domain name <lambo.com> is registered with NameSilo, LLC (the "Registrar").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on April 29, 2022. On April 29, 2022, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain name. On May 2, 2022, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain name which differed from the named Respondent and contact information in the Complaint. The Center sent an email communication to the Complainant on May 3, 2022, providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint. The Center received an email communication from the Respondent on May 6, 2022. The Complainant filed an amendment to the Complaint on May 8, 2022.

The Center verified that the Complaint together with the amendment to the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondent of the Complaint, and the proceedings commenced on May 10, 2022. In accordance with the Rules, paragraph 5, the due date for Response was May 30, 2022. The Response was filed with the Center on May 30, 2022.

On May 31, 2022, the Respondent sent an email to the Center, requesting that his name was not released when any press release was issued and seeking assurances of confidentiality.

The Complainant filed a supplemental filing on June 10, 2022.

The Center appointed Antony Gold, Matthew S. Harris, and The Hon Neil Brown Q.C. as panelists in this matter on July 2, 2022.  The Panel finds that it was properly constituted.  Each member of the Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

## 4. Factual Background

The Complainant is a manufacturer of high-performance sports cars.  It was founded in 1963 and is based in Sant Agata Bolognese, Italy.  In 2021, it manufactured 8,405 vehicles.

The Complainant trades as LAMBORGHINI and it is the owner of a number of trade marks for this trading style as well as the domain name <lamborghini.com>.

A well-known and commonly used abbreviation of the Complainant's LAMBORGHINI mark, namely "Lambo", has also been registered by the Complainant and its current registrations for LAMBO include European Union Trade Mark, registration number 006113451, registered on April 28, 2008 in classes 7, 9, and 12.

The disputed domain name was first registered on March 5, 2000, by a John F Lambeth.  It was acquired by the Respondent on or after February 28, 2018.  The disputed domain has, until recently, resolved to a web page at which it has been offered for sale at a price of EUR 25,0000,000 or to lease at a monthly price of EUR 541,667.  A third party platform has offered the disputed domain name for sale at a price of EUR 56,671 and it has been offered for sale on another platform at a price of USD 12,000,000.

At present, the disputed domain name redirects to a discussion group on the NamePros website, which contains content in which the Respondent protests the Complainant's action in bringing the Complaint.

## 5. Parties' Contentions

### A. Complainant

The Complainant says that the disputed domain name is identical or confusingly similar to a trade mark in which it has rights.  It refers to its marks for LAMBORGHINI and LAMBO and says that, as the ".com" prefix is generally disregarded for the purpose of the test under the first element, the disputed domain name is confusingly similar to its LAMBORGHINI mark and identical to its LAMBO mark.  Moreover, the Complainant's rights in LAMBO have been recognized in a decision of an earlier UDRP panel, namely *Automobili Lamborghini Holding S.p.A., Audi AG, Volkswagen AG v. Joey Walt, globebizImports, Groupo Gold*, WIPO Case No. D2011-1269.

The Complainant says also that the Respondent has no rights or legitimate interests in respect of the disputed domain name.  The Respondent has not offered or made demonstrable preparations to use the disputed domain name in connection with a *bona fide* offering of goods and services in that it has never resolved to an active website, but only to a web page at which it is offered for sale at a very high price, as well as for substantial prices on third party domain purchase platforms.  Nor, in the light of the Respondent's offering for sale of the disputed domain name, is he making a noncommercial or fair use of it.  Additionally, the disputed domain name is identical to the Complainant's LAMBO mark and carries with it a high risk of implied affiliation.  Moreover, to the best of the Complainant's knowledge, the Respondent is not commonly known by the name "Lambo".

Lastly, the Complainant says that the disputed domain name was registered and is being used in bad faith.

The mere registration of a domain name identical or confusingly similar to a famous or widely-known trade mark by an unaffiliated entity can create a presumption of bad faith. The Complainant's marks including its LAMBO mark, are famous and have a strong reputation around the world, including in the United States, and it is inconceivable that the Respondent was not aware of its marks. In fact, the Respondent obviously had actual knowledge of the Complainant's LAMBO mark when acquiring the disputed domain name and it was acquired primarily for the purpose of selling, renting or otherwise transferring it to a competitor of the Complainant for valuable consideration far in excess of the Respondent's documented out of pocket costs.

There is no conceivable plausible actual or contemplated use for the disputed domain name. The fact that the Respondent has not made any use of the disputed domain name other than to offer it for sale indicates that it has never had a legitimate interest in its actual use.

Lastly, the fact that the disputed domain name does not resolve to an active website, but only to a page where it is offered for sale via a third party domain name purchase platform, does not prevent a finding of bad faith use under the doctrine of passive holding.

**B. Respondent**

The Respondent claims that disputed domain name is not confusingly similar to the Complainant's LAMBORGHINI mark in that it only has in common the first five letters of that mark.

The Respondent is known as "Lambo" on the Internet and in real life and has a history of dealing in, and developing, domain names. The Respondent has an established online footprint as "Lambo" and is known in online communities and in a personal capacity as "Lambo". Specifically, "Lambo" is of repute and regard in NamePros, which is a million member online community, as well as on other online platforms, including the Darwinia Network and Evolution Land. The Respondent is a "Lamb of outlier generic aptitude and intelligence" and this is apparent from a logo and iconography for his online footprint.

In support of his contention that he is commonly known by the disputed domain name, the Respondent refers to "unsolicited organic testimonials". These take the form of two posts from participants to an online chat on the NamePros platform which assert, in response to what appears to be a comment in relation to the Complaint, that the Respondent has been known as "Lambo" on the forum, for some time.

The Respondent also claims that other "Lambos" exist as names, nicknames and companies and that it is a generic term with myriad applications across both commercial and noncommercial fields in a number of different jurisdictions. The results of a LinkedIn search show 2,400 results for other persons known as "Lambo", there is a commercial enterprise operating within Italy using the domain name <lambo.it> and an entity operates in the United States using the domain name <lamboshp.com>. Indeed, there are other owners of trade marks for "Lambo" including in the United States[1]. Furthermore, "Lambo" has a meaning in other contexts including, by way of example, as a Sicilian family name, as meaning "shine" in Greek, and as a merchant boat.

The Complainant cannot have greater rights to "Lambo" than the other users of this term or than another trade mark holder of LAMBO. Such users include the Respondent and he should be considered to have registered it legitimately, having regard to the underlying principle that, where there are multiple users of a term, generic domain names have been found by earlier UDRP panels to be acquired on a first-come, first-served basis; see *Enterprise Rent-A-Car Company v. Michael Ruddell*, NAF Claim Number:

---

[1] The two LAMBO marks referenced by the Respondent are design plus word marks. The first of these marks is for teleconferencing and video conferencing services and is owed by a company located in California, United States, Lambo Communications, LLC. The second mark is registered for a variety of goods, including hair clippers and apparatus for tattooing, and is owned by a Chinese company, Shenzhen Lambo Electronical Co., Ltd.

FA0209000125371, *Target Brands, Inc. v. Eastwind Group*, NAF Claim Number: FA0405000267475 and *The Coca-Cola Company v. Mr. Goran Inge Svensson*, NAF Claim Number: FA0201000103933.

The Respondent is in the business of domain name investing, which is a legitimate business model. Moreover, the resale of generic domain names is not in bad faith as the domaining business has become a prevalent enterprise that is widely accepted.

Further, the Respondent has spent 6,441 man hours and USD 143,458 in expenditure on the development of myriad domain names, such as the disputed domain name, on top of which he has incurred monthly server maintenance and operations costs.

The disputed domain name has not been registered or used in bad faith; ""Lambo" is my name and "I am Lambo"". Whilst the Complainant has sought to draw inferences from the fact that the disputed domain name has been offered for sale on third party platforms at varying prices, prospective buyers would have been unable to acquire the disputed domain name at those prices. "The beauty is in the eye of the beholder and as the outlier Lamb par excellence, <lambo.com> is all but priceless to me. And that is all that matters".

Lastly, the Complainant has waited 22 years from the original registration date to try and claim the disputed domain name.

In all the circumstances, the Respondent seeks a declaration that the Complainant has engaged in Reverse Domain Name Hijacking.

## 6. Discussion and Findings

Paragraph 4(a) of the Policy provides that the Complainant must prove each of the following three elements in order to succeed in its Complaint:

(i) the disputed domain name is identical or confusingly similar to a trade mark or service mark in which the Complainant has rights;

(ii) the Respondent has no rights or legitimate interests in respect of the disputed domain name; and

(iii) the disputed domain name has been registered and is being used in bad faith.

### A. The Complainant's Supplemental Filing and the Respondent's request for anonymity

Whilst the Rules make no express provision for supplemental filings by the parties to a complaint, paragraph 10 of the Rules provides that the Panel shall conduct the administrative proceeding in such manner as it considers appropriate, provided that the parties are treated with equality and that each party is given a fair opportunity to present its case. Section 4.6 of the WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Third Edition ("WIPO Overview 3.0") explains that "Unsolicited supplemental filings are generally discouraged, unless specifically requested by the panel" and "panels have repeatedly affirmed that the party submitting or requesting to submit an unsolicited supplemental filing should clearly show its relevance to the case and why it was unable to provide the information contained therein in its complaint or response (*e.g.*, owing to some "exceptional" circumstance)".

The Panel subscribes to the view that unsolicited supplemental filings are to be discouraged. Accordingly, save for noting the most recent change of ownership details of the disputed domain name (discussed below), the Panel does not admit the Complainant's supplemental filing, which mainly comprises submissions, which the Panel does not require, together with the results of a Google search against the term "Lambo" which the Complainant could (and should) have considered appending to its original Complaint. The value of a Google search in the context of the issues the Panel is required to determine is, however, considered further below.

The Domain Report attached to the Complainant's supplemental filing does, in fact, establish from historical WhoIs data, that, until February 28, 2018, the disputed domain name was registered in the name of a John F Lambeth.  The date that the Respondent acquired the disputed domain name is relevant to his allegation of delay on the part of the Complainant in bringing these proceedings against him.  As the change of registrant details in 2018, from the original registrant, was not evident from either the WhoIs search appended to the Complaint nor the registrant verification information provided by the Registrar and communicated to the Complainant by the Center on May 3, 2022, the Complainant could not have anticipated that the Respondent would make such an assertion.  It is therefore helpful for the factual position in this respect to be clarified, particularly when the Respondent has not stated in his Response the date on which he acquired the disputed domain name.

So far as the Respondent's request that his identity be hidden is concerned, the Center does not generally issue press releases in relation to decisions under the Policy.  Instead, they are made publicly available on the Internet, in accordance with paragraph 4(j) of the Policy, which states that:  "All decisions under this Policy will be published in full over the Internet, except when an Administrative Panel determines in an exceptional case to redact portions of its decision".  It is for a respondent to show why this is necessary and why it has an exceptional case that would justify such a redaction.  The Respondent has not put forward argument or evidence to support his request, nor does the Panel consider this case to be exceptional.  The unanimous view of the Panel therefore, is to decline to direct that the Respondent's name be redacted from this Decision.

**B. Identical or Confusingly Similar**

The Complainant has provided evidence of its trade mark registrations for LAMBO, details of one of these registrations having been set out above.

The generic Top-Level Domain, that is ".com" in the case of the disputed domain name, is typically disregarded for the purposes of the comparison made under the first element, as it is a technical requirement of registration.  The disputed domain name contains the Complainant's LAMBO mark in full and without alteration or added content.  The Panel accordingly finds that the disputed domain name is identical, or at least confusingly similar, to the Complainant's LAMBO trade mark.

Additionally, in circumstances where it is undisputed that "Lambo" is a well-known and common abbreviation of the mark LAMBORGHINI, and bearing in mind the test for confusing similarity under the Policy is whether the mark is "recognizable" in the relevant domain name (as to which see section 1.7 of the WIPO Overview 3.0), at least one member of the majority of the Panel also considers that the disputed domain name is confusingly similar to that mark.  Further, such a finding would be consistent with the finding of the panel in *Automobili Lamborghini Holding S.p.A., Audi AG, Volkswagen AG v. Joey Walt, globebizImports, Groupo Gold*, WIPO Case No. D2011-1269.

**C. Rights or Legitimate Interests**

Paragraph 4(c) of the Policy provides, in summary, that a respondent may demonstrate that it may have rights or legitimate interests in a disputed domain name by demonstrating either that, before any notice to it of the dispute, it has been using or has made demonstrable preparations to use, the domain name in connection with a *bona fide* offering of goods or services or that it has been commonly known by the domain name or that it has been making a legitimate noncommercial or fair use of the domain name.

The only known use of the disputed domain name has been to offer it for sale at a price of EUR 25,0000,000 with a correspondingly high leasing alternative, and, more recently, to redirect to a third party website at which the Respondent has protested about the Complainant's action in bringing the Complaint.  Neither of these uses amounts to use in connection with a *bona fide* offering of goods and services.  Nor, save for a generalized assertion that the Respondent has developed domain names which he has owned, has the Respondent claimed that his intention has been to develop a website using the disputed domain name, let

alone provided any evidence to support such a claim. Nor, as is discussed further below, does the offering for sale of the disputed domain name amount to a legitimate noncommercial or fair use of it.

Before dealing with the Respondent's assertions in relation to the final means whereby he might establish rights or legitimate interests in respect of the disputed domain name, it may be helpful to clarify that the Complainant has not asserted that it is making direct use of its LAMBO mark as a brand name for any of its goods or services. It is therefore helpful to understand what third party use is being made of LAMBO. As explained at section 4.8 of the WIPO Overview 3.0, a panel may undertake limited factual research into matters of public record if it would consider such information useful to assessing the case merits and reaching a decision. Therefore, and notwithstanding that one member of the majority does not consider it necessary to undertake further searches to determine how the term "Lambo" is commonly understood, the Panel has conducted a Google search against the term "Lambo". This establishes that "Lambo" is widely used by enthusiasts and fans of the Complainant's products, as well as by car dealerships, as an abbreviation for the Complainant's vehicles. Additionally, the search results include questions generated by Internet users which are clearly referable to the Complainant, including "How much is the cheapest Lambo?" and "Is a Lambo cheaper than a Ferrari?" which reaffirms the extensive use of "Lambo" to denote the Complainant's vehicles. The search results also suggest that the Complainant, as well as third parties, are using "lambo" within their website content in such a way as to ensure that an Internet search for this term will produce results which are associated with the Complainant's vehicles. Moreover, save for one result, which relates to a documentary about a man called "Aarron Lambert", and another result in which an urban dictionary states that "lambo" is a large apelike, monkeyish, creature, all the results on the first two pages relate to the Complainant. Accordingly, notwithstanding that the Complainant itself does not appear to be using "Lambo" as a brand for its vehicles, there is clearly widespread third party use of this term to refer to those vehicles.

In considering the Respondent's claim that he is commonly known by the disputed domain name, it is helpful to have regard to section 2.3 of the WIPO Overview 3.0, which discusses the nature of the evidence that a respondent should be required to produce in these circumstances and explains that:

"Insofar as a respondent's being commonly known by a domain name would give rise to a legitimate interest under the Policy, panels will carefully consider whether a respondent's claim to be commonly known by the domain name – independent of the domain name – is legitimate. Mere assertions that a respondent is commonly known by the domain name will not suffice; respondents are expected to produce concrete credible evidence. Absent genuine trademark or service mark rights, evidence showing that a respondent is commonly known by the domain name may include: a birth certificate, driver's license, or other government-issued ID; independent and sustained examples of secondary material such as websites or blogs, news articles, correspondence with independent third parties; sports or hobby club publications referring to the respondent being commonly known by the relevant name; bills/invoices; or articles of incorporation. Panels will additionally typically assess whether there is a general lack of other indicia of cybersquatting".

See also, by way of example; *Cracker Barrel Old Country Store, Inc., CBOCS Properties, Inc. v. Domain Administrator, See PrivacyGuardian.org / CB OCS*, WIPO Case No. D2022-0627. Such evidence is particularly apposite when, as here, it is not readily apparent as to why the Respondent, Richard Blair, would have become known as "Lambo" and no explanation has been proffered by him.

The only evidence the Respondent has produced in this respect comprises extracts from a blog connected with the NamePros community of domainers, in which the Respondent has evidently discussed, with other members of the community, the Complaint and the best approach which he might take in his Response. In the extracts provided, two participants assert that the Respondent has been calling himself "Lambo" on the forum for some time. Although the Respondent has not provided examples of any posts which would substantiate these assertions, that the Respondent is presently referring to himself as "Lambo" on the NamePros discussion forum is, in fact, evident from the section of the forum to which the disputed domain name currently redirects. Accordingly, the Panel proceeds on the basis that for, at least, some period of time, the Respondent has referred to himself as "Lambo" on this forum.

The Respondent's evidence, however, does not shed any light on the specific period of time for which the Respondent has referred to himself as "Lambo" on the forum and, in particular on whether he did so prior to his acquisition of the disputed domain name or only after he acquired it.  This is an important consideration because if, as the Complainant alleges, the Respondent had the Complainant in mind as a prospective purchaser of the disputed domain name as at the date of his acquisition of it, then calling himself "Lambo" on the forum may have been part of a strategy intended to suggest an interest on his part in the disputed domain name in the event of challenge by the Complainant.  Furthermore, the Respondent has not provided any evidence at all to support his contentions that he is known by the name "Lambo" both in other online communities and "in real life".

The Respondent has asserted also that he is a "Lamb of outlier generic aptitude and intelligence".  What this means, is unclear but, whatever meaning is intended by this contention, it is a statement made without any evidential support.

The evidence to support the assertion that the Respondent is commonly known as Lambo is therefore confined to the Respondent having called himself "Lambo" for an unknown period of time on the NamePros online community, with nothing to suggest that he had been calling himself "Lambo" on the forum prior to his acquisition of the disputed domain name, nor, in fact, does the Respondent even specifically assert that this was the case.  It follows that, when matched against the standard of concrete and credible evidence required of a respondent seeking to establish that it is commonly known by a domain name, as set out at section 2.3 of the [WIPO Overview 3.0](), the Respondent's evidence falls a very long way short.

Having regard to the fact that paragraph 12 of the UDRP Rules enables a panel, in its sole discretion, to request any further statements or documents from the parties that it deems necessary, the Panel considered whether it was appropriate to issue a procedural order inviting the Respondent to file further evidence in support of his claim.  A procedural order might be made, for example, in circumstances where a party makes a *prima facie* credible assertion the confirmation of which would benefit from additional supporting evidence; see section 4.7 of the [WIPO Overview 3.0]().  However, in these proceedings, the Respondent has explained that he is a professional domainer and his Response has shown familiarity with the terms of the Policy and its application and therefore, there are no persuasive reasons for granting him the considerable leeway of, in effect, having another bite at the cherry.  This is particularly the case as the shortcomings in the Response on this issue do not amount to a minor lacuna in otherwise satisfactory evidence which, for clarity, the Panel wishes to have filled, but are appreciably more extensive.

In these circumstances, the majority of the Panel has concluded that it would be inappropriate to invite the Respondent to file additional evidence and that the Respondent has not established that he is commonly known by the disputed domain name.  The Panel is mindful of its duty under paragraph 10 of the Rules to ensure that each party is treated equally and has had a fair opportunity to present its case and the majority considers its obligations have been adhered to in these proceedings.  The majority also do not think it makes a difference to the assessment of this case that the Respondent appears to be legally unrepresented.  There is no suggestion that the Respondent did not have an opportunity to get such representation, had he so wished, and to treat him more favourably in proceedings because he chose to represent himself, itself risks offending the principle of equality.

The Respondent has additionally asserted that the term "lambo" should be considered a generic term, that is a term descriptive of a general class of goods or services.  There is no evidence to support this claim, and the term "lambo" has no known meaning in the English language or, indeed any other language[2] as a dictionary word or phrase.  The fact that "Lambo" may have been used as, for example, a surname, the name for a character in a Manga series and the name of a music album is insufficient for these purposes.

---

[2] The Respondent has suggested that the equivalent word, in Greek script, means "shine" but no evidence is offered in this respect and Google's translate function suggests that the Greek word for "shine" is, in fact, λάμπω (or "lámpo" in Roman script).

However, even if "Lambo" were such a term, this would not have the consequence that a party would have unfettered rights to register it as a domain name where a third party is using that term as a trade mark. As explained at section 2.10.1 of the WIPO Overview 3.0; "Panels have recognized that merely registering a domain name comprised of a dictionary word or phrase does not by itself automatically confer rights or legitimate interests on the respondent; panels have held that mere arguments that a domain name corresponds to a dictionary term/phrase will not necessarily suffice. In order to find rights or legitimate interests in a domain name based on its dictionary meaning, the domain name should be genuinely used, or at least demonstrably intended for such use, in connection with the relied-upon dictionary meaning and not to trade off third-party trademark rights."

In this respect, the factual matrices of the earlier panel decisions cited by the Respondent are such as to establish that they do not support the Respondent in the manner he has contended. In *Enterprise Rent-A-Car Company v. Michael Ruddell* (which related to the domain name <enterprise-e.org>), the respondent had not been offering the domain name for sale and the panel accepted the respondent's submission that he was not using the generic word "enterprise" in the domain name because it was the complainant's trademark, but because of the non-trademarked, generic value of the word "enterprise". In *The Coca-Cola Company v. Mr. Goran Inge Svensson*, (which related to the domain name <sprite.nu>) the panel accepted the respondent's contention that he had acquired the domain name for use by his son, that the word 'sprite' was used in the domain name as a reference to the scientific term "sprite" and that the respondent had created a web site called Internet Sprite Magazine, to offer children a means of retrieving information on scientific subjects. In *Target Brands, Inc. v. Eastwind Group* (which concerned the domain name <target.org>) the panel found that the links on the respondent's website related to the dictionary meaning of the term, such as target practice, hunting, archery and goal setting. The circumstances of the Respondent's registration and use of the disputed domain name, which are considered further below, are materially different from these cases and other panel decisions under the Policy including, by way of example, *Oravel Stays Private Limited v. Perfect Privacy, LLC / Kannan, Vijayakumar*, WIPO Case No. D2019-1979 are more apposite. In circumstances where the Complainant has made out a *prima facie* case that the disputed domain name is identical to its LAMBO trade mark, it is insufficient for the Respondent merely to assert that the term "Lambo" may have some generic or descriptive meaning without providing credible evidence of a *bona fide* intention to use the disputed domain name for its generic or descriptive attributes. The Respondent has not provided any such evidence.

The majority of the Panel, therefore, finds that the Complainant has made out a *prima facie* case that the Respondent lacks rights or legitimate interests in the disputed domain name and that the Respondent has failed to satisfy his burden of establishing that he does.

The majority of the Panel therefore finds that the Respondent has no rights or legitimate interests with respect to the disputed domain name.

**D. Registered and Used in Bad Faith**

Paragraph 4(b)(i) of the Policy provides a further circumstance which evidences bad faith registration and use, namely (in summary) if a respondent has acquired a domain name primarily for the purpose of selling, renting, or otherwise transferring it to the complainant or a competitor of the complainant, for valuable consideration in excess of its documented out-of-pocket costs directly related to the domain name.

Domain name investing can, as the Respondent asserts, be a legitimate business activity and registering a domain name for resale does not, in itself amount to bad faith registration. Whether bad faith registration will be found is fact-specific and factors which have been found by prior UDRP panels to point towards bad faith registration (see section 3.1.1 of the WIPO Overview 3.0) include a respondent's likely knowledge of a complainant's rights and the failure of a respondent to present a credible, evidence-backed rationale for registration of the disputed domain name. Section 3.1.1 adds that; "Particularly where the domain name at issue is identical or confusingly similar to a highly distinctive or famous mark, panels have tended to view with a degree of skepticism a respondent defense that the domain name was merely registered for legitimate speculation (based for example on any claimed dictionary meaning) as opposed to targeting a specific brand

owner". In this respect, see also *Klarna Bank AB v. Whois Privacy Protection Service by Z.com SG / ubaidah nugroho, safuer*, WIPO Case No. D2022-0539.

The majority of the Panel having not accepted the Respondent's claim to be commonly known by the disputed domain name, there is no credible explanation on the record for the Respondent's registration of it and the Panel necessarily has to seek to infer the Respondent's likely motive from the circumstances. In considering the Respondent's intentions in registering the disputed domain name the Panel takes into account the following. First, other than claiming that he generally develops domain names he owns, the Respondent has not suggested that he intended to use the disputed domain name himself, nor is there any evidence that he has done so. Second, the Respondent does not actually dispute that the term "Lambo" is a well-known common abbreviation of the term "Lamborghini" and he has not claimed that he was unaware of either the Complainant or its use of "Lambo" to denote its vehicles as at the date of registration of the disputed domain name.

Third, the very high prices at which the disputed domain name has been offered for sale on the website to which it has resolved (particularly bearing in mind the Respondent's assertion that prospective purchasers would not have been able to acquire the disputed domain name at the lower prices at which it was offered for sale on the third party platforms) are clearly indicative of the Respondent's belief that a company might be willing to pay a sum approximating or approaching the exceptionally high sum sought by the Respondent and the very high asking price for the disputed domain name tends to affirm the likelihood of targeting by the Respondent; see *Klarna Bank AB v. Whois Privacy Protection Service by Z.com SG / ubaidah nugroho, safuer*, (*supra*). None of the other commercial users of "Lambo" identified by the Respondent in the Response are plausible candidates as prospective purchasers at the price sought by the Respondent. The owner of <lambo.it>, for example, sells trees and shrubs from a nursery in Italy. The owner of <lambosbp.com>, by way of further example, operates 4 filling stations, with annexed stores, in Chicago, Illinois. Prior UDRP panels have found that it is not necessary for a complainant to identify that it is the sole object of targeting by a respondent; see, for example, *Victron Energy B.V. v. Privacy Administrator, Anonymize Inc. / SARVIX, INC*., WIPO Case No. D2022-1186. However, having regard to the very widespread use of the word "Lambo" to denote the Complainant's vehicles and the likely value of this term to the Complainant, the only conceivable buyer of the disputed domain name at the level of consideration sought by the Respondent is the Complainant or, conceivably, a competitor of it.

Whilst the Respondent has provided information as to what he says are the overall costs of running his business, no specific costs have been provided in relation to the costs of acquiring and potentially developing the disputed domain name and the information therefore falls far short of establishing that his documented out-of-pocket costs directly related to the disputed domain name might approach the price at which he has offered it for sale. The majority of the Panel therefore concludes that, on the evidence before it, the Respondent registered the disputed domain name with a view to its sale to the Complainant or a competitor of it, at a price substantially in excess of its documented out-of-pocket costs directly related to the disputed domain name and that this therefore falls within the circumstance of bad faith registration and use set out at paragraph 4(b)(i) of the Policy.

The fact that the Respondent is currently using the disputed domain name in order to resolve to a third party website at which he is protesting the Complainant's actions in bringing the Complaint does not preclude a finding of bad faith use on the grounds set out above.

The majority of the Panel therefore finds that the disputed domain name was registered and is being used in bad faith. It is not therefore necessary to consider the Respondent's claim that the Complainant has engaged in Reverse Domain Name Hijacking.

**7. Decision**

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain name, <lambo.com> be transferred to the Complainant.

*/Antony Gold/*
**Antony Gold**
Presiding Panelist

*/Matthew S. Harris/*
**Matthew S. Harris**
Panelist

Date:  August 3, 2022

**DISSENT**
Automobili Lamborghini S.p.A. v. Domain Administrator, See Privacy Guardian.org/ Richard Blair.
Case No. D2022-1570.
Dissent:  The Hon Neil Anthony Brown QC

**Introduction and Summary**

This panelist would dismiss the Complaint for the following reasons.  The Complainant has a trademark for LAMBO and the disputed domain name is identical to that trademark.  The LAMBO mark is the Complainant's orphan child:  the Complainant does not use LAMBO to identify its motor vehicles and is clearly not interested in using it for that purpose.  Why would the Complainant want its prestigious and expensive motor vehicles referred to by the down-market name "Lambo"? It clearly would not.  It should be noted that the LAMBO trademark was abandoned in the United States before the Respondent, also in the United States, registered the disputed domain name.  A domain name should not be transferred to a complainant who does not have a relevant trademark that is in practical use.  The Respondent also has presented an arguable case that he is commonly known by the domain name and he therefore has a right or legitimate interest in the domain name.  Nor has he committed any act that amounts to bad faith in either the registration or the use of the domain name.

The Complainant also has trademarks for LAMBORGHINI. The domain name is not identical to that trademark.  Nor is it confusingly similar to the trademark because, although some Internet users may think it invokes the Lamborghini name, the domain could and in numerous cases already does, invoke a wide range of goods and services other than Lamborghini.  It therefore cannot be said that Internet users would on the balance of probabilities be confused in any way by the domain name.  The Complaint therefore fails with respect to the LAMBORGHINI trademark.  The Respondent also has a right or legitimate interest in the domain name and did not register it in bad faith.  Advertising a domain name for sale to the public generally is not an offer to sell to the Complainant or a competitor.  It is unwise and inappropriate for panels to enter into the question of whether the price asked for a domain name is high, low, reasonable or otherwise appropriate or inappropriate.  A panel should confine itself to the jurisdiction conferred by the actual wording of the UDRP. That jurisdiction is confined to out-of-pocket costs and does not extend to the value of a domain name.

These questions will be dealt with in turn, but several preliminary issues have arisen which will be examined first.

**The Complainant's Supplementary Filing and the Respondent's request for anonymity**
**The Complainant's Supplementary Filing**

This panelist would allow the Complainant's supplementary filing.  The Complainant has asked for leave to file a further submission in reply to the Response and the majority of the panel has rejected that request.  The Complainant had set out in the supplementary statement its opposition to there being a finding of reverse domain name hijacking;  the criteria for making such a finding;  an argument that the complaint had been brought in good faith and the public offer by the Respondent that the domain name was for sale.  The statement went on to deal with whether the word "lambo" was generic, whether the Respondent was commonly known as Lambo, the expiration of its US trademarks for LAMBO, the use made by other parties of the word "lambo" and the Complainant's trademarks.

All of those issues are clearly relevant to this proceeding and the Complainant should be permitted to have its say on them.  It could scarcely have done so before the Response was delivered.  No harm would be done by allowing the further statement covering those matters.  The proposed further statement was no longer than two pages.  This panellist does not agree with the Complainant on those issues, but it was entitled to put to the panel everything it had to say on them.  Moreover, the UDRP and its rules make it clear that it establishes a process which the Panel exercises judicially and with regard to the parties' due process rights.  Obviously, panels must exercise restraint on what additional material they allow, but to prevent a party from putting clearly relevant, concise and limited material to the panel as the Complainant wanted to do in this case would be a substantial departure from proper practice.  This panelist therefore urges the Panel not to take that course.

The same principle applies to another, and a major, issue that arose concerning the Respondent's case and which will also be referred to later.  The Respondent submitted that he was commonly known as "lambo" and that this established his right or legitimate interest to the domain name.  The submission was supported by some, although limited, evidence.  It therefore seemed sensible to issue a procedural order under Rule 12 to see what further evidence there was of the Respondent's being known as "Lambo." The Respondent is unrepresented and is up against a substantial firm of lawyers that represents the Complainant.  Panels can help unrepresented parties by ensuring at least that they have a fair opportunity to present their case in full and there is a strong case for giving them some leeway in presenting evidence, especially if it can be done reasonably quickly and concisely.  In this particular case, the Complainant had submitted that the Respondent's evidence had come from "just three (rather unknown)" Internet communities" and it therefore seemed to this panellist that no harm would be done or delay incurred if the Respondent could provide some further information that might persuade the panel one way or the other whether he was commonly known by the nickname Lambo, as he alleged.  This panellist is therefore of the view that if the procedural order is not issued the Respondent would be denied a proper opportunity to present his case and to be heard.

**Respondent's request for anonymity**

This panelist would not accede to the Respondent's request for anonymity.  There is no doubt that there is power to redact the name of a party from the decision of a panel.  This panelist has made several such orders.  It is usually done in cases where someone has registered a domain name but has misleadingly given the name of a third party as the holder of the domain name in question, whereas the person named has had nothing to do with the registration or use of the domain name.  The domain name has then been used for a fraud, but when the name of the innocent bystander is exposed in the panel's decision, it would naturally be assumed that he or she was the wrongdoer.  To avoid this slur, a panel will, in an appropriate case, redact the innocent bystander's name and anything else that might identify him or her, such as an address.  But there must be at least a demonstrated reason for doing so.  That is because one of the bases of the UDRP regime is that it is public and that the public have a right to be told what is happening in the domain name world.  This is because the Internet is now one of the major forms of human communication and the public is entitled to know how it is being used.

There is nothing particularly magical about that approach.  The UDRP process is governed by its Policy and Rules and all domain name holders are contractually bound by them from the time they acquire their domain name.  The Policy itself, at paragraph 4 (j), provides that "All decisions under this Policy will be published in full over the Internet, except where an Administrative Panel determines in an exceptional case to redact portions of its decision."

Those who drafted the UDRP must have thought this power was significant, as it is included in the Policy itself and then in effect repeated in Rule 16 (b) which says that "Except if the Panel determines otherwise (see Paragraph 4 (j) of the Policy), the Provider shall publish the full decision and the date of its implementation on a publicly accessible web site." They must also have intended that the principal question for the Panel is whether there are circumstances that justify departing from the default position of full disclosure.  So, the question of whether or not to redact part of a decision such as the name of a party must be exercised judicially and in the light of all the surrounding circumstances and having regard to the purpose of the provision and general notions of justice and fair play.  Thus, in the present case, the threshold question must be:  is this an exceptional case? The answer is no, it is not exceptional.  No case has been made out to show that it is exceptional, and it does not seem to be so.  Nor has any other case been made out to justify departing from the obviously intended requirement of publication of "the full decision".  It should also be remembered that beside the understandable interest of the Respondent in privacy, there is also a significant interest in the public in knowing what is going on in the domain name world and who is doing it.

Accordingly, putting all of the above considerations in balance, this panelist finds no case has been made out for redacting the name or any other information that could identify the Respondent.

**Identical or Confusingly Similar**
**The Complainant's trademarks**

On the evidence, the Complainant has shown, first, that it has two registered trademarks for LAMBO, one issued by the European Union Intellectual Property Office (EUIPO) and a Swiss one.  They are virtually the same.  The European trademark is registered with respect to "Vehicles", among other classifications, and it clearly applies in the present case.  The Swiss trademark also applies to "Vehicles." It is, however, notable that the Complainant does not have a registered trademark for LAMBO in the United States, where the Respondent is domiciled.  Nor did it have one when the Respondent registered the domain name, so how he was expected to know that it had two European trademarks for LAMBO is something of a mystery, especially when the LAMBO trademark in the country where he lived had been abandoned before he decided to buy the domain name.

It should also be added for completeness that there is no evidence that the LAMBO trademark is used by the Complainant or has ever been used by it to sell its motor vehicles or anything else.  In the Complainant's family of trademarks, it is clearly the orphan child, not registered in the Complainant's biggest market and, although registered in Europe, not used there.  And so indifferent is the Complainant to its orphan child that it abandoned the trademark and has not sought to replace it with a new trademark for LAMBO.

The Complainant also has several registered trademarks for LAMBORGHINI, not surprisingly, because that is the name of its well-known and expensive motor car.  Nor is it surprising that for the same reason, the Complainant has many more trademarks for LAMBORGHINI than it has for LAMBO.  One of the US trademarks the Complainant relies on is No. 74019105 for LAMBORGHINI with respect to "Automobiles and their Structural Parts" so it clearly covers the Complainant's Lamborghini motor cars.  As well as the single trademark for LAMBORGHINI that the Complainant relies on, it also has the US registered trademark for LAMBORGHINI No. 1622382 with respect to "vehicles", and the registered trademark No. 1622382 for "cars".  It is clear therefore that the Complainant wants its cars to be known as LAMBORGHINI and not LAMBO in which it seems to be completely indifferent.

That view is re-enforced by the Complainant's conduct since the new regime of generic top level domains was introduced.  The Trademark Clearing House was established to deal with the very situation that has arisen in this case, namely how to alert the commercial world to the fact that companies like the present

Complainant own verified trademarks that should not be compromised by new domain names that trespass on them.  As the ICANN website is in evidence, it is appropriate to look at ICANN's Trademark Clearing House to see how the Complainant has handled its trademarks.  The Complainant has registered LAMBORGHINI but not LAMBO as its trademark[3].  A search for LAMBO produces the result:"Your search yielded no results."[4] It is clear that the Complainant has little if any interest in the word "lambo" when it comes to registering domain names.  There is, for instance, no warning or embargo when one registers domain names like <lambo.auto>, <lambo.car> or <lambo.cars>.

Moreover, the Complaint does not reveal that the Complainant once had a USPTO trademark for LAMBO in the United States, the country where the Respondent was and is domiciled, but it abandoned that trademark on August 11, 2017, five months before the Respondent acquired the disputed domain name.  This shows a distinct lack of enthusiasm on the part of the Complainant in having its prestige motor vehicles identified as LAMBO, which is hardly surprising.

Moreover, the evidence does not show that the Complainant tried to undo this state of affairs or rectify it by registering another trademark for LAMBO in the United States.  Thus, when the Respondent bought the domain name[5], the Complainant had abandoned its LAMBO trademark in the United States where the Respondent lived and put no other LAMBO trademark in its place.  As noted, the United States is the largest market for the Lamborghini[6] although the Complainant allowed its LAMBO trademark in the USA to expire and for no reason that has been given.  In other words, it sells more vehicles in a market *without* the LAMBO trademark, namely the US, than it does in markets *with* the LAMBO trademark.  No explanation has been given as to how or why its trademark for LAMBO came to expire.  Whatever this proceeding is about, it is therefore not about the need or desire of the Complainant to recover a domain name that is transgressing on its LAMBO trademark because the Complainant is obviously completely indifferent to the use of its LAMBO trademark, even in its largest market.

**Identical or Confusingly Similar**

The Complainant must then show that the domain name is identical to one or other of its trademarks.

The Complainant argues that the domain name is identical to the LAMBO trademark.  It clearly is.

The domain name is not identical to the LAMBORGHINI mark and the Complainant does not argue that it is.  It cannot be identical because it consists of different letters from the trademark and therefore does not sound or look the same as LAMBORGHINI.

But is it nevertheless confusingly similar to LAMBORGHINI? The Complainant argues that it is.  This panelist is of the view that the domain name is not confusingly similar to the LAMBORGHINI trademark.  It is similar, as there are enough letters in the domain name that are also in the trademark, and in the same order, to make it similar to the trademark.  But is it confusingly similar?

There are three points here that must be understood.  First, the test is whether Internet users in general would probably find them confusingly similar, not whether that conclusion is possible.  The test is the balance of probabilities, as it is in all such proceedings and the Panel should not depart from that test.
Secondly, it is possible that some users would find them confusingly similar and it would be naïve to deny that this is so.  No doubt there are some people who use the word "lambo" as a slang word or common patois to refer to LAMBORGHINI, in the same way that they might use the expression "Rolls" to refer to a Rolls-Royce, or "merc" to refer to a Mercedes-Benz.  That does not mean that such a belief is widespread or

---

[3] https://www.trademark-clearinghouse.com/search/node/lamborghini%20language%3Aen

[4] https://www.trademark-clearinghouse.com/search/node/LAMBO%20language%3Aen

[5] On 28 February 2018

[6] https://www.best-selling-cars.com/brands/2021-full-year-global-lamborghini-worldwide-sale-by-model-and-country/and page 13/24 of Complainant's Annex 04.

that it is popular or so common that a panel should regard it as the way Internet users in general see the word "lambo".  The Complainant itself certainly does not encourage them to do so.

Thirdly, whether Internet users in general would probably find them confusingly similar is a far more doubtful proposition.  This panelist is not persuaded that they would.  The main reason why he doubts this is because there is a lot of evidence that the word "lambo" is recognized as standing for goods and services that have nothing to do with the Lamborghini motor car and that it is actually used in those other uses of the word to mean any of that variety of other goods and services.

This can be seen from the original owner whose name was Lambert and it is entirely legitimate that the name would appeal to anyone of that name or anyone who had the name "Lambo" as a nickname or who is engaged in any activity that could attract that word.  The Respondent was "first come, first served" and is entitled to the benefit of acquiring the name, particularly if there is a legitimate use to which it could be put, as is so in the present case.

The evidence shows that the word can legitimately refer to and is actually being used in the following proven uses, none of them being Lamborghini:  it is used as a popular nickname, the name of a film[7], a cartoon character [8], an Australian wool product[9], a word derived from the verb lamber[10], the US footballer Josh Lambo[11], a model[12], a given name[13], a nickname[14], lambswool products[15], a variation of lamber[16], a Greek recorded album[17], the brand name of an allegedly rejuvenating cream[18], Lambo vegetarian capsules[19], and a collection of cult figures[20] as well as the use by the original registrant John Lambert which may well attract others with the same name.  There is also a current USPTO trademark registered on May 28, 2019 for use of the word for electric razors and a USPTO trademark application filed as recently as April 21, 2021 to use the name for teleconferencing.  Thus, there is plenty of evidence to show that the word is used for a variety of goods and services that do not involve Lamborghini at all.

Part of the difficulty of being certain on this issue is that some Internet users would probably see the word as being pronounced as "lamb-o", meaning that it is derived from the word "lamb".  Clearly some of the registrants who have registered "lambo" as a trademark or domain name interpret the word in that way and not as an abbreviation or slang word to invoke the notion of the Lamborghini motor vehicle.

In any event, and this is the main factor that has persuaded the present panelist to his conclusion, the Complainant could have at least attempted to prove its proposition by evidence on which the Panel could act, instead of the assertions made by the Complainant's lawyers.  Every day of the week, trademark owners in litigation prove the association of names by evidence, properly tested and scrutinized, of how the relevant public see the name of a particular brand.  This is done by focus groups and survey evidence and is often accepted by the courts.  But the Complainant has made no attempt to assemble such evidence in the present case.

---

[7] https://www.imdb.com/title/tt7496048/

[8] https://reborn.fandom.com/wiki/Lambo

[9] https://www.tamboteddies.com.au/product/tambo-lambo/

[10] https://en.wiktionary.org/wiki/lambo

[11] *https://www.cbssports.com* › nfl › players › playerpage

[12] https://www.deviantart.com/1shinigami1/art/MMD-model-DL-Lambo-Katekyo-Hitma-Reborn-843592965

[13] https://au.linkedin.com/in/lambo-kanagaratnam-419b346

[14] https://liquipedia.net/starcraft2/Lambo

[15] https://www.littlelambo.com/

[16] https://www.thefreedictionary.com/Lambo

[17] https://www.definitions.net/definition/LAMBO

[18] https://oceanking.com.au/product/lambo-sheep-placenta-cream-24-hour-time-release/

[19] https://labo-lambo.be/

[20] https://opensea.io/collection/thelonelyfroglamboclub

Taking all of these facts into account, it therefore seems to this panellist that the Complainant has established that the domain name is identical to the LAMBO trademark, although the Complainant has no interest in the mark and does not use it. It is therefore inappropriate to order transfer of a domain name to a party that does not have a trademark that it actually uses to identify and protect its goods and services.

The Complainant, however, has not established that the domain name is either identical or confusingly similar to the LAMBORGHINI trademark, so as to show a breach by the Respondent of that element.

**Rights and Legitimate Interests**

The Panel should not find that the Respondent has no right or legitimate interest in the domain name.

The case against him seems to be that he has bought a domain name and has put it up for sale at a high price. None of that is a ground for denying his right to the domain name. He has a very clear right to the domain name and a legitimate interest in owning it. In substance, he acquired the domain name legitimately by buying it, which the Complainant could have done but did not.

The Respondent has kept the domain name and has used it only to develop it for later use until it is sold. In particular, he has certainly done nothing at all that would negate his right to acquire and own the domain name, for he has not pretended he is the trademark owner, passed himself off as such, mislead any Internet users, sold counterfeit goods, engaged in typosquatting to confuse the market, gone off on a phishing expedition or used the domain name for pay-per-click income or in any other way improperly.

As has been seen, the word "lambo" admits of many meanings and uses, some of them generic and /or as a common word used for a variety of goods and services other than the Lamborghini. The Respondent therefore has a substantial right to register any such word as a domain name and to take advantage of whatever he or anyone else sees in the name, at whatever price he can obtain, provided of course that he does not pretend to be the Complainant, copy its name or trademark or engage in any other impropriety, none of which the Respondent has done.

There being many such legitimate uses of the word "lambo", the Respondent or anyone who got in before him clearly has the right to acquire such a domain name simply because it can be used for so many different, and legitimate, purposes. Such a person also has a legitimate interest in retaining it and making it available for that purpose at whatever price can be obtained.

In those circumstances the Respondent had a right to acquire the domain name and he has a legitimate interest in keeping it for sale.

**The offer to sell the domain name**

The Complainant has become agitated at the fact that the Respondent has put his domain name up for sale and at the high price he has been asking. The domain name is the property of the Respondent and his ownership should be respected. He has every right to sell it, at the price he is asking and at the price he thinks he can obtain. Panelists have frequently declined the opportunity to enter into the market and make judgments on what a domain name is worth and that position should be maintained. It is certainly not for the Complainant's counsel to submit, as it does, that the price being asked is excessive or unreasonable and there is no authority for taking the view that such an intrusion is legitimate. The Respondent has not tried to sell the domain name to the Complainant or a competitor, but to the public at large, which he and every other domain name owner has the right to do. He is therefore not in breach of the UDRP Policy.

**No active website**

The Complainant is also wrong in suggesting that there is anything untoward in the domain name not resolving to an active website. The Complainant has submitted that Internet users will expect a website of

the Complainant under the disputed domain name because the domain name is the well-known and popular abbreviation of the Lamborghini website. That argument has no merit and is not borne out by the evidence. Indeed, the Respondent has given evidence that he is a developer of domain names and that his practice is to develop domain names and then sell them, which he is entitled to do and that this is what he has been engaged on with respect to the domain name in the present case. Again, that is wholly legitimate.

It would be a very bold decision to declare in effect that a person who has bought a domain name and not engaged in any conduct that has ever been seen as a breach of the UDRP, should be deprived of its own property simply for retaining a domain name.

In particular, the Respondent says that he has a history of "engaging, outsourcing and contracting work to freelancers…" and that some of his work is "in an ongoing development stage pre-launch". He has tendered an exhibit showing actual work having been done on such projects. That evidence therefore tends to suggest that the Respondent is truthful in stating that his plan is to develop the domain name for sale, which is itself legitimate. Moreover, that point is supported by the fact that the evidence is that the Respondent has "an established record as a builder and developer of domain names and …( has had) success as a domain name investor too".

The Respondent has certified that all of the information he has provided is correct and the Panel should accept his evidence as such.

The Complainant appears to have has contributed nothing from its own knowledge. Its submission therefore is of limited value.

**Commonly known**

This panelist is also concerned about the way in which the major defence of the Respondent has been dealt with. The Respondent submitted that he has "an established online footprint and is known in communities and in a personal capacity by" the name Lambo, the same as the domain name. In other words, he raises the defence that he is commonly known by the domain name, which is a complete defence to the second element of the UDRP and hence to the entire claim, so it is important.

In support, the Respondent has tendered in evidence some testimonials[21] from acquaintances to the effect that he was known as Lambo, which go some way, but only some way, to verifying his position and although they are limited in number, he has certified that his submission is "complete and accurate." His evidence was not entirely clear, as it did not have the professional gloss that was apparent from the Complainant's case that was clearly prepared by a lawyer, which puts the Respondent at an obvious disadvantage. It therefore should be remembered that the Respondent is not represented by counsel and is opposed by obviously significant professional representation. There is an obligation on panels under Rule 10 to "ensure" that the parties are treated with equality and that each party has a fair opportunity to present its case, and this must be particularly so when a party is not represented.

The Complainant replied with an unsigned supplementary submission from its lawyer that asserted that "The Respondent is not commonly known by "lambo"". How the Complainant's counsel would know this, one way or the other, or what was the basis of its assertion, was not disclosed and is a completely unsupported by any evidence. It then took umbrage at the fact that it showed only that the name had been used as a nickname "in just three (rather unknown) Internet communities…". Three witnesses seemed to the Complainant not to be enough and it presumably wanted more.

There was therefore a direct dispute on the evidence, generated mainly by the Complainant. On the other hand, the Respondent had said clearly enough and with some, although limited evidence in support, that he was known as Lambo, probably pronounced as "Lam-o".

---

[21] Annex 8 to the Response

It seemed therefore to this panelist that in the state of the evidence as it was, it was appropriate to issue a procedural order to enable the Panel to test the assertions of the Respondent and elicit in the Panel's own way and under its own supervision, whatever evidence there was to show, one way or the other, whether the Respondent was commonly known as Lambo.

It also seemed to this panelist that to give equal opportunity to both parties it would be probative to invite the Respondent to clarify some of his evidence. If this were not done, there was a real risk that the parties would, in the case of the Respondent, not be treated equally and would not have a fair opportunity to present its case. The majority of the Panel was not able to see its way clear to agree to this proposal which is a serious barrier to finding that the Respondent has "**no**" rights or legitimate interest in the domain name, when clearly he had some rights and may well have more. He may have some rights that could come to light only as a result of the procedural order.

The result is that the evidence has been left in an unsatisfactory state which is prejudicial to the Respondent but could so easily be rectified. It also potentially runs foul of the duty of the panel to ensure that the parties are treated equally and that each party is given a fair opportunity to present its case. The Respondent seems to this panelist to have been denied that opportunity, which compromises his due process rights.

This panelist would therefore not agree to order the transfer of the domain name to the Complainant while that issue remains unresolved and yet could be resolved by a procedural order that would clarify and expand the evidence.

That not being done, this panelist is unable to find that the Respondent has no rights or legitimate interests in the disputed domain name.

**Bad Faith**
**Registration in bad faith**

The Complainant must first show that the Respondent registered the domain name in bad faith. It has not shown that the Respondent did this or anything remotely like it.

The Complainant claims, first, that by buying the domain name the Respondent broke paragraph 4(b)(i) because he acquired it primarily to sell it "**to a competitor of Complainant**" (emphasis added). It does not allege that the Respondent acquired the domain name to sell it to the Complainant itself and it would be a very bold complainant who would claim that intention when there is no evidence to that effect. The Complainant therefore seems to have acknowledged that it is not arguing that the domain name was bought with the intention of selling it to the Complainant.

However, the Complainant has alleged that the Respondent bought the domain name to sell it to a competitor of Lamborghini. The Panel should reject this allegation. Why would the Respondent buy a domain name which the Complainant has submitted in effect means "Lamborghini", but intending to sell it not to Lamborghini but to a buyer that does *not* sell Lamborghini?

Apart from being non-sensical, there is no evidence to support this allegation. There is also no clue as to who such an eccentric purchaser might be who would want to buy a name carrying not its own brand but the brand of a rival.

Secondly, the evidence and the only evidence, is that the Respondent advertised the domain name for sale, not to Lamborghini, or to a competitor of Lamborghini, but to the world at large on the general market. That is not prohibited and is not proscribed by any provision of the UDRP. Nor does it show that the Respondent intended to sell it either to Lamborghini or to a competitor. If merely offering a domain name for sale to the public is held to be bad faith, virtually all sales of domain names would be prohibited, which was clearly not intended.

Accordingly, the Complainant has not shown that the Respondent wanted to sell the domain name to the Complainant or to one of its competitors or that it tried to do so.  It has already been conceded that some users will understand <lambo.com> as invoking.

Thirdly, the Complainant says that registering the domain name is in bad faith because it is identical or confusingly similar to a "famous or widely known trademark." If the Complainant means that the trademark is LAMBO, then that trademark is not by any stretch of the imagination either famous or well-known and many users clearly use it when they are specifically not referring to the Lamborghini motor vehicle.  If the Complainant means LAMBORGHINI, the domain name is certainly not identical to that trademark and, as already shown, the public uses the word "lambo" to describe generic objects and a wide variety of uses that refer to all sorts of goods and services that have nothing to do with the Lamborghini motor vehicle.

Fourthly, the Complainant says that the Respondent knew or should have known of the "use" of its "trademarks.  Again, if the Complainant means LAMBO, the Respondent could only have been aware in the United States, not of the use of that trademark, but of its non-use and the indifference that the Complainant had to its use.  If the Complainant means the LAMBORGHNI, there is no evidence that the public in general would probably see "lambo" as necessarily referring to Lamborghini motor vehicles.  But there is evidence that those involved in the many uses of the word "lambo" as a name or description of an object would probably see it within those meanings and not as referring to the Lamborghini motor vehicle.

Fifthly, the Complainant relies on the proposition that "(t)here is no conceivable legitimate interest for the use of the disputed domain name by the Respondent or the underlying registrant." That is not so, it has been shown that there is a wide variety of actual legitimate uses that are made of the domain name which have no connection at all with Lamborghini.  Offering a domain name with such wide legitimate potential to a wide potential market can hardly be described as being in bad faith.

The Complainant has thus not shown that the domain name was registered in bad faith.

**Use in bad faith**

The Complainant's case is strangely silent on the issue of use in bad faith which it must prove.  Offering a domain name for sale, at any price, is not in bad faith when the domain name may be of interest and value to a wide variety of potential purchasers within any of its many meanings of which evidence has been given.  That is the only use in question, as the Respondent has not used the domain name for anything else.  Putting the domain name up for sale is the only use to which he has put the domain name and that use is entirely lawful, no matter what the price the seller asks.

The Complainant has thus not made out the case that the domain name was registered and/or used in bad faith.

The Complaint should be dismissed for that reason in addition to the other reasons already given.


*/The Honorable Neil Anthony Brown QC/*
**The Honorable Neil Anthony Brown QC**
Dissenting Panelist
Date:  August 2, 2022