Exhibit T

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

_____

Richard Blair,                    )
                                  )
            Plaintiff,            )   2:22-cv-01439-ROS
v.                                )
                                  )   Phoenix, Arizona
Automobili Lamborghini S.p.A.,    )   April 9, 2024
                                  )   11:03 a.m.
            Defendants.           )
_____ )


**BEFORE:  THE HONORABLE ROSLYN O. SILVER, SENIOR JUDGE**

**REPORTER'S TRANSCRIPT OF PROCEEDINGS**


**<u>TELEPHONIC INTERIM STATUS CONFERENCE</u>**


Official Court Reporter:
Teri Veres, RMR, CRR
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 38
Phoenix, Arizona 85003-2151
(602) 322-7251


Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

```
 1                    A P P E A R A N C E S

 2                            ***

 3   ON BEHALF OF PLAINTIFF:

 4        LEWIS & LIN, LLC
          BY:  Brett Evan Lewis, Esq.
 5             Shuyu Want, Esq.
          77 Sands Street, 6th Floor
 6        Brooklyn, New York 11201

 7
     ON BEHALF OF DEFENDANT:
 8
          STERNE KESSLER GOLDSTEIN & FOX, PLLC
 9        BY:  Nicolas J. Nowak, Esq.
          110 K Street, 10th Floor
10        Washington, D.C.  20005

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**P R O C E E D I N G S**

1

2  *(Proceedings begin at 11:03 a.m.)*

3          COURTROOM DEPUTY:  We're on the record in civil case

4  No. CV22-1439, Richard Blair versus Automobili Lamborghini

5  S.p.A. set before the Court for an intern status conference.

6          Counsel, please announce your appearances beginning

7  with plaintiff.

8          MR. LEWIS:  This is Brett Lewis from Lewis & Lin,

9  LLC, for plaintiff Richard Blair, Your Honor, and also with me

10  is...

11          MS. WANG:  This is Shuyu Wang of Lewis & Lin also

12  for plaintiff Richard Blair.

13          THE COURT:  Thank you.

14          MR. NOWAK:  And -- oop, I'm sorry.

15          THE COURT:  Okay, defendant?

16          MR. NOWAK:  Nicholas Nowak with Sterne, Kessler,

17  Goldstein & Fox for the defendant Lamborghini.

18          THE COURT:  All right, counsel.  I received your --

19  your memorandum and the status report for the purpose of this

20  hearing.  Let me give you a little background.

21          I'm not sure that any of you have been before me,

22  but I hold these conferences in advance of filing -- any

23  filing of a Motion for Summary Judgment for us to discuss

24  whether it's appropriate for a motion to be filed and, if not,

25  then one shouldn't be filed.  If it is appropriate to file it,

1   then I welcome your filing it.

2        I don't preclude anyone from filing summary

3   judgment, but after our conversation if it appears to me --

4   and I hopefully have persuaded you -- that a summary judgment

5   is not appropriate, then it would be well deserved not to file

6   a Motion for Summary Judgment because then it would appear to

7   be a not well-received motion by the Court.

8        So we have a number of things to decide here.  I'm

9   looking for evidence since it is the defendants who wish to

10  file a summary judgement motion, and that would be based on

11  filing a summary judgment motion in your favor and against the

12  plaintiff on his claims and then a summary judgment motion

13  based on your claims.

14       So this is what I understand this to be is that it's

15  really, more than anything else, a question of whether or not

16  there is cybersquatting; and I understand the facts to be

17  this, and please correct me if I'm wrong:  That in about 2000

18  that the plaintiff registered the name Lambo and has held that

19  registration to today, and in about 2005 Lamborghini filed a

20  -- or registered the name Lambo with the World Intellectual, I

21  think, Property Organization, and I may have that wrong.

22  WIPO, I believe.

23       And so the dispute is then -- the plaintiff claims

24  that the -- although the defendant does also have a trademark

25  for Lamborghini and that has been held for over 30 years, as I

```
 1    understand it, and it is certainly a well-known trademark for
 2    a luxury car.
 3              So as I -- as I understand it, the question is
 4    whether Lamborghini can show the right to Lambo, that is, the
 5    registered name -- registered name is confusingly similar or
 6    a well-known nickname for Lamborghini, and that has to be
 7    established as a matter of law.
 8              So maybe it can be.  Maybe there's case law that
 9    would persuade me that there are no factual issues, but I
10    would like to hear from defense counsel to tell me what you
11    have to show that.
12              MR. NOWAK:  Well, Your Honor, we do have case that
13    for that particular point.  This is Nick Nowak again for --
14    for the defendants.
15              For that particular point, you're right, we think it
16    comes down to it's a question of law and you look at -- under
17    the ACPA, confusingly similar is actually a narrower
18    determination than under other trademark law.
19              So it's a narrower determination, and if you look at
20    the trademark and you look at the domain and domain does
21    nothing more than add or subtract some letters off of the
22    trademark.  So then you're confusingly similar, particularly
23    in a case like this, as you've already pointed out, Your
24    Honor, where the trademark is famous, like the Lamborghini
25    mark.
```

1          THE COURT:  Okay.  So when you say you have case law

2     that establishes it, as I said, you know, this is an issue --

3     are you starting with evidence to start?

4          So, in other words, what do you have to show that

5     it's confusingly similar to the well-known Lamborghini

6     protected name?

7          MR. NOWAK:  Your Honor, the law is just that you

8     look at and make a comparison.  So you look -- you look at the

9     -- at the -- at the trademark.  You look at the domain name

10    and if they're close enough, in your estimation, with regard

11    to -- particularly with regarding case law and the case law --

12    once you take a look at the case law, Your Honor -- and we'll

13    obviously submit that with our briefing.

14         If you look at case law, you don't even have to be

15    that close, Your Honor, but here we think it's a pretty close

16    case.  All the domain name does is lop off the end of

17    Lamborghini and it's Lambo, and so that in and of itself makes

18    it similarly confusing and therefore -- and that's -- that's

19    really -- we don't even need to go farther than that, Your

20    Honor.

21         THE COURT:  So, you know, I have to say to both and,

22    in particular, counsel Mr. Lewis, that the name Lambo is often

23    thought -- I'm not going to say as a matter of law -- as

24    pertaining to Lamborghini and not anything else.

25         As a matter of fact, as I understand the facts here,

 1   I believe Mr. Blair is a -- he claims that this is a moniker

 2   he uses on-line, but I don't know what that means; and he's

 3   never attempted to sell it, but he has 150 of these registered

 4   names.

 5          So what does Mr. Blair -- what does he mean,

 6   Mr. Nowak or Ms. Watt, by a "moniker" and why would that

 7   protect him?  I mean, he's --

 8          MR. NOWAK:  Your Honor, did you --

 9          THE COURT:  Am I correct that there's something of

10   150 different known domain names he's registered, and are any

11   of them being used by him for business purposes?

12          MR. LEWIS:  Your Honor, did you intend -- this is

13   Mr. Lewis.  Did you intend that question for the plaintiff to

14   explain?

15          THE COURT:  No, I'm asking the defendant.

16          MR. LEWIS:  Okay.  Fair enough, I apologize.

17          MR. NOWAK:  Yeah, so -- so let me back up.  This is

18   Nick Nowak again.  Let me back up, Your Honor, a little bit.

19          So -- so under the ACPA, for Lamborghini to prevail,

20   right, under the ACPA we have to show -- we have to show,

21   essentially, three things.

22          One -- and you may know this, but I just want to

23   make sure that we're all on the same page.

24          We have to show, one, that the domain name was owner

25   registered, trafficked in or used in the disputed domain.

1  That's the first element that we have to prove.

2          We don't think there's any question with regard to

3  that.  He's clearly -- he's clearly registered -- Mr. Blair

4  has registered the domain.  We've already gone through that

5  particular exercise with our Motion to Dismiss.  So that's

6  established.

7          The second thing we have to establish is that the

8  domain name is confusingly similar.  In this case it's not

9  identical, but it's confusingly similar to a protected mark.

10  That's what we're -- obviously, we were just talking about,

11  right, whether Lamborghini, the protected mark, is -- well, or

12  whether Lambo is confusingly similar to the protected mark

13  Lamborghini.

14          We think that it is, and that's really just the

15  question of law, Your Honor, and we don't think it's even a

16  close question in this case that it is, in fact, confusingly

17  similar.

18          The third element that we then have to show, Your

19  Honor, is that the domain name owner acted in bad faith with

20  intent to profit.

21          Now, there are a whole bunch of factors under that

22  the Court and fact finders look at --

23          THE COURT:  Yeah, I am aware --

24          MR. NOWAK:  -- and so --

25          THE COURT:  -- of a whole list of those factors --

```
 1              MR. NOWAK:  Right.
 2              THE COURT:  -- that I am aware of.
 3         So where are you going with all of this?
 4              MR. NOWAK:  Well, so that one -- that factor -- that
 5    issue of whether it's a moniker or a name that Mr. Blair goes
 6    by goes to whether or not there's bad faith.  That's one of
 7    the sort of sub element that courts can look at to determine
 8    whether or not there's been bad faith.
 9              THE COURT:  Okay.  Let me --
10              MR. NOWAK:  So that -- that is one --
11              THE COURT:  Let me explore that for a minute.
12         So the word "moniker," does that have a particular
13    use or understanding in the context of this type of case?
14         Is it -- is it protected somehow if somebody --
15              MR. NOWAK:  Not that I'm aware --
16              THE COURT:  Go ahead.
17              MR. NOWAK:  So the -- so the element as it's spelled
18    out under the ACPA, that I believe this would fall under said
19    that to the extent the domain name consists of the legal name
20    of the person who owns the domain or a name that is otherwise
21    commonly used to identify that person.
22         So it's clearly not Mr. Blair's legal name.  I don't
23    think Mr. Blair's asserting that.  He may be asserting that it
24    is a -- sort of a -- something that people call him at some
25    point in time.  We -- we have -- we don't agree that that's
```

1    the case.  We don't agree that the way he alleges to use the

2    name Lambo for himself meets the element under the bad faith

3    analysis --

4              THE COURT:  Okay, let me stop --

5              MR. NOWAK:  -- to win the day for him.

6              THE COURT:  You're helping me, Mr. Nowak.  I did not

7    understand, as I mentioned, what a "moniker" is.

8              So a moniker can be a name that he goes by.  In

9    other words, people call him Mr. Lambo or he uses it as a

10   nickname, I take it, right?

11             Is there a definition of a "moniker"?

12             MR. NOWAK:  That's what he -- that's what he

13   alleged.

14             THE COURT:  Okay.

15             MR. NOWAK:  It's not my definition so I -- I don't

16   know what --

17             THE COURT:  But the law is -- and that's how he's

18   attempting to get by your argument that this is being used in

19   bad faith, correct, Mr. Nowak?

20             MR. NOWAK:  That's right.  That's right, Your Honor.

21   Yes, as far as I understand -- as far as I understand it.

22             We actually don't agree that he's even known by that

23   name, and we don't think that that's -- we don't think that

24   that's -- we don't think that that's an undisputed fact.  We

25   obviously dispute that fact, but I will let you know, Your

1    Honor, that even if it's an undisputed fact, I think the

2    factors still weigh in favor of a finding of bad faith even if

3    you were to assume that he sort of wins under that particular

4    element or that he, in fact, goes by the name Lambo even

5    though we dispute -- we dispute that.

6            I will point out, too, Your Honor, that allegedly he

7    started going by Lambo to some degree only after he acquired

8    the domain name --

9            THE COURT:  Okay.  So --

10           MR. NOWAK:  -- which we think also has some bearing

11   on the inquiry.

12           THE COURT:  Okay.  You obviously have attempted to

13   settle this case.  So each of you know what the -- what your

14   counterpart's position is, but let me turn back to the central

15   first issue -- I should say the preliminary issue, which is

16   whether or not it is confusingly similar, and you have -- I

17   think you said in your -- and I'm looking to see that there's

18   evidence to show that it's confusingly similar and that if

19   that evidence, I ask you first, is admissible, what's the

20   nature of that evidence and could I make a finding?  'Cuz

21   that's what you want me to do before I get to the issue of bad

22   faith, correct?

23           MR. NOWAK:  That's right -- that's right, your

24   Honor, you'd have to find that it is, in fact, confusingly

25   similar and courts do that -- do that routinely on summary

1   judgment, find that -- find that the names are confusingly

2   similar to trademarks on summary judgment and it's -- and we

3   don't -- we don't -- honestly, Your Honor, we can't -- we have

4   evidence -- I mean, you have -- you can look -- you can look

5   on-line -- you can do a Google search and -- for "Lambo" and

6   all of the -- all of the -- all of the -- the results that

7   turn up are all related to Lamborghini the auto maker.

8           THE COURT:  Okay.

9           MR. NOWAK:  But we don't even think that we have to

10  show that evidence, Your Honor.  It's really a legal

11  determination.  It's quite straightforward under the case law,

12  and I'll point out to Your Honor that neither party here has

13  requested a jury trial.  So Your Honor would be making the

14  determination in any event --

15          THE COURT:  Okay.

16          MR. NOWAK:  -- if we got there.

17          THE COURT:  That's interesting.  Okay, but would I

18  need to hear evidence?  Would I need to have testimony?

19          MR. NOWAK:  No, Your Honor, we -- we don't think so.

20  All you need to know -- we have the -- we have the

21  registration and we submit a declaration with -- you know,

22  with the registration and that's pretty much all you need.

23          You need the registration.  We have case law -- we

24  have other case law that's already found that Lamborghini is a

25  famous and well-known trademark, and then you make the

```
 1   determination that it's confusingly similar or not.

 2           THE COURT:  Okay.  So what would you offer --

 3   because you've used the word "evidence," and I will tell you I

 4   have definitely heard the term "Lambo" with respect to

 5   Lamborghini.

 6           So what would you argue to me is that it is

 7   confusingly similar?  You have to have something to persuade

 8   me that it's not just that I have heard it before, but that it

 9   is confusingly similar.  What do you have?

10           MR. NOWAK:  Well, we have Google results that we

11   could submit.  We have -- and that's generally -- that's the

12   extent of our evidence, Your Honor, other than the fact that

13   the Lamborghini mark because it's -- because of its status as

14   a famous mark is -- is given preferential treatment over other

15   marks that aren't -- that aren't so famous, Your Honor; and,

16   in fact, all you then have to do under the ACPA -- the inquiry

17   is very narrow.

18           All you have to do is look to see whether the famous

19   mark as it's in the domain is identical or confusingly

20   similar.  Again, it can be confusingly similar only if it's

21   added some letters or taken some letters off of the trademark.

22           For instance, there's case law, Your Honor -- I

23   think -- this is sort of opposite of what we have, but there's

24   case law that says, for instance, the domain name

25   Trumpdubai.com is confusingly similar to Trump, the trademark.
```

1          So that's sort of the opposite situation we have.

2    We have a situation in which letters have been lopped off the

3    end of the trademark --

4          THE COURT:  Okay.

5          MR. NOWAK:  -- but it's similar in the sense that

6    the domains don't have to be identical to be confusingly

7    similar, obviously.

8          THE COURT:  Okay.  So far they don't have to be

9    identical.  I agree with that, and you said that you would

10   offer something from Google.  I presume that that would be

11   admissible.

12         In other words, there wouldn't be issues as to

13   whether or not foundation could be laid, but you would offer

14   information or evidence that comes from Google that shows that

15   the name Lambo or the word "Lambo" is often, if not very

16   often, associated with Lamborghini?

17         Is that what I understand you to say?

18         MR. NOWAK:  You're right.  You're right, Your Honor.

19         I'd like to point out one other piece here that

20   really -- really, if you look at the case law, the case law --

21   the focus of the case law is really whether there's been bad

22   faith here.

23         I mean, what is confusingly similar, we think it is,

24   but really when you look at -- under the -- in the case law --

25   we'll cite case law that says essentially that the inquiry

 1    really isn't -- part of the inquiry is whether it's

 2    confusingly similar, but the over-arching inquiry under the

 3    ACPA is really the bad faith inquiry, and we think there's

 4    very strong evidence on -- overall with regard to bad faith

 5    here as well and --

 6              THE COURT:  Yeah, I -- we're -- Mr. Nowak, we're

 7    going to get there in a minute.  I just want to get across the

 8    first line because we're dealing with summary judgment here,

 9    and I presume you'll have plenty of cases that are similar

10    that are going to -- where the Court took some evidence and

11    they were so substantially similar and I have -- I'm

12    understanding you to mean -- well, first of all, Lamborghini

13    has been a well-known -- well, it's a trademark for 30 years

14    and that the name Lambo has been used commonly in connection

15    with Lamborghini and not anything else.

16              Is that what you're saying?

17              I don't know of anything -- any other association

18    with the name Lambo other than Lamborghini, and then I'll ask

19    the plaintiffs in a moment.  Is that what you're going to say?

20              MR. NOWAK:  That -- that is -- this is what we

21    are --

22              THE COURT:  Yeah, I don't -- Mr. Lewis, what other

23    product or person, you know, place, like a noun, what other --

24    what other individual has been ever associated with the name

25    Lambo or product or something?

1          MR. LEWIS:  Your Honor, we anticipated your question

2     about 30 seconds to a minute ago.  So we had actually listed

3     these somewhere, I believe in either some of our production or

4     in our -- it might have been in prior papers that were filed

5     in connection with the EDRP, but there are a number.

6          It's not an exclusive association with Lamborghini.

7     It may be that Lamborghini is more widely referred to by the

8     nickname Lambo than some of the other uses, but there most

9     certainly are other uses.

10         THE COURT:  Well, give me an example.  That's what

11    I'm asking for.  I've never heard any before.

12         MR. LEWIS:  I understand --

13         THE COURT:  And we can talk about this just because,

14    as Mr. Nowak said, I'm going to be the finder of fact on this.

15    So, you know, it seems to me that we're talking about this

16    issue as if I am the jury.

17         What are you going to offer that makes it -- that

18    makes it not confusingly similar?

19         MR. LEWIS:  Well, Your Honor, just -- just doing a

20    little Google search here, there was a film under the name

21    *Lambo* in 2017.  There's another individual who's known by Ben,

22    quote, "Lambo" Lambert with an Instagram handle @lambolambo.

23         We had a number of them.  We could find more.  We

24    have a list somewhere.  I wasn't necessarily prepared for this

25    exact question today, but we could provide the Court with a

```
 1    list and perhaps by the end of this call we'll have more of
 2    them.
 3            THE COURT:  Well, of course, this is all facts; and
 4    I know none of you have appeared before me before on a status
 5    conference, which is it's designed to say what is a Federal
 6    Rule of Civil Procedure to make sure we don't waste any time,
 7    and that's why we're going through all of this right now so
 8    you understand and I'm -- I don't mean to be dragging this out
 9    of you, but I want to save time.
10            I don't want a Motion for Summary Judgment to be
11    filed if there are issues of fact, if I can't make the finding
12    that it is confusingly similar.
13            Even if, Mr. Lewis, you can pull things out of,
14    let's say, Google, just as Mr. Nowak can, what is there that
15    is going to lead me to say it's not confusingly similar?
16            MR. LEWIS:  Now, Your Honor, are you speaking of the
17    first inquiry Lambo --
18            THE COURT:  Absolutely, the first inquiry.  I want
19    to get past that, and it seems to me that Mr. Nowak has a very
20    good case for summary judgment on whether or not it's
21    confusingly similar, and I'm waiting for you to offer me
22    anything that would persuade me otherwise.
23            MR. LEWIS:  Well, Your Honor, I might -- I might
24    surprise the Court.  I believe in being straight with the
25    Court, whether Your Honor or other judges, and I'm not going
```

1    to make an argument for the sake of making it.

2              Lambo is not a registered trademark of Lamborghini.

3    However, it is a term that is commonly associated with the

4    Lamborghini car; and so from the context of an ACPA claim, I

5    tend to agree with Mr. Nowak that it is likely that the

6    confusing similarity threshold would be met.

7              THE COURT:  Okay.

8              MR. LEWIS:  Just by the fact of Lambo v.

9    Lamborghini --

10             THE COURT:  Okay.

11             MR. LEWIS:  -- I'm not going to argue that's not the

12   case.  I believe this case rises and falls on the question of

13   intent --

14             THE COURT:  Okay, so there's --

15             MR. LEWIS:  -- and bad faith.

16             THE COURT:  Okay, that's excellent.  I guess that is

17   where I was going and just wanting to make clear.

18             So that issue is out of the way, it seems, and you

19   don't have to -- you don't have to stipulate to that now.  It

20   seems to me you both agree that it is confusingly similar.

21             Then the next question is bad faith.  There, I know

22   there was a whole number of different criteria for the Court

23   to judge whether or not it's in bad faith.  So let's start.

24             Mr. Nowak, why is it in bad faith?  Why was it in

25   bad faith?

1          MR. NOWAK:  Well, so I'm not -- I'm not going to go

2   -- I'll just highlight the factors -- the bad faith factors as

3   enumerated in the statute, although Your Honor should be aware

4   that that's not an exhaustive list.  You can look outside of

5   that, but I'll just enumerate at least the three most

6   important ones that we think under bad faith are undisputed.

7          It's undisputed that Mr. Blair has no trademark or

8   other intellectual property rights in the domain name, unlike

9   -- unlike Lamborghini.

10         THE COURT:  And so what is that -- and that is one

11  of the first factors, right?  So that he's using it --

12         MR. NOWAK:  That's right, and we think it's --

13         THE COURT:  So he's using this for a commercial

14  purpose, not as a personal --

15         MR. NOWAK:  Well, so -- one of -- yeah, one of the

16  first factors is whether he has or has not intellectual

17  property rights in the domain, and he doesn't.  He has no

18  trademark and no other intellectual property rights in the

19  domain name.

20         So then there are other -- there are two other

21  factors that I'm going to combine, but we think it's

22  undisputed he has made no commercial or non-commercial use of

23  the domain name.  So he's not -- he's not using it, Your

24  Honor.  There's no fair use here.  It's essentially if you go

25  on his -- if you go to the domain's name, you'll see that it's

1  for sale.

2          And the other factor that we think weighs heavily in

3  favor of a finding of bad faith is that, in fact, as soon as

4  he acquired it he listed it for sale, and it's still listed

5  for sale if you go to the web website.

6          There's a period of time where it wasn't listed for

7  sale and he put up some threads about the -- you know, the

8  EDRP, the WIPO CASE onto the website but it -- for the most --

9  for the most part it's been listed for sale the entire time

10 starting, I think -- if I have my numbers correct, he starting

11 listing it for sale for 1.2 million dollars some time ago.

12          He essentially increased that price over time up to

13 now 75 million dollars, which may sound outrageous, Your

14 Honor, and it certainly is outrageous, 75 million dollars for

15 the domain name, to buy it, but he has, in fact, and he's

16 produced documents and he has, in fact, listened to offers and

17 entertained offers to buy the domain very -- up until very

18 recently, I think into late 2023.  Last year he's still

19 offering -- he's still entertaining offers from third parties

20 to buy it.

21          So those are -- he's never offered it -- he's never

22 offered it to -- to Lamborghini.  He doesn't have to.  He

23 doesn't even have to offer it to a competitor for a finding of

24 bad faith.  All he has to do is offer it for sale to a third

25 party, and we think those three factors --

1        THE COURT:  I'm sorry to break your stride here.

2        Did you say that he has offered it to a third party

3    for something in the nature of a million dollars?

4        MR. NOWAK:  Well, if I have my numbers correctly,

5    it's based on the information that Mr. Blair's produced in the

6    case to us.  At the very -- when he first offered it for sale,

7    it was for sale for about a million two, a million -- 1.2

8    million dollars or something like that.

9        He has steadily increased it over time, the asking

10   price, at least as it's listed on-line; and now I think if you

11   go to the website it says for sale for 75 million dollars or

12   something like that, but he has entertained offers to buy from

13   third parties the domain name and he had -- continues to do

14   that.

15       THE COURT:  Okay.

16       MR. NOWAK:  And that, Your Honor, is -- that is --

17   that is actually a strong factor, we believe, in a finding of

18   bad faith, Your Honor.

19       THE COURT:  And I understand that, all right.

20       So, Mr. Lewis, what is your response to these facts?

21       Are they undisputed?  And if they are not

22   undisputed, tell me.  And if they are -- you know, if they're

23   disputed, let me know.  If they're not -- if they are

24   undisputed, tell me what your response is.

25       MR. LEWIS:  Yes, of course, Your Honor.

1          So they're all disputed to varying degrees, and then

2     there are other facts that Mr. Nowak did not address; but

3     starting with the claim that our client has no trademark or

4     other rights in the domain name.

5          Our client acquired the domain name -- Mr. Blair

6     acquired the domain name in February of 2018 from a prior

7     owner.  Starting shortly after he acquired the domain name, he

8     began using it as his on-line name.

9          So when we referred to "moniker," we were talking

10    about it's an on-line identity.  He created a logo of a lamb

11    with bull's horns and started saying that, "My name is Lambo,"

12    and he used it on various different forums, on the Internet.

13    He used it in a chess forum.  He used it on a domain name

14    forum, and it became his on-line identity.

15         So when we're talking about a moniker and when

16    Mr. Nowak says that Mr. Blair hasn't used the name and has no

17    legitimate rights to it, he actually used it as his name.

18    After he acquired it, he liked the sound of it and he decided

19    that this is what he wanted to be known as on-line.

20         So that point about not having rights in the name is

21    totally disputed, and our client began using it shortly after

22    he acquired it and so it wasn't until --

23         THE COURT:  Let me stop you, in order to save time,

24    I'm sorry.  Mr. Lewis, when you said he began using it, how

25    did he use it other than it was registered?

1          MR. LEWIS:  Okay, Your Honor, I should -- I should

2     be clear.  Our client uses the moniker Lambo and he called --

3     he actually uses Lambo.com as his moniker.  It's not just

4     Lambo but if you -- if the Court were to look at his NamePros

5     account, I believe it says Lambo.com.

6          THE COURT:  So when you say he's using it as a

7     moniker, where is he using it?

8          MR. LEWIS:  He's using it on websites on-line to

9     identify himself.  It's his identity on the Internet space.

10          THE COURT:  Okay.  So why --

11          MR. LEWIS:  It is how people come to know him.

12          THE COURT:  Okay.  Why did he decide this should be

13    his identity?

14          MR. LEWIS:  Your Honor, that is a question that the

15    -- I mean, he liked the name.  If your -- if the Court is

16    asking me, he liked the name.  He -- so I -- I want to give

17    the Court a little bit of background in our client and what

18    other people who register domain names do.

19          It -- it sounds like from what Mr. Nowak was saying,

20    just registering a domain name and holding on to it and not

21    using it is somehow evidence of a bad faith intent or some

22    insidious purpose.

23          Mr. Blair owns over 130 domain names currently.

24    None of them are trademarks, none.  This is the only one that

25    -- arguably that anyone has ever accused him of registering

1   what they claim is a trademark.  That is the factor that cuts

2   against a finding of bad faith.

3         But the point is, if the Court were to look down the

4   list of 130-plus domain names, it would become apparent there

5   are things like ceec, c-e-e-c.com, or other generic-sounding

6   terms.  At one point he had coinex.com, c-o-i-n-e-x.com.

7         A number of his domain names have to deal with

8   cryptocurrency-type names.  They're dictionary words.  They're

9   fanciful terms that are clear, simple and marketable,

10  brandable terms.  He acquired this one, and then he liked it

11  as -- for the possibility that this could be used as an

12  identity.

13        So that is a question of fact.  It is -- it is not

14  a -- something which is hard and fast and clear; and if

15  Lamborghini had wanted to ask our client about why he

16  registered the domain name they could have deposed him, but

17  they chose not to; and so that is something which would be

18  left for trial and for the Court to assess and evaluate

19  whether the Court believes his explanation, but he should be

20  allowed the opportunity to explain why he registered the

21  domain name as a moniker and why it was appealing to him.

22        THE COURT:  So what are the -- why is he -- I'm

23  still having a little trouble when he has 150 of these

24  registered domains.  Compare it to something else and why he

25  chose this one and it just happened to be one that was

 1    trademark protected.

 2            MR. LEWIS:  Well, so it's -- it's not trademark

 3    protected, Your Honor.  "Lambo" itself is not trademark

 4    protected.

 5            THE COURT:  No, I meant but "Lamborghini" is

 6    trademark protected, yes?

 7            MR. LEWIS:  The -- so -- so here's a list of the

 8    names.  Like cheek, c-h-e-e-k.com, chinaflights.net,

 9    chinacoalgoals.net, chinese-coins.com, cigarroller.com,

10    coinex.com, computercase.com, datafeed.com, dnas.com.

11            None of these names are really -- lend themselves to

12    being used as a nickname.  Babywalker.com, blackthumbs.com,

13    byebye.com, artville.com, algar.com.  I guess he could have

14    called himself Algar, but that's kind of a strange-sounding

15    one.

16            Some of them are numbers like 1017.com.  He owns

17    sociology.com, pandacoins.com, c-e-e-c.com, and some of these

18    domains he is developing and he has developed into websites.

19    It is not -- some of them he sells, and some of theme he keeps

20    and develops.

21            All of them he lists for sale, and many of them he

22    lists for prices which a reasonable person could believe are

23    very, very high to insane; but it's his prerogative.  It's not

24    different than somebody who owns a piece of land and can

25    decide what price they want to offer to sell it for.

1           The fact I own a valuable or potential piece of

2    property somewhere and I choose to put it up for sale for 50

3    times what it's worth, well, no one's going to buy it; but it

4    doesn't give someone else the right to take it from me.

5           So unless he was targeting Lamborghini with the bad

6    faith attempt to profit off their trademark -- and he has

7    stated that he has zero intention of selling this domain name

8    to Lamborghini and when opposing counsel said he's

9    entertaining offers, he's rejected these offers.

10          He didn't negotiate with anyone.  He never

11   negotiated or made any kind of ask or even counter.  He has

12   rejected people who have inquired about buying this domain

13   name, and just to throw one other thing in there.

14          The fact that the name started at a certain price,

15   it increased over time relates directly to the fact our client

16   used this name as his identity, and as he became more tightly

17   integrated with the idea that this is his on-line identity.

18   It became more valuable to him, and he has posted on-line

19   about the fact just because he lists his domain names for sale

20   doesn't mean they're all really for sale.

21          So that is also a factual question.  It is not that

22   he actually thinks that someone's going to pay him 75 million

23   dollars for this domain name.  Increasing the price is more of

24   a telling the world that he's not selling it.  It might seem

25   an unorthodox way of doing that, Your Honor, but this is how

1   my client thinks.

2        THE COURT:  Okay.  So did he offer to sell this for

3   1.2 million?

4        MR. LEWIS:  There was a price in -- he had listed it

5   for somewhere around a million dollars originally shortly

6   after he acquired it.  I don't recall if it was 800 and

7   something thousand or if it was 1.2 million, as Mr. Nowak

8   states.  It's not materially different either way, and over

9   time he's increased the selling price on it.

10       Again, he's increased the selling price on a lot of

11   his domain names.  ceec.com, I believe, is listed for 30 or 40

12   million dollars.  I -- I can't imagine who would pay 30 or 40

13   million dollars for that name.  I don't want to draw my

14   client's ire by saying that; but if the Court were to look at

15   all of his sale prices for domains names, which are dictionary

16   words, completely legitimate domains, he tends to list them

17   for high prices.

18       So it's not the fact that in this case he did that

19   is a singularity that demonstrates that he's targeting

20   Lamborghini, and he's also a person who believes very strongly

21   in protecting his right.  If this was property, which it is,

22   but if this was real property, there are people that feel very

23   strongly about defending themselves against someone trying to

24   steal their property; and that's how our client views this,

25   that Lamborghini is attempting to steal his property.

1        There are many, many, many cases where there are

2   dictionary word domain names that are also adopted as

3   trademarks where the fact that a party uses that domain name

4   as a -- registers the domain name has nothing to do with the

5   trademark holder.

6        There are many cases of this, hundreds, thousands of

7   cases like this where someone registers a domain name that has

8   nothing to do with a trade -- but a trademark holder wants the

9   name, and so because they're identical they allege it's bad

10  faith.  Just because someone registered it they claim that

11  they had exclusive rights to it, but that is far from the case

12  here.  It is not the case as all.

13       THE COURT:  Okay.  So let me follow up on that,

14  though.  Lambo, even though that he claims he really likes

15  this name and it's his moniker and all of that and that it's

16  used by many others you said on -- you could make a -- or your

17  Google searches have shown that others use it and that's in

18  response to the question of whether or not it is confusingly

19  similar, I guess I'm having a problem understanding why Lambo,

20  the name, moniker Lambo is so valuable unless it is associated

21  with Lamborghini?

22       MR. LEWIS:  Your Honor --

23       THE COURT:  I mean, it's not as if someone adopted

24  the name Bozo and, you know, that name, of course, would be

25  associated -- he would decide that I'm a bozo and, therefore,

1   that's my moniker.  This is so closely related to Lamborghini.

2           MR. LEWIS:  Your Honor, that is the case in many,

3   many situations where parties register a dictionary domain

4   name -- dictionary word domain name and there also exists a

5   trademark holder.

6           However, at the same time, there exists other uses

7   for that dictionary word.  The trademark holder does not own

8   that word exclusively here.  Lamborghini's not even a

9   trademark holder of Lambo.  It's a nickname that is not

10  trademark.  They're arguing confusing similarities, but

11  they're already taking a step out on the limb.  It's not the

12  same thing.

13          I have a -- I have another trademark here for Lambo

14  for teleconferencing and video services.  This is a

15  registered -- United States registered trademark that does not

16  belong to Lamborghini, and there's also another one.  Lambo as

17  an apparatus for tattooing, beard clippers, beard trimmers.

18  It's another federal registration not associated with

19  Lamborghini.

20          This term could be used for a myriad of uses that

21  have nothing to do with Lamborghini, and that's the point.

22  It's not that -- yeah, it could also refer to Lamborghini, but

23  it is the -- it is Lamborghini's burden to prove that that's

24  the reason why our client registered this domain name.

25          As to why he listed it for a million dollars

1   initially, Your Honor, he lists many of his domain names for a

2   million dollars, many of them.  The fact that he listed one

3   for a million dollars does not mean that he was targeting

4   Lamborghini.

5           It is -- it is evidence of the fact that he values

6   his domain names at high prices, and the fact that he's raised

7   the price on this domain name more than any other in his

8   portfolio is a reflection of how much he values it is and how

9   much he's willing to fight for it.

10          We've told counsel for Lamborghini our client will

11   not sell this domain name.  He does not want to sell it.  He's

12   not interested in selling.  He's not interested in being

13   bought out.  He doesn't want Lamborghini to have it or anybody

14   else.  If it would satisfy the Court, I might be able to talk

15   him out of -- we haven't touched the public sale listing for

16   fear of interfering with any -- any inferences in this case,

17   but our client is not interested in selling his domain name.

18          It's not why it's listed for 75 million dollars.  If

19   he was interested in selling it, he would list it for a price

20   that someone might actually pay; and so it's a factual

21   question.

22          THE COURT:  If tomorrow Lamborghini offered him that

23   35 million, he wouldn't take it?

24          MR. LEWIS:  He has told me that he would not take

25   it.

1            THE COURT:  And he would testify to that under oath?

2            MR. LEWIS:  He'll testify to it under oath, Your

3    Honor.

4            THE COURT:  Okay.  Mr. Lewis.

5            MR. LEWIS:  Yes, Your Honor.

6            THE COURT:  I'm mean, Mr. Nowak, I'm sorry.

7            Mr. Nowak, in response to this we're dealing now --

8            MR. NOWAK:  Yes, Your Honor.

9            THE COURT:  Okay.  And why -- importantly, first of

10   all, we start with it has to be that there are no genuine

11   issues of material fact.  In other words, the facts are

12   undisputed, and you're moving for summary judgment.

13           So are we to take all of these facts that have been

14   offered by Mr. Lewis as undisputed?  And, of course, the other

15   aspect is that they have to be admissible evidence.  So what's

16   your response to that?  And then, is it relevant?

17           MR. NOWAK:  Yes, so on the -- since you brought it

18   up, Your Honor, on the admissibility issue, we think

19   Mr. Blair's going to run into all kinds of issues on

20   admissibility.  He -- he's only listed himself as a witness in

21   the case.  He's got nobody else to corroborate any of this

22   proposed testimony that he may offer at trial.  It's all

23   self-supervising.  A lot of it's hearsay, Your Honor.

24           So I think that we have -- if we're allowed to

25   file -- or if we go ahead with the summary judgment motion and

1  they will put forward whatever they have in their opposition,
2  I think, you know, we've got -- we've got some positions we
3  are going to probably take on admissibility of the evidence
4  because as you pointed out, the -- the evidence that they --
5  that they put in on the summary -- on summary judgment has to
6  be admissible at trial as well, as as ours.

7          THE COURT:  Okay.  So let me -- let me stop you --
8  let me stop you on that very important issue, and I appreciate
9  you raising it, as I did.

10         So he's going to testify to a number of things.
11 Number one is that this name is his moniker.  He intends to
12 use it and it's very valuable to him.  Why can't he testify to
13 that?  It's his opinion.

14         MR. NOWAK:  Well, he could, Your Honor.  He could --
15 he could testify to that, and even if you take that as true,
16 Your Honor, for purposes of the summary judgment motion, we
17 still think we win because -- because the evidence shows that
18 he offers it for sale and he -- and he's produced documents to
19 us that show that he is still going back and forth with
20 individuals who want to buy it from him.

21         Now, they may not want to buy it for 75 million
22 dollars but -- but he is still -- he is still corresponding
23 with individuals who want to buy it from him and he's still
24 listing it for sale.  So I think the other --

25         THE COURT:  So your point would be -- your point

1  would be on that is that that's a credibility issue?

2         MR. NOWAK:  It's a credibility issue, but on summary

3  judgment even if you take it as true I think we still win,

4  Your Honor, because we still win -- we still win because the

5  mark is famous.  Mr. Blair's already essentially conceded the

6  confusingly similar issue here, and a lot of what he was

7  pointing out with regard to other -- other -- other trademarks

8  and other people using Lambo, that has to go to the

9  confusingly similar point, Your Honor, which he's already

10  conceded it's confusingly similar on this telephone call.

11         So -- so that really doesn't bear on the question of

12  anything under bad faith.  Your Honor, we don't have to show

13  -- Mr. Blair -- Mr. Blair makes -- I'm sorry, Mr. Blair's

14  attorney, counsel for Mr. Blair, makes a big point of saying

15  that he's got all kinds of domains, right, that don't infringe

16  on anybody else's trademarks; and he's implying that that's

17  evidence of good faith, Your Honor.

18         We don't -- that's not the inquiry here, Your Honor.

19  It's bad faith.  It's bad faith.  We don't have to prove that

20  he's got -- that Mr. Blair has a hundred other domains that

21  potentially infringe other trademarks.  It could be one, ours,

22  period, that's it, that's it, and -- and we think that the

23  balance of the factors that we can prove in -- the balance of

24  the factors go to bad faith under the ACPA inquiry --

25         THE COURT:  Okay.

```
 1              MR. NOWAK:  -- and that's why we should win on

 2    summary judgment.  Even if you take, you know, some of these

 3    other -- other factors as true, as you -- as you -- you may

 4    have to under the summary judgment standard, right --

 5              THE COURT:  Okay.

 6              MR. NOWAK:  -- in evaluating this.

 7              THE COURT:  All right.  So I have a much better

 8    understanding of whether or not summary judgment is

 9    appropriate.  Seems to me there is a tentative agreement that

10    Lambo is confusingly similar to Lamborghini.  So then we're

11    dealing with bad faith.  There's a variety of different ways

12    to establish that.  I don't have a full understanding of what

13    the case law is on that.

14              You're both making some interesting points.  As I

15    mentioned to Mr. Lewis, I have some concern truly about his

16    offering this for 75 million dollars.  I don't know what he's

17    offered everything else.  It may be everything else is offered

18    for 75 million dollars, and maybe that isn't bad faith; and

19    the issue of his using it as a moniker, I have some questions

20    about that.

21              But importantly, as you both mentioned, which is

22    important for me to be cognizant of is that I will be the

23    trier of fact as it turns out.

24              So this may be -- may be a case for summary judgment

25    on the issue of bad faith, but the parameters are always that
```

```
 1   there must be admissible evidence and the undisputed evidence
 2   has to establish that there's bad faith or the undisputed
 3   evidence has to establish that there is not bad faith.
 4           I certainly do not have to hear from Mr. Blair to
 5   decide it on summary judgment, but I might have to hear
 6   Mr. Blair if, in fact, I cannot decide it based upon the
 7   undisputed admissible facts to establish or not establish bad
 8   faith.
 9           Have I made myself clear, Mr. Lewis?
10           MR. LEWIS:  Your Honor, generally speaking, yes.  I
11   have a question on some of the things that -- that counsel
12   said previously.  There were several misrepresentations.
13           THE COURT:  Okay.  Okay, if they're
14   misrepresentations, I'm not to decide that now.  I just want
15   to give you the framework.
16           So it's important now for both of you, whether you
17   settle it or not and whether we go forward on summary judgment
18   -- you go forward on summary judgment and I make a decision or
19   whether or not it's necessary for us to go to trial, that you
20   confer with each other with the legal guidelines for summary
21   judgment on bad faith.
22           So you said there's misrepresentations.  I don't
23   want to hear about them now, but you need to talk to Mr. Nowak
24   about those and whether or not those misrepresentations are
25   facts that you would offer to establish that there is no bad
```

1   faith; and, of course, the overall issue, too, is case law.

2   Is there case law on point that would lead me to finding bad

3   faith or not?  So there you have it.

4          All right.  Mr. Nowak, anything else or -- for us to

5   discuss?

6          MR. NOWAK:  No -- no, your Honor.  We -- we

7   certainly appreciate the -- the time today.

8          THE COURT:  Okay.  And I appreciate it, too, because

9   whatever happens in the future I will be reminded of our

10  conversation, and I will have a transcript.

11         So I strongly urge you to decide between the two of

12  you what the evidence is that you would offer on whether or

13  not there's bad faith and whether that evidence is admissible

14  and is it undisputed?  Is it undisputed that I can decide it

15  on summary judgment?  If it's disputed and it's material, then

16  I can't decide it on summary judgment.

17         Okay, that's my last word.  Thank you, counsel, for

18  your very active, vigorous participation.

19         MR. NOWAK:  Thank you, your Honor.

20         MR. LEWIS:  Thank you, your Honor.

21         MR. NOWAK:  This is Mr. Nowak one more time before

22  we -- we convene, sorry -- or we -- we end.

23         One question.  I know that we have our summary

24  judgment briefing coming up, I think, a week from Thursday.

25  It may be that Mr. Lewis and I have some back and forth that

 1    we need to do in terms of trying to establish some facts.  We

 2    may not need it, but I'm just heads up that perhaps we --

 3              THE COURT:  Why don't we put it off for two weeks.

 4              So when is it due?  When is summary judgment?

 5              MR. NOWAK:  I believe it's due a week from -- a week

 6    from this Thursday.  So next Thursday, the 18th, I think, is

 7    the date.

 8              THE COURT:  18th?  So, okay, two weeks after the

 9    18th would be -- we're gonna hear from my courtroom deputy.

10              COURTROOM DEPUTY:  May 2nd, Judge.

11              THE COURT:  May 2nd.

12              MR. NOWAK:  May 2nd, okay.

13              THE COURT:  All right.  So either summary judgment

14    will be filed or you will tell me that we need a trial.

15              All right, this matter's adjourned.

16              MR. NOWAK:   All right.  Thank you, your Honor.

17              THE COURT:  Yes.

18              MR. LEWIS:  Thank you, your Honor.

19    *(Whereupon the proceedings adjourned at 11:59 a.m.)*

20

21

22

23

24

25

1          ***REPORTER'S CERTIFICATION***

2

3                    I, TERI VERES, do hereby certify that I am duly

4     appointed and qualified to act as Official Court Reporter for

5     the United States District Court for the District of Arizona.

6                    I FURTHER CERTIFY that the foregoing pages

7     constitute a full, true, and accurate transcript of all of

8     that portion of the proceedings contained herein, had in the

9     above-entitled cause on the date specified therein, and that

10    said transcript was prepared under my direction and control.

11                   DATED at Phoenix, Arizona, this 22nd of

12    April, 2024.

13
                                  _____s/Teri Veres_____
14                                TERI VERES, RMR, CRR

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT