Nicholas J. Nowak (*pro hac vice*)
Lauren A. Watt (*pro hac vice*)
Sterne, Kessler, Goldstein & Fox P.L.L.C.
1101 K St. NW, 10th Floor
Washington, D.C. 20005
Facsimile: (202) 371-2600
Telephone: (202) 371-2540
nnowak@sternekessler.com
lwatt@sternekessler.com

*Attorneys for Defendant
Automobili Lamborghini S.p.A.*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| RICHARD BLAIR, | |
| *Plaintiff*, | Civil Action No. 2:22-cv-01439-ESW |
| v. | |
| AUTOMOBILI LAMBORGHINI S.P.A., | **DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** |
| *Defendant*. | |

**TABLE OF CONTENTS**

I. ARGUMENT ..................................................................................................................1

    A. It is undisputed that Blair owns the &lt;lambo.com&gt; domain name and that "lambo" is confusingly similar to the LAMBORGHINI mark. ..............................1

    B. The evidence of Blair's bad faith is undisputed. .....................................................2

        1. It is undisputed that Blair created the "Lambo" moniker only *after* obtaining the &lt;lambo.com&gt; domain (Factor II). ........................2

        2. It is undisputed that Blair used &lt;lambo.com&gt; to disparage Lamborghini for Blair's own gain (Factor V). ...................................4

        3. It is undisputed that Blair listed the domain for sale at exorbitant prices (Factor VI). .............................................................5

        4. It is undisputed that the Lamborghini mark is distinctive and famous (Factor IX). ....................................................................8

        5. The facts of this case lead to the logical conclusion that Blair acted in bad faith through his ownership and offer for sale of &lt;lambo.com&gt;. ................................................................................9

II. CONCLUSION .............................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Title Ins. Co. v. Lacelaw Corp.*,
    861 F.2d 224 (9th Cir. 1988)..................................................................................6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................6

*Black v. Irving Materials, Inc.*,
    Case No. 17-CV-06734-LHK, 2019 WL 1995342 (N.D. Cal. May 6,
    2019) ......................................................................................................................7

*Calista Enterprises Ltd. v. Tenza Trading Ltd.*,
    43 F. Supp. 3d 1099 (D. Or. 2014) ........................................................................8

*Digby Adler Group LLC v. Image Rent a Car, Inc.*,
    79 F. Supp. 3d 1095 (N.D. Cal. 2015) ............................................................9, 10

*DSPT Intern., Inc. v. Nahum*,
    624 F.3d 1213 (9th Cir. 2010)................................................................................2

*E.& J. Gallo Winery v. Spider Webs Ltd.*,
    129 F. Supp. 2d 1033 (S.D. Tex. 2001) .................................................................4

*Harrods Ltd. v. Sixty Internet Domain Names*,
    1914. 302 F.3d 214 (4th Cir. 2002).........................................................................3

*Interstellar Starship Services, Ltd. v. Epix Inc.*,
    304 F.3d 936 (9th Cir. 2002)..................................................................................7

*Lahoti v. VeriCheck*,
    586 F.3d 1190 (9th Cir. 2009).................................................................................9

*Morrison & Foerster, LLP v. Wick*,
    94 F. Supp. 2d 1125 (D. Colo. 2000) .....................................................................4

*Nu Pagamentos S.A. – Instituicao de Pagamento v. Hudson*,
    C.A. No. 2:21-CV-69-RWS, 2023 WL 2377641 (N.D. Ga. Feb. 22,
    2023) ......................................................................................................................7

*Oram v. Linderman*,
　No. CV-12-02450-PHX-FJM (BSB), 2014 WL 2569123 (D. Ariz. June
　9, 2014) ................................................................................................................... 3

*Orr v. Bank of Am., NT & SA*,
　285 F.3d 764 (9th Cir. 2002) ................................................................................ 3, 9

*SunEarth, Inc. v. Sun Earth Solar Power Co. Ltd.*,
　No. C 11-4991 CW, 2013 WL 4528539 (N.D. Cal. Aug. 23, 2013) ............................ 3

*Utah Lighthouse Ministry v. Found. for Apologetics Info.*,
　527 F.3d 1045 (10th Cir. 2008) .................................................................................. 5

*Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*,
　995 F. Supp. 1060 (D. Ariz. 1997) .............................................................................. 6

*Wagner v. lindawagner.com*,
　202 F. Supp. 3d. 574 (E.D. Va. 2016) ......................................................................... 7

**Statutes**

15 U.S.C. § 1125(d)(1)(B)(i)(V) ........................................................................................ 4

15 U.S.C. § 1125(d)(1)(B)(i)(VI) ................................................................................... 6, 8

Anti-Cybersquatting Consumer Protection Act ............................................................ *passim*

**Other Authorities**

5 McCarthy on Trademarks and Unfair Competition § 25A:55 ......................................... 2

FRCP 37(c) ........................................................................................................................ 8

FRE 403 ............................................................................................................................ 4

H.R.Rep. No. 106–412, 10 ................................................................................................ 2

The facts of this case are clear and undisputed: Blair owns the <lambo.com> domain, "Lambo" is confusingly similar to Lamborghini's LAMBORGHINI mark, and Blair continues to list the lambo.com domain for exorbitant prices. Blair's Opposition does not dispute these facts but concedes them. This is all the Court needs to determine that Blair has violated the Anti-Cybersquatting Consumer Protection Act ("ACPA"). Blair attempts to persuade the Court otherwise by citing irrelevant information and inadmissible evidence. Blair's Opposition amounts to nothing more than an attempt to manufacture disputes of fact that are not there.

Blair admits in his Opposition that Blair owns the domain <lambo.com> and that the term "Lambo" is confusingly similar to Lamborghini's LAMBORGHINI mark. Therefore, the first two of the three elements of the ACPA are clearly met. The only element Blair disputes in his Opposition is whether there is bad faith. Yet Blair plainly admits that he has offered the domain for sale at increasingly exorbitant prices, that he used <lambo.com> to disparage Lamborghini, that he himself developed the moniker "Lambo" only after purchasing the domain, and that the LAMBORGHINI mark is distinctive and famous. These are the quintessential facts underlying bad faith determinations under § 1125. Blair's only rebuttal is that his offer for sale of the domain is not serious and, therefore, he cannot have the intent to support a finding of bad faith under the ACPA. But this argument is plainly outweighed by the evidence that Blair *has and continues to* offer the domain for sale and that he has engaged with buyers regarding potential sales. Blair's made-for-litigation arguments cannot create a genuine issue of material fact sufficient to defeat this motion.

Because the evidence is clear, and because there are no genuine issues of material fact, Lamborghini respectfully requests the Court grant its Motion for Summary Judgment.

I.     ARGUMENT

     A.     **It is undisputed that Blair owns the <lambo.com> domain name and that "lambo" is confusingly similar to the LAMBORGHINI mark.**

Both parties agree that Blair owns the <lambo.com> domain and, therefore, the first

element under the ACPA is met. *See DSPT Intern., Inc. v. Nahum*, 624 F.3d 1213, 1218-19 (9th Cir. 2010); *see also* D.I. 56 ("Mot.") at 3; D.I. 57 at 7. Further, both parties agree that <lambo.com> is confusingly similar to the LAMBORGHINI mark, meeting the second element of the ACPA. *See DSPT Intern.*, 624 F.3d at 1281-19; D.I. 56 at 5-6; D.I. 58 at 7. The third and final element under the ACPA—bad faith—is the sole element at issue.

### B. The evidence of Blair's bad faith is undisputed.

#### 1. It is undisputed that Blair created the "Lambo" moniker only *after* obtaining the <lambo.com> domain (Factor II).

There is no evidence that Blair is commonly known as "Lambo." Blair argues otherwise, noting that he began referring to himself as Lambo *after* he acquired the <lambo.com> domain. Opp. at 10-12. But this is not the law, and Blair's evidence is largely inadmissible. Blair's argument that he can escape a finding of bad faith under the ACPA because he began using "Lambo" as a "moniker" *after* purchasing the <lambo.com> domain would render the ACPA meaningless. Regardless, the evidence Blair relies on constitutes inadmissible hearsay and should be disregarded on summary judgment.

Blair attempts to argue that his adoption of "Lambo" as an online moniker after he obtained the <lambo.com> domain precludes a finding of bad faith. Opp. at 10-12. But this cannot be the law under the ACPA. Even assuming for the purposes of summary judgment that Blair has adopted the "lambo" moniker on a handful of websites, he only did so *after* he purchased the <lambo.com> domain. The ACPA was created to prevent users from registering well-known marks they were not the rightful owners of. *See DSPT Intern.*, 624 F.2d at 1219-20. It is counter-intuitive to allow users to gain rights to those domain names because they began to refer to themselves as the domain-name *after purchase*. Indeed, such argument would allow cybersquatters to evade the ACPA by simply creating online monikers. *See* H.R.Rep. No. 106–412, 10 ("This factor is not intended to suggest that domain name registrants may evade the application of this act by merely adopting Exxon, Ford, Bugs Bunny or other well-known marks as their nicknames."); *see also* 5 McCarthy on Trademarks and Unfair Competition § 25A:55. And adopting the Moniker "Lambo"

based on <lambo.com> is precisely what Blair did, as he openly admits. *See* D.I. 59 ¶ 9 ("I'm gonna moniker a dotcom of mine . . ."). Allowing such circumvention cannot be the law and goes against the spirit of the ACPA.

Nor do Blair's own cited cases provide any support for his contention that adoption of a domain name as a moniker after it has been acquired is sufficient to evade a finding of bad faith under the ACPA. For example, in *SunEarth, Inc. v. Sun Earth Solar Power Co. Ltd.,* the defendant adopted in the nickname "Sun Earth" in 1978 many years *before* acquiring the disputed domain names incorporating the term "Sun Earth" in 2010. C 11-4991 CW, 2013 WL 4528539, at *6, *23 (N.D. Cal. Aug. 23, 2013). The *SunEarth* court likewise cautioned that potential cybersquatters cannot evade the ACPA by adopting marks as nicknames, such as what Blair attempts to do here. *See id.* at *23. Similarly, in *Harrods Ltd. v. Sixty Internet Domain Names*, the defendant company adopted the name "Harrods" as a legitimate company name in 1914, going so far as to obtain legal rights to the name in South America in 1914. 302 F.3d 214, 220 (4th Cir. 2002). The 54 domain names at issue that incorporated the term "Harrods" were not registered until, at least, 1999—over 80 years later. *Id.* at 221. These facts are a far cry from Blair's own action of creating his own online moniker *after* purchasing the <lambo.com> domain name.

Further, Blair's so-called evidence is hindered by admissibility issues. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary judgment."); *Oram v. Linderman*, No. CV-12-02450-PHX-FJM (BSB), 2014 WL 2569123, at * 4 (D. Ariz. June 9, 2014) ("While material produced at the summary judgment stage need not be in the form of admissible evidence, in order to create a genuine dispute of fact, a party must demonstrate at summary judgment that he can present evidence in support of the fact that would be admissible at trial."). For example, Blair states that "[o]ther users on X.com and NamePros.com also refer to Mr. Blair as 'Lambo.'" Opp. at 11. To support this, Blair offers a number of documents containing hearsay statements from unknown third-parties. *See* D.I. 59 ¶ 9. Yet, the Parties have submitted their list of witnesses for trial, and Blair did not

3

identify a single one of these individuals as a witness. *See* D.I. 44 at 1 (listing only Blair as a potential witness). Therefore, Blair's evidence is unreliable hearsay under FRE 403, would be inadmissible at trial and, therefore, should not be considered on summary judgment.

Even if the evidence were admissible, users online would only know Blair by the moniker "Lambo," because that is how Blair decided to refer to himself. When creating profiles on these websites, Blair chose the username he wanted to be known by. As a result, none of the other users on those websites know Blair's true name—they only know the "moniker" he decided to registered as on the site. At best, the evidence demonstrates that Blair decided to use "Lambo" as an online "moniker" or "username" for himself *after* purchasing the <lambo.com> domain, and other online users refer to him by that moniker because they have no other reference point. This is not enough for Blair to establish that he was or is "commonly known" as "Lambo" as a matter of law under the ACPA.

## 2. It is undisputed that Blair used <lambo.com> to disparage Lamborghini for Blair's own gain (Factor V).

It is undisputed that Blair redirected online users from <lambo.com> to a blog post where Blair stated he wished to "humiliate" Lamborghini. *See* D.I. 57-8. Blair argues that this fact cannot support a finding of bad faith, because Blair did not use the redirection to profit off of <lambo.com>. Opp. at 12-14. But this argument misreads the statute. The statutory language of factor V states, "the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain *or with the intent to tarnish or disparage the mark*." *See* 15 U.S.C. § 1125(d)(1)(B)(i)(V). The statutory language itself does not require the disparagement to be for an intent to profit. In fact, courts regularly find disparagement under factor V even without an intent to profit. *See, e.g.*, *Morrison & Foerster, LLP v. Wick*, 94 F. Supp. 2d 1125, 1131-32 (D. Colo. 2000) (finding disparagement when the content in the domain would "would harm the goodwill represented by Morrison & Foerster's mark"); *E.& J. Gallo Winery v. Spider Webs Ltd.*,

129 F. Supp. 2d 1033, 1045 (S.D. Tex. 2001) ("Spider Webs' use of the web site to criticize E. & J. Gallo Winery and to comment on the present litigation served only to disparage Gallo and diminish its goodwill.").

The cases Blair relies on do not hold otherwise, largely because they involve fair use parody websites. For example, Blair argues that *Utah Lighthouse Ministry v. Found. for Apologetics Info.*, 527 F.3d 1045, 1048-49 (10th Cir. 2008), supports the finding that bad faith can only be found when the defendant obtains some revenue from the website. Opp. at 13. But that is not the holding of the case. In *Utah Lighthouse*, the defendant developed websites created to parody the plaintiff's website and registered ten domain names with combinations of the plaintiff's corporate name and its founders' names. In concluding that there was no bad faith under the ACPA, the court determined that the defendant was engaging in "a fair use parody" of plaintiff's website which precluded a finding of bad faith. *Id.* Blair does not, and cannot, argue such fair use defense here.

Therefore, Blair's use of <lambo.com> to disparage Lamborghini is properly considered in the § 1125 analysis and further supports a finding of Blair's bad faith under the ACPA.

### 3. It is undisputed that Blair listed the domain for sale at exorbitant prices (Factor VI).

It is undisputed that Blair listed, and continues to list, the domain for sale at exorbitant prices. *See* D.I. 59 ¶¶ 16-23. In his opposition, Blair does not dispute this fact. *See* Opp. at 14-17. Rather, Blair argues rather implausibly that he lists the web page at high prices to *deter* purchasers. *Id.* at 16-17. But this does not explain why the domain is listed for sale at all.[1] There is nothing forcing him to list the domain, and it is quite telling that Blair continues to increase the price of the domain as this dispute persists. *See* D.I. 59 ¶¶ 16-23. Further, it is undisputed that Blair has and continues to actively respond to purchase

---

[1] Blair states that he listed the domain because purchasers were asking him about it anyway. *See* D.I. 59-1, ¶ 27. But it is unclear how stating on the website that the domain is actively for sale would deter potential purchasers.

5

price requests instead of simply ignoring them. *See id.* ¶¶ 24-26. Therefore, it is undisputed that Blair continues to list the domain for sale at high prices, a clear offer to sell the domain for financial gain. *See* 15 U.S.C. § 1125(d)(1)(B)(i)(VI).

Blair argues that his offer for sale of <lambo.com> cannot constitute evidence of his bad faith, because his interactions with buyers were "sarcastic" and he never intended to sell the domain. Opp. at 14-17; *id.* at 17 n. 3. Such uncorroborated statements cannot be used to overcome a motion for summary judgment because they fail to create a "genuine" dispute of material fact. In order for a dispute to be genuine, there must be sufficient evidence that a reasonable fact finder could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, (1986). Here, there is *overwhelming* evidence that Blair offered the domain <lambo.com> for sale at high prices and engaged with potential buyers of the domain. *See* D.I. 57 ¶¶ 23-26. This evidence is indisputable proof that Blair acted with intent to offer for sale or sell <lambo.com>.

Blair further attempts to muddy the waters by arguing that he intends to resume development of <lambo.com> at some undetermined date. Opp. at 14. Again, however, this fails to explain why Blair has and continues to list the domain for sale.

Moreover Blair's contention that he intends, someday, to develop the domain is directly at odds with admissions he has already made in his pleadings. *See American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." (internal citations omitted)); *Valdiviezo v. Phelps Dodge Hidalgo Smelter, Inc.*, 995 F. Supp. 1060, 1065-66 (D. Ariz. 1997) ("Under Ninth Circuit law, a statement in a complaint serves as a judicial admission."). Specifically, Blair stated in his Amended Complaint that he "initially planned on developing a website at [<lambo.com>]" but "[t]hose plans were subsequently delayed and abandoned." ECF No. 21, ¶ 11; *see also* ECF No. 59 ¶ 11 (admitting this fact as uncontested). Now, however, in an attempt to overcome a negative finding on summary judgment, Blair argues in his opposition that he did not mean what he previously admitted.

6

Now, Blair contends that plans to develop the domain were not in fact "abandoned," but that he plans to resume them. Opp. at 14. Blair's inconsistent position on this issue is nothing more than an attempt to manufacture a dispute of fact regarding his intentions with the <lambo.com> domain.

Blair cites a number of cases to support his argument that his offer for sale of <lambo.com> cannot show bad faith—none of which are applicable here. For example, in *Interstellar Starship Services, Ltd. v. Epix Inc.*, 304 F.3d 936, 947 (9th Cir. 2002), the court found that the sole "offer for sale" of the disputed domain was through the defendant's attorney as part of a settlement agreement, rather than extortion, and did not support a finding of bad faith. In *Wagner v. lindawagner.com*, the court stated that the parties merely could not come to an agreement on a price for the domain and, when the plaintiff lowered the maximum price they would pay from $1000 to $500, the defendant merely "walked away." 202 F. Supp. 3d. 574, 584 (E.D. Va. 2016). The court noted that these "plain vanilla" offers to sell to do not support a finding of bad faith. *Id.* at 584. Neither of these cases are comparable to Blair's offer for sale of <lambo.com> at increasingly high prices.

Further, in *Nu Pagamentos S.A. – Instituicao de Pagamento v. Hudson*, the defendant had owned the domain for nearly 30 years. C.A. No. 2:21-CV-69-RWS, 2023 WL 2377641, at *13 (N.D. Ga. Feb. 22, 2023). The court noted that this fact led credibility to the defendants' claim that he did not wish to sell it. *Id.* Finally, in *Black v. Irving Materials, Inc.*, Case No. 17-CV-06734-LHK, 2019 WL 1995342, at *10 (N.D. Cal. May 6, 2019), the court found no bad faith when the domain holder used the domain name <imi.com> in conjunction with his bona fide businesses that operated under the IMI moniker. Both of these cases are factually distinct from the case at hand. Blair has not made any bona fide use of the <lambo.com> domain, has continued to offer the domain for sale and engaged in negotiations with potential customers, and has used the domain to disparage Lamborghini. *See, e.g.*, ECF No. 59 ¶¶ 14, 16-23.

It is undisputed that Blair listed, and continues to list, the <lambo.com> domain for sale at increasingly high prices. It is further undisputed that Blair has entertained offers

from individuals seeking to purchase the <lambo.com> domain. The undisputed facts support a conclusion that Blair has and continues to offer the domain for sale "for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services." *See* § 1125(d)(1)(B)(i)(VI).

### 4. It is undisputed that the Lamborghini mark is distinctive and famous (Factor IX).

It is undisputed that the Lamborghini mark is distinctive and famous; Blair admits as much in his Controverted Statement of Material Facts. *See* ECF No. 59 ¶ 27. Therefore, factor IX is easily met, and the Court need not look any further. Yet again, however, Blair attempts to muddy the waters regarding the use of "Lambo." This is improper for a number of reasons. First, Blair's "evidence" is related to the term "Lambo," not the LAMBORGHINI mark. Second, the evidence Blair provides is inadmissible.

First, Blair confuses the issue. Factor IX relates to the asserted mark; in this case, that mark is LAMBORGHINI. Blair has already admitted that "Lambo" is confusingly similar to the LAMBORGHINI mark. ECF No. 59 ¶ 28. Blair has also admitted that the LAMBORGHINI mark is distinctive and famous. *Id.* ¶ 27. As a result, there is no genuine issue of fact with respect to factor IX. Nor does Blair's cited case support a different conclusion. In *Calista Enterprises Ltd. v. Tenza Trading Ltd.*, the court noted that there were issues of validity with respect to the trademark "PORNTUBE" because the mark itself was generic, and validity is what the cybersquatting claim would turn on. *See* 43 F. Supp. 3d 1099, 1132 (D. Org. 2014). There are no such validity concerns or arguments here.

Second, Blair's evidence regarding the term "Lambo" is inadmissible. Blair's evidence comprises online search results obtained by Blair's counsel's office manager in May of 2024. ECF No. 59-2 ¶ 1. None of the evidence Blair cites was produced or even referred to in fact discovery. Rather, Blair generated this new "evidence" solely for the purposes of this motion. Such evidence does not comport with the spirit of the Federal Rules. *See* FRCP 37(c) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

8

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Further, it is unclear how Blair intends to introduce this new evidence at trial. As stated previously, Blair has identified a single potential witness for trial—himself. *See* ECF No. 44 at 1. Ms. Gong is not identified as a party witness and, therefore, no one would be able to authenticate these documents at trial. *See Orr*, 285 F.3d at 773.

Because it is undisputed that "lambo" is confusingly similar to the LAMBORGHINI mark, and because it is undisputed that the LAMBORGHINI mark is distinctive and famous, this factor further evidences Blair's bad faith.

### 5. The facts of this case lead to the logical conclusion that Blair acted in bad faith through his ownership and offer for sale of &lt;lambo.com&gt;.

Blair contends that evidence related to factor VII compels a conclusion that he has not acted in bad faith because he does not have a history of cybersquatting. Opp. at 18-20. This does not appear to be entirely true. Despite Blair touting his trademark clearance process, which he alleges includes trademark searches (Opp. at 4, 10), at least two of the domains Blair lists in his Opposition are, in fact, trademarked word marks. *Compare* D.I. 58 at 20 (listing &lt;pharmacore.com&gt; as a Blair-owned domain) *with* Ex. 1; *compare* D.I. 58 at 20 (listing &lt;dnas.com&gt; as a Blair-owned domain) *with* Ex. 2. Blair does not appear to be the owner of either of these marks or otherwise have any rights in these marks.

Blair also contends that factor VIII supports his argument of good faith because he has not provided misleading contact information. Opp. at 17-18. Even if true, this factor alone cannot outweigh the remaining factors that point to bad faith. As Blair himself acknowledges (Opp. at 20-21), the job of the court is to consider the factors altogether along with the unique facts of the case. As a result, courts may conclude that a domain owner has engaged in bad faith despite the statutory factors being mixed. *See Lahoti v. VeriCheck,* 586 F.3d 1190, 1202 (9th Cir. 2009) (noting that the factors are "permissive" rather than mandatory)*; see also Digby Adler Group LLC v. Image Rent a Car, Inc.*, 79 F.

Supp. 3d 1095, 1102-04 (N.D. Cal. 2015) (granting summary judgment finding bad faith despite factors weighing in favor of both parties when the facts of the case demonstrated bad faith). This is because the court needs to look at the "unique circumstances of the case." *Digby*, 79 F. Supp. 39 at 1103-04. It is undisputed that Blair has offered the website for sale at increasingly high prices. Blair has likewise used the domain to state his intent to "humiliate" Lamborghini. Blair's actions demonstrate nothing less than a bad faith intent to profit from his ownership of <lambo.com>.

## II.   CONCLUSION

It is undisputed that Blair (1) owns the domain <lambo.com>, (2) the term "lambo" is confusingly similar to the LAMBORGHINI mark, (3) Blair has offered to sell the <lambo.com> domain name for high prices, and (4) Blair's legal name is not "Lambo," nor did he use the moniker "Lambo" prior to his acquisition of <lambo.com>. As a result, Lamborghini respectfully requests that the Court grant Lamborghini's Motion for Summary Judgment.

| | | |
|---|---|---|
| Dated: June 18, 2024 | | /s/ *Nicholas J. Nowak* |

Nicholas J. Nowak (*pro hac vice*)
Lauren A. Watt (*pro hac vice*)
Sterne, Kessler, Goldstein & Fox P.L.L.C.
1101 K Street NW, 10th Floor
Washington, D.C. 20005
Facsimile: (202) 371-2600
nnowak@sternekessler.com
lwatt@sternekessler.com
Telephone: (202) 371-2600

*Attorneys for Defendant*
*Automobili Lamborghini S.p.A.*

# **CERTIFICATE OF SERVICE**

This is to certify that on June 18, 2024, a true and correct copy of the foregoing was filed electronically using the Clerk of Court's CM/ECF system, which will provide notice to all counsel of record. It was also served by electronic mail on the following counsel of record:

Brett E. Lewis
LEWIS & LIN LLC
77 Sands Street, 6th Floor
Brooklyn, NY 11201
Telephone: (718) 243-9323
Facsimile: (718) 243-9326
brett@iLawco.com

*Attorney for Plaintiff Richard Blair*

Dated: June 18, 2024

By: /s/ *Nicholas J. Nowak*
Nicholas J. Nowak (*pro hac vice*)
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1101 K St. NW, 10th Floor
Washington, DC 20005
Telephone: (202) 371-2600
Facsimile: (202) 371-2540
nnowak@sternekessler.com

*Attorney for Defendant Automobili Lamborghini S.p.A.*